IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| United States of America, | |
|---|---|
| v. | No. 5:19-cr-22-DSC |
| Greg Lindberg, *et al.*, | |
| *Defendants.* | |

| United States of America, | |
|---|---|
| v. | No. 3:23-cr-48-DSC |
| Greg Lindberg, | |
| *Defendant.* | |

**MOTION OF DEFENDANT GREG LINDBERG
TO BE HELD AT A RESIDENTIAL REENTRY CENTER
IN TAMPA, FLORIDA, PENDING SENTENCING**

Defendant Greg Lindberg, by and through undersigned counsel, respectfully moves for an Order directing that, upon his self-surrender to the United States Marshals Service on November 12, 2024, that he be held at a residential reentry center ("RRC" or "halfway house") in Tampa, Florida (near his current home), as opposed to a local jail, until he is designated for a facility by the Bureau of Prisons ("BOP") following sentencing. Further, such a designation is specifically authorized by the relevant statutes, and Mr. Lindberg will pay all expenses associated with his placement in this facility (including all expenses incurred by the United States Marshals Service). Placement in the RRC is also integral and necessary to his ability to communicate directly and consistently with his counsel who must assist him in

1

moving, in the immediate future, billions of dollars of assets into the hands of receivers or a Special Master for full payment of restitution to all policyholders and other entities entitled to restitution. The Government takes no position on this motion.

The Court "may order halfway house placement as a condition of pretrial release under 18 U.S.C. § 3142(c)(1)(B)(xiii)," Administrative Office of the U.S. Courts, *Residential Reentry Centers – Reference Guide* 3 (Mar. 2020) (*available at* https://www.uscourts.gov/file/28164/download) (hereinafter "RRC Reference Guide"), and that authority continues to apply where, as here, a defendant is awaiting sentencing, *see* 18 U.S.C. § 3143(a)(1). RRCs are "an alternative to pretrial detention." RRC Reference Guide 2. They may be used as "an intermediate sanction" to "prevent" a defendant "from losing employment or [they] might help avoid the complete removal of the family provider or caretaker that would otherwise result from . . . a traditional term of incarceration." *Id.* at 8.

In this case, Mr. Lindberg has agreed to self-surrender and enter a guilty plea on November 12, 2024, consistent with the terms of a plea agreement with the Government. Under that agreement, Mr. Lindberg and the Government agreed to the appointment of a Special Master (due to the complexity of restitution issues) to assist in identifying, receiving, tracking, and distributing billions of dollars of funds to make restitution to policyholders of Mr. Lindberg's insurance companies. Plea Agreement ¶ 9, at 4. And to secure the appointment of the Special Master, Mr. Lindberg and the

Government must negotiate the terms of a mutually agreed order governing the Special Master's appointment. *Id.*

In addition, Mr. Lindberg has pledged to "take all necessary and reasonable steps" in his power to secure assets sufficient to pay full restitution to the policyholders of his insurance companies "no later than 30 days after the issuance of the initial draft presentence report issued by the United States Probation Office in this matter." *Id.* ¶ 8(c), at 3. That will include taking all necessary and reasonable actions within Mr. Lindberg's power to transfer a significant number of assets to receivers or the Special Master. *See id.*\*

Mr. Lindberg's ability to help facilitate the duties of the Special Master and take the actions necessary to complete the transfer of assets will require constant communication between Mr. Lindberg and his counsel. It will be virtually impossible to do so on an expedited basis while incarcerated in a local jail or prison—as those facilities pose significant barriers to communication. Detention at an RRC solves these problems while Mr. Lindberg remains in the custody of federal authorities.

As such, detention at an RRC will allow Mr. Lindberg to fulfill his obligations to make restitution to policyholders prior to sentencing—as required by his plea agreement. Indeed, as recognized by the Administrative Office of the U.S. Courts,

---

\* For its part, the Government has agreed that if Mr. Lindberg "takes all necessary and reasonable steps in [his] power to secure assets sufficient to pay full restitution," then it agrees to recommend that Mr. Lindberg's sentences in Case Nos. 3:23-cr-48 and 5:19-cr-22 should run concurrently and, if there is a consolidated sentencing proceeding, the Government will not object if the Court recommends that the Bureau of Prisons apply credit for any time served to the consolidated sentence. Plea Agreement ¶ 8(d), at 3.

such an order is appropriate as "an intermediate sanction" where a defendant needs to maintain employment, and here, Mr. Lindberg's full-time vocation in the next 90 days is taking steps to transfer assets to benefit the policyholders of his insurance companies while he awaits sentencing. *See* RRC Reference Guide 8.

Furthermore, Mr. Lindberg has eight children under the age of seven who currently live with him in Tampa, Florida. Mr. Lindberg is the sole parent providing care for these children as his fiancé Olivia Molina does not have a U.S. visa and lives in Spain. Ordering that Mr. Lindberg be detained at the RRC in Tampa will allow him to arrange necessary childcare for his children before his designation at a BOP facility. *See id.* (an RRC can help a defendant care for family while in custody).

Accordingly, Mr. Lindberg respectfully requests that the Court order that he be held in the custody of the Residential Reentry Center in Tampa, Florida, until he is designated at a Bureau of Prisons facility following sentencing. The Court should further order Mr. Lindberg to provide transportation and pay all expenses for agents of the U.S. Marshals Service to accompany him to the Tampa, Florida, Residential Reentry Center within 48 hours of the entry of the Order.

Dated: November 11, 2024

Respectfully submitted,

/s/ James F. Wyatt, III

| | |
|---|---|
| Brandon N. McCarthy (*pro hac vice*) | James F. Wyatt, III (NC Bar No. 13766) |
| Ryan J. Meyer (*pro hac vice*) | Robert A. Blake, Jr. (NC Bar No. 20858) |
| Katten Muchin Rosenman LLP | Wyatt & Blake, LLP |
| 2121 N. Pearl St., Suite 1100 | 402 W. Trade Street, Suite 101 |
| Dallas, Texas 75201 | Charlotte, NC 28202 |
| 214-765-3680 | 704-331-0767 |
| brandon.mccarthy@katten.com | jwyatt@wyattlaw.net |
| ryan.meyer@katten.com | rblake@wyattlaw.net |

*Counsel for Defendant Greg Lindberg*

## ARTIFICIAL INTELLIGENCE CERTIFICATION

Pursuant to the Court's June 18, 2024, Standing Order, which was published to the Bar of the Western District of North Carolina on June 27, 2024, the undersigned hereby certifies:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources Westlaw, Lexis, Fast Case, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 11th day of November, 2024.

/s/ James F. Wyatt, III
*Counsel for Defendant Greg Lindberg*