IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| United States of America,<br><br>v.<br><br>Greg Lindberg, *et al.*,<br><br>  *Defendants.* | No. 5:19-cr-22-DSC |

| | |
|---|---|
| United States of America,<br><br>v.<br><br>Greg Lindberg,<br><br>  *Defendant.* | No. 3:23-cr-48-DSC |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT GREG LINDBERG'S MOTION TO BE HELD AT A RESIDENTIAL REENTRY CENTER IN TAMPA, FLORIDA, OR, ALTERNATIVELY, IN THE WESTERN DISTRICT OF NORTH CAROLINA OR ELSEWHERE PENDING SENTENCING**

Defendant Greg Lindberg, by and through undersigned counsel, respectfully submits this Memorandum of Law in further support of his motion for an Order directing that, following his self-surrender to the United States Marshals Service on November 12, 2024, he be held at a residential reentry center ("RRC" or "halfway house") in Tampa, Florida (near his current home) or, alternatively, in the Western District of North Carolina or elsewhere, as opposed to a local jail, until he is designated for a facility by the Bureau of Prisons ("BOP") following sentencing.

As explained below, such a designation is specifically authorized by the relevant statutes, and it is critical that Mr. Lindberg be designated to an RRC so that

1

he can satisfy his obligations under his Plea Agreement to help secure the appointment of a Special Master and assist him in making full restitution to all policyholders and other entities entitled to restitution. *See* Plea Agreement ¶¶ 8-10, at 3-5, Case No. 2:23-cr-48, Docket Entry No. 40. To do so, Mr. Lindberg will need to communicate freely with his counsel to come to the terms of the joint motion that will govern the Special Master's appointment, *see id.* ¶ 9, at 4, and even after the Special Master is appointed, Mr. Lindberg anticipates needing to communicate frequently with the Special Master to assist him in identifying and selling assets, including appropriately valuing those assets to maximize their return and to assist with identifying potential purchasers and other logistics.

As it stands right now, Mr. Lindberg is being held at the Gaston County Jail, where it is impossible for him to communicate effectively. As detailed in a declaration that is being filed contemporaneously with this supplement, there are significant restrictions on Mr. Lindberg's ability to speak with counsel or anyone else, limited access to paper documents, and no ability to access electronic documents or communicate by e-mail. *See* Smith Decl. ¶¶ 7-10. Thus, the current conditions of Mr. Lindberg's detention risk rendering it impossible for him to honor his obligations under the Plea Agreement—through no fault of his own. *See id.* ¶ 11.

To avoid these issues, the Court should order that the United States Marshals Service transfer Mr. Lindberg to the custody of the RRC in Tampa, Florida, or, alternatively, the Western District of North Carolina or elsewhere pending sentencing.

**I. Specific statutory authority empowers this Court to order that Mr. Lindberg be held in the custody of an RRC pending sentencing.**

As Mr. Lindberg explained in his Motion, the Court may order that Mr. Lindberg be held at an RRC as "an intermediate sanction" to "prevent" a defendant "from losing employment or" to "help avoid the complete removal of" him as his family's "provider [and] caretaker that would otherwise result from . . . a traditional term of incarceration." Administrative Office of the U.S. Courts, *Residential Reentry Centers – Reference Guide* 8 (Mar. 2020) (*available at* https://www.uscourts.gov/file/28164/download) (hereinafter "RRC Reference Guide").

There are two sources for the Court's authority to commit Mr. Lindberg to the custody of an RRC—one under the Court's authority to set intermediate conditions of Mr. Lindberg's release pending sentencing, *see* 18 U.S.C. §§ 3142(c)(1)(B)(xiii) and 3143(a), and the other under this Court's authority to set the conditions of Mr. Lindberg's detention while awaiting sentencing, *see id.* §§ 3142(i) and 3143(a). Either way, ordering a defendant committed to an RRC is not only within the Court's authority but is a form of custody under the Bail Reform Act.

First, the Administrative Office of the U.S. Courts takes the position that a court may order a defendant committed to an RRC under its authority under 18 U.S.C. § 3142(c)(1)(B)(xiii). *See* RRC Reference Guide 3. Although this subsection falls under a court's authority to order intermediate conditions of release, it provides that a court may order that a defendant "*return to custody* for specified hours following release for employment, schooling, or other limited purposes," 18 U.S.C. § 3142(c)(1)(B)(xiii). Because, in the view of the Administrative Office of the U.S.

Courts, an RRC amounts to a return to custody, this establishes that an RRC is viewed as a form of detention.

Second, even if being committed to the custody of a halfway house is viewed as a form of conditional release, the Court has the authority to order a defendant into the custody of an RRC pending sentencing under 18 U.S.C. §§ 3142(i) and 3143(a)(1). Subsection 3142(i) provides that the Court may issue an order "permit[ting] the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). This, too, provides the Court with authority to order a defendant held in the custody of an RRC even while he is subject to presentencing detention.

Together, these provisions serve as mirror images, establishing this Court's authority to direct the U.S. Marshals Service to commit Mr. Lindberg to the custody of an RRC pending sentencing. And to the extent that this Court invokes its authority under subsection 3142(i), there are "compelling reason[s]" to do so, *id.*—an RRC will help Mr. Lindberg take all necessary and reasonable steps to satisfy his obligations under his Plea Agreement by providing an environment in which he may (1) help to secure the appointment of the Special Master and (2) communicate more easily and review the massive quantity of documentation needed to help the Special Master facilitate the payment of substantial restitution to victims in this case.

4

## II. The present conditions of Mr. Lindberg's detention are frustrating his ability to perform under the Plea Agreement and impair his ability to make restitution.

Unless the conditions of Mr. Lindberg's current detention improve, he will not be able to perform his obligations under the Plea Agreement. That in turn will harm policyholders and other victims of the crimes to which Mr. Lindberg pleaded guilty. And it will risk unwinding the entire Plea Agreement because, under the present conditions of his detention, Mr. Lindberg has no ability to perform material terms of that agreement through no fault of his own.

Under the Plea Agreement, Mr. Lindberg has agreed to make full restitution to certain insurance companies, which will require the sale of billions of dollars of assets, Plea Agreement ¶ 10(a), at 4, Case No. 3:23-cr-48, Docket Entry No. 40; to assist in making restitution, he has agreed to the appointment of a Special Master and must agree with the Government by December 4, 2024, on the terms of a joint motion to govern the Special Master's duties, *id.* ¶ 9, at 4; and the Government has agreed to make certain recommendations about Mr. Lindberg's sentence in the above-referenced matters if, "by no later than 30 days after the issuance of the initial draft presentence report issued by the United States Probation Office in this matter, [Mr. Lindberg] takes all necessary and reasonable steps in [his] power to secure assets sufficient to pay full restitution" to the insurance companies listed in the Plea Agreement, *id.* ¶ 8(d), at 3.

To carry out his obligations under the Plea Agreement, Mr. Lindberg will need to communicate freely with his counsel to come to the terms of the joint motion that will govern the Special Master's appointment, and even after the Special Master is

5

Case 3:23-cr-00048-MOC-DCK    Document 47    Filed 11/19/24    Page 5 of 9

appointed, Mr. Lindberg anticipates needing to communicate frequently with his counsel and the Special Master to assist the Special Master in identifying and selling assets, including appropriately valuing those assets to maximize their return and to assist with identifying potential purchasers of those assets and other logistics. Smith Decl. ¶ 11. This, in turn, will require Mr. Lindberg to have the ability to communicate by telephone and e-mail with lawyers, bankers, and others, and he will need to be able to review and recall a massive quantity of electronic and paper documents. *Id.*

As it stands right now, Mr. Lindberg cannot communicate effectively with his lawyers, let alone take the steps necessary to help secure the appointment of the Special Master and assist him with his duties. *See id.* Indeed, despite persistent efforts on the part of Mr. Lindberg's counsel, it took the Gaston County Jail nearly a week to authorize Mr. Lindberg to communicate with his counsel, and counsel has only been able to schedule one unmonitored phone call with Mr. Lindberg prior to this submission. Smith Decl. ¶¶ 3-7. The system that the jail has in place is error prone, and the audio quality is low, hampering counsel's ability to communicate effectively. *Id.* ¶ 7. Nor is there any opportunity for in-person visits. Counsel was informed that, following the pandemic, the jail has put in place restrictions that require visitors to communicate over the same video-conference software even if they are physically present at the jail. *Id.* ¶ 8.

Otherwise, Mr. Lindberg's ability to communicate is severely restricted. He can place collect calls to non-lawyers of limited duration, and only from a common area of the jail. *Id.* ¶ 9. There are also significant delays to receiving legal mail. *Id.* To avoid

those delays, a lawyer or paralegal can drop off legal correspondence at the jail, but it is located over 20 miles from downtown Charlotte, and communicating in this manner is time-consuming and expensive. *Id.* In addition, Mr. Lindberg has no ability to store significant amounts of paper at the jail. *Id.*

Mr. Lindberg also lacks the ability to communicate electronically. *Id.* ¶ 10. He has no access to e-mail or a computer. *Id.* He was told that he would be provided with a tablet computer, but to date, he has not received one, and it is unclear whether he will have the ability to access e-mail or review documents on that device if he ever receives access to it. *Id.*

Under these circumstances, even if this Court concludes that commitment to the custody of an RRC is a form of conditional release, there are "compelling reasons" to issue such an order under 18 U.S.C. § 3142(i): It will help ensure that Mr. Lindberg is committed to the custody of an institution capable of providing him with access to the resources needed so that he can help make full restitution under the terms of his Plea Agreement. *Cf. United States v. Stephens*, 447 F. Supp. 3d 63, 66-67 (S.D.N.Y. 2020) (concluding that restrictions on communications presented by the COVID-19 pandemic provided "compelling reasons" for ordering the defendant's temporary release to an appropriate person for purposes of allowing him to prepare his defense). As a result, this Court should order the United States Marshal's Service to work in conjunction with Pretrial Services to ensure the transfer of Mr. Lindberg to the custody of an RRC. *See* 18 U.S.C. § 3154(4) (requiring that Pretrial Services must

operate or contract for the custody or care of persons, including through "residential halfway houses").

## CONCLUSION

Mr. Lindberg respectfully requests that the Court order that he be held in the custody of the Residential Reentry Center in Tampa, Florida, or, alternatively, the Western District of North Carolina or elsewhere until he is designated at a Bureau of Prisons facility following sentencing. The Court should further order Mr. Lindberg to provide transportation and pay all expenses for agents of the U.S. Marshals Service to accompany him to the Tampa, Florida, Residential Reentry Center within 48 hours of the entry of the Order.

| | |
|---|---|
| Dated: November 19, 2024 | Respectfully submitted, |
| | /s/ James F. Wyatt, III |
| Brandon N. McCarthy (*pro hac vice*) | James F. Wyatt, III (NC Bar No. 13766) |
| Ryan J. Meyer (*pro hac vice*) | Robert A. Blake, Jr. (NC Bar No. 20858) |
| Katten Muchin Rosenman LLP | Wyatt & Blake, LLP |
| 2121 N. Pearl St., Suite 1100 | 402 W. Trade Street, Suite 101 |
| Dallas, Texas 75201 | Charlotte, NC 28202 |
| 214-765-3680 | 704-331-0767 |
| brandon.mccarthy@katten.com | jwyatt@wyattlaw.net |
| ryan.meyer@katten.com | rblake@wyattlaw.net |

*Counsel for Defendant Greg Lindberg*

## ARTIFICIAL INTELLIGENCE CERTIFICATION

Pursuant to the Court's June 18, 2024, Standing Order, which was published to the Bar of the Western District of North Carolina on June 27, 2024, the undersigned hereby certifies:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources Westlaw, Lexis, Fast Case, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 19th day of November, 2024.

/s/ James F. Wyatt, III
*Counsel for Defendant Greg Lindberg*