IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| United States of America,<br><br>v.<br><br>Greg Lindberg, *et al.*,<br><br>    *Defendants.* | No. 5:19-cr-22-MOC |

| | |
|---|---|
| United States of America,<br><br>v.<br><br>Greg Lindberg,<br><br>    *Defendant.* | No. 3:23-cr-48-MOC |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
TO BE HELD AT A RESIDENTIAL REENTRY CENTER
IN TAMPA, FLORIDA, PENDING SENTENCING**

The United States of America, by and through undersigned counsel, respectfully submits this response to Defendant's Motion to be Held at a Residential Reentry Center in Tampa, Florida, Pending Sentencing ("Defendant's Motion," Doc. 41). Defendant's Motion seeks an order from this Court directing the United States Marshals Service ("USMS") to hold Defendant at a self-selected residential reentry center ("RRC") in Tampa, Florida, which is near Defendant's home but far away from all of his counsel. As stated at the hearing in this matter on November 12, 2024, and for the reasons explained below, the United States objects to Defendant's extraordinary request and respectfully suggests that the Court should deny it and instead consider issuing an order requesting that USMS place Defendant in a location that facilitates his ability to communicate with

1

his counsel (whether in person or electronically) to the extent consistent with USMS's overall obligations and abilities.

As an initial matter, while Defendant's Motion cites authority for the Court to order placement in a RRC, it ignores that such authority explicitly references RRC placement as a condition of **pretrial release**. Defendant's Motion at 2. The March 2020 RRC Reference Guide cited by Defendant underscores this point in that it directs **pretrial services** in each judicial district "to operate or contract for the custody or care of persons on pretrial release, including residential halfway houses[.]" RRC Reference Guide at 3 (*citing* 18 U.S.C. § 3154(4)). Indeed, Defendant's Motion acknowledges that "RRCs are 'an alternative to pretrial detention.'" Defendant's Motion at 2, *citing* RRC Reference Guide at 2. The significance of this distinction is twofold. First, to state what is now obvious, placement in a RRC is not detention; it is an alternative to detention and a condition of pretrial release. This matters because Defendant has consented to detention while he awaits sentencing.[1] If Defendant wants to withdraw that consent and instead seek a modification of his conditions of pre-sentencing release, he should say so and the parties should move forward to consider the reported bond violations in both cases. Second, a Court order directing the Court's own pretrial services office does not implicate the myriad concerns identified by Courts that have addressed the question of whether they have authority to order the USMS to house a defendant at a particular facility.

Indeed, it is likely that this Court does not have the authority to direct the USMS to place Defendant in any particular facility. The USMS is charged with "provid[ing] for the safe-keeping of any person arrested, or held under authority of any enactment of Congress pending commitment

---

[1] It also implicates who is responsible for paying the costs of such placement: "Judiciary pays for RRC placement for pretrial defendants (unlike pretrial detention, which is paid for by the U.S. Marshals Service)." RRC Reference Guide at 9.

to an institution." 18 U.S.C. § 4086. The USMS is authorized to contract with other entities to house detainees. 18 U.S.C. §§ 4002, 4013(a). Federal regulation further authorizes the USMS to acquire "adequate and suitable detention space, health care and other services and materials required to support prisoners under the custody of the U.S. Marshal who are not housed in Federal facilities." 28 C.F.R. 0.111(o). "Courts have repeatedly recognized that this 'open-ended' grant of authority favors judicial deference to the USMS regarding the placement of detainees." *United States v. Thomas*, No. 3:20-CR-51, 2022 WL 2315624, at *4–5 (D. Conn. June 28, 2022), *citing Cometa v. Doe*, 2018 WL 11247169, at *1 (M.D. Fla. Aug. 15, 2018). In *Thomas*, the court, citing to other district court opinions from around the country, succinctly explained the rationale for such judicial deference:

> The USMS must evaluate many complexities in determining placement, including expense, administration, payment, and access to the premises, as well as whether a facility has room to house a prisoner, whether appropriate medical or psychiatric care is available for an inmate's specific needs, whether the inmate must be separated from other inmates in the custody of the Marshal, and whether the inmate will have reasonable access to his attorney given his proximity. In light of the USMS's broad grant of authority and its important policy interests, district courts have uniformly concluded that determining a detainee's placement is within the sole discretion of the USMS and, where applicable, have refused a detainee's request to be transferred to another facility.

*Id.* at 5 (cleaned up).

Even if this Court could lawfully order the USMS to place Defendant in a particular facility, it is unclear whether the USMS can practically arrange for Defendant to be placed at his requested choice for a number of reasons. First, it is not known whether the RRC in Tampa, Florida, which is run by private entity GEO Reentry, Inc.[2] and contracts with BOP, even has the space to accommodate Defendant. According to the BOP website, the requested facility has a total of only

---

[2] *See* https://www.bop.gov/locations/rrc/index.jsp?contract=AB5 (last accessed Nov. 15, 2024).

59 beds, only 52 of which are reserved for males.[3] Even if the Tampa RRC did have a space for Defendant, taking one of those 52 beds for Defendant would deny some other offender the benefits of the transition services provided by that RRC for Defendant's convenience. Second, it is unclear whether, and if so how, the USMS would transport Defendant to and from the Tampa RRC as necessary for sentencing and any other necessary hearings. The USMS in this District does not have established processes in place for transporting prisoners to/from this particular facility. Third, it is likely that, as with most BOP-managed facilities, Defendant's location monitoring devices would not be allowed at the Tampa RRC – meaning that Defendant would not be in custody nor subject to the Probation Officer's monitoring. Finally, should the Court order Defendant to be placed at the Tampa RRC and he remain there through sentencing, it is unclear how Defendant would ultimately be moved to his place of designation for purposes of serving his sentence imposed in this case.

Apart from all of the legal and logistical issues mentioned above, the Court should deny Defendant's specific request to be placed in the Tampa RRC because it is primarily based upon the Defendant's convenience and desire to be close to his family, and not on any issues worthy of the special treatment requested. Defendant's desire to be housed close to his home and family are shared by nearly all defendants that come before this Court. There is no reason to treat this Defendant differently.

In short, there is no good basis for granting Defendant's Motion, and it should be denied. That said, the United States recognizes that, as with all defendants, placing Defendant in certain local facilities may hamper Defendant's ability to communicate with his attorneys, who are primarily located in North Carolina and Texas. Further, Defendant's situation with respect to

---

[3] *Id.*

restitution is unique compared to most defendants given the complexity of his assets, the amount of restitution owed, and Defendant's claimed commitment to quickly taking the necessary steps to facilitate the payment of restitution. As the Court heard at the hearing on November 12, there are differing views concerning the amount of involvement that Defendant needs to have to facilitate the payment of restitution, but Defendant will undoubtedly need to have some involvement. As such, the United States does not object to the USMS, to the extent it is able, placing Defendant in a location that facilitates his ability to communicate with his counsel (whether in person or electronically). It is the undersigned's understanding based upon conversations with the USMS that the USMS has a facility already within its customary network that can accommodate Defendant's need to for ready electronic access to his counsel.

    Respectfully submitted this 19th day of November 2024.

| | |
|---|---|
| DENA J. KING<br>UNITED STATES ATTORNEY | GLENN S. LEON<br>CHIEF<br>CRIMINAL DIVISION, FRAUD SECTION |

**/s/ Daniel Ryan**
Assistant United States Attorney
United States Attorney's Office
IL Bar 6279737
227 West Trade Street, Suite 1650
Charlotte, N.C. 28202
Telephone: (704) 338-6222
Fax: (704) 344-6629
E-mail: Daniel.ryan@usdoj.gov

## ARTIFICIAL INTELLIGENCE CERTIFICATION

Pursuant to the Court's June 18, 2024, Standing Order, which was published to the Bar of the Western District of North Carolina on June 27, 2024, the undersigned hereby certifies:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources Westlaw, Lexis, Fast Case, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 19th day of November, 2024.

/s/ Daniel Ryan
*Assistant United States Attorney*