IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 3:23-CR-48-MOC |
| | ) | |
| v. | ) | |
| | ) | |
| GREG E. LINDBERG | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**JOINT MOTION FOR APPOINTMENT OF SPECIAL MASTER**

NOW COME the United States of America, by and through Dena J. King, United States Attorney for the Western District of North Carolina, Glenn S. Leon, Chief, Criminal Division, Fraud Section, and Greg E. Lindberg, by and through counsel, and submit this memorandum of law in support of the Joint Motion for Appointment of Special Master (Doc. No. 54) filed on December 5, 2024 (the "Joint Motion"). A proposed order will be submitted herewith.

1. As set forth in the Joint Motion, the parties recommend that the Court appoint Joseph Grier[1] of Grier Wright Martinez PA as the special master pursuant to 18 U.S.C. § 3664(d)(6). The parties further recommend that the Court appoint Scott Avila[2] of Paladin Management as the special master's financial advisor. The financial advisor would assist the special master in the performance of all tasks related to this Order. In so assisting the special master, the financial advisor should be allowed to utilize such other personnel at Paladin Management as reasonably necessary for the performance of his duties as Financial Advisor, and

---

[1] A Special Master Declaration outlining Mr. Grier's qualifications and standard rates is attached as Exhibit B.
[2] A Financial Advisor Declaration outlining Mr. Avila's qualifications and standard rates is attached as Exhibit C.

Paladin Management and such personnel should also be granted the rights and protections of "Financial Advisor" under terms of this Order.

2. Subject to paragraphs 4 and 5 below, if appointed and empowered to act in this case, a special master should perform the following necessary tasks:

   a. verify and quantify the losses suffered by each victim and any amounts already received by each victim to compensate for such losses;[3]

   b. identify all assets available for liquidation and/or repatriation for the benefit of the victims, including any such assets held by GBIG Capital, LLC, GBIG Holdings, Inc., PBX Holdings, LLC, PBX Bermuda Holdings, Ltd., BMX Holdings, LLC., BMX Bermuda Holdings, Ltd. and any of their subsidiaries, and to the extent those assets are not readily convertible to cash, determine a reasonable estimated value for those assets;

   c. select an appropriate method and timetable and seek Court approval to liquidate and/or repatriate any available assets for the benefit of the victims;

   d. oversee and help accomplish the liquidation with Court approval and/or repatriation of any available assets for the benefit of the victims;

   e. clear title to all assets for transfer to bona-fide buyers;

   f. fashion a proposed restitution order;

   g. apportion any available funds among the victims in accordance with the Court's restitution order and, if necessary, propose an apportionment methodology to be applied to future restitution payments received;

   h. receive and distribute restitution payments to victims in accordance with the Court's restitution order;

   i. cooperate and coordinate with any other receivers previously appointed over assets available for the benefit of the victims, such cooperation and coordination to include seeking modifications, if necessary, of any existing restraining orders and/or injunctions;

---

[3] Defendant reserves all rights with regard to any arguments regarding calculating loss amount. *See U.S.S.G.* § 2B1.1 Note 3(E)(formerly 2F1.1); *see also U.S. v. Lane*, 323 F.3d 568, 585-89 (7th Cir. 2003); *United States v. Monk*, No. 2:20-CR-22-WKW, 2020 WL 5219534 at *8-9 (M.D. Ala. Sept. 1, 2020). Restitution amounts should be reduced by any amount victims have recovered for the same losses. *See* 18 U.S.C. § 3664(j)(2).

j. retain a law firm, including his/her own, and/or other professionals to assist the special master in carrying out his/her duties;

k. provide periodic reports to the Court about the status of Defendant's restitution obligations; and

l. pay Defendant's outstanding and future legal fees if such fees and expenses have been approved by the Court.

3. To assist in meeting his restitution obligations, Defendant has agreed to take all necessary and reasonable steps in his power to secure in the exclusive possession and control of the special master, or one or more third parties selected by the special master, within 21 days of the entry of the Order requested herein, all of Defendant's, Global Growth Holdings, Inc.'s, and Global Growth Holdings, LLC's rights and interests, whether held directly or indirectly, in the following assets owned, controlled, and/or associated with Defendant and/or his entities or in which Defendant and/or his entities have an economic or controlling interest (collectively referred to as the "Primary Restitution Assets"):

a. AAPC Holdings, LLC and any related entities or trusts; and

b. New Hold Co. ("NHC") and the Specified Affiliated Companies, as defined in the June 27, 2019 Memorandum of Understanding (attached hereto as Exhibit A) and any related entities or trusts that include Specified Affiliated Companies.

4. The special master should regularly update the Parties throughout the diligence and/or sales process concerning any of the Primary Restitution Assets and should consult with the Parties to the extent the special master deems it helpful in fulfilling his duties under this Order.

5. In accomplishing the tasks enumerated above, the special master should attempt to meet Defendant's restitution obligations using all or part of the Primary Restitution Assets.

6. If the special master determines that the Primary Restitution Assets are or will likely be sufficient to fully satisfy Defendant's restitution obligations, he/she should not seek to liquidate additional assets owned, controlled, and/or associated with Defendant and/or his entities or in

which Defendant and/or his entities have an economic interest (the "Secondary Restitution Assets") until and unless he/she determines, and so notifies the Court, that the Primary Restitution Assets are not likely to be sufficient to fully satisfy Defendant's restitution obligations.

7. Defendant agrees to cooperate with the special master in carrying out the duties and responsibilities of the special master and to take all necessary steps identified by the special master to assist the special master in carrying out his/her duties.

8. Defendant also agrees to refrain from taking and/or cease taking any actions identified by the special master as interfering with the special master carrying out his/her duties. If Defendant fails to comply with a directive of the special master within 14 days of the special master advising Defendant, through Defendant's counsel, of such directive in writing, the special master may take any actions and/or cease taking any actions for, or on behalf of, Defendant to enable the special master to carry out his/her duties.

9. Any special master appointed by this Court should give due consideration to the Government's efforts and the efforts of others appointed by state or federal courts in the various lawsuits involving Defendant so as not to duplicate efforts and to minimize expenses. Duplicative work can and should be avoided.

10. Courts have approved of appointing special masters and have given them responsibilities similar to those being requested in the instant case. *See, e.g.*, *United States v. Vaughan*, No. 3:01CR11, 2008 U.S. Dist. LEXIS 98817, at *1 (W.D.N.C. Dec. 3, 2008) (Thornburg, J.) (special master appointed in case with losses totaling $33 million involving complicated, offshore, and/or inadequately documented financial transactions to assist in noticing potential victims, setting percentages for their losses, and ultimately distributing $3 million to more than 500 victims); *United States v. Olivares*, No. 3:13-CR-335, 2014 U.S. Dist. LEXIS 76743, at

4
Case 3:23-cr-00048-MOC-DCK    Document 55    Filed 12/20/24    Page 4 of 8

*2 (W.D.N.C. June 5, 2014) (Cogburn, J.) (special master, who was receiver in parallel civil case brought by U.S. Securities and Exchange Commission, appointed in $850 million Ponzi scheme with 900,000 potential victims in over 150 countries). Here, the requested relief is administratively reasonable; will further the interests of justice as to victim rights; will promote cooperative efforts between the parties, the Court, and others involved or interested; and will increase efficiency in the collection and timely distribution of restitution. Accordingly, for the aforementioned reasons, a court-appointed special master would be best suited to devise a plan and effectuate the restitution order in the best interests of administrative efficiency, justice, and the victims.

11. The special master should have the power to: (a) obtain such order(s) from the Court that he/she deems prudent or necessary to effectuate the payment of Defendant's restitution obligations; and (b) make a motion or application to the Court regarding instruction or clarification in connection with his/her powers in this matter.

12. All income tax reporting and payments, whether for periods prior to or during the terms of the Court's Order, should remain the obligation of Defendant. The special master should not be required to report any income generated by the Primary Restitution Assets (including interest earned), or to pay any income taxes due thereon, nor should the special master bear liability for the failure of Defendant to report said income to taxing authorities or pay the taxes associated with such income.

13. The special master would be acting solely in his/her capacity as special master, and the special master, the financial advisor, and any other professionals retained by the special master should have no personal liability for claims against Defendant, individually or collectively. With respect to any insurance coverage, the special master, and other parties with insurable interests, should be named as additional insureds on the policies for the period that the special master shall

be appointed. No person should be able to pursue any claim against the special master, the financial advisor, or any other professionals retained by the special master for any action or omission taken or made in connection with the special master's duties or powers without first seeking leave of the Court. Neither the special master, the financial advisor, nor any other professionals retained by the special master in connection with this matter should be liable to any person for any action or omission taken or made in good faith.

14. The special master should prepare quarterly interim statements (each, an "Interim Statement") that, among other things, reflect the fees and expenses of the special master, his/her financial advisors, and his/her retained counsel (if any) incurred for said period in carrying out the special master's duties, as well as those of any other professionals the special master deems appropriate. The Interim Statements should also reflect the fees and expenses of Defendant's counsel if such fees and expenses have been provided to the special master. Such Interim Statements should be submitted to the Court for its approval and confirmation, in the form of either a noticed interim request for fees or a special master's final account and report. Upon the Court's approval of each Interim Statement, the special master should pay such approved fees and expenses from the assets administered by the special master that the special master determines are reasonably available to satisfy such fees and expenses or as otherwise directed by the Court, including, to the extent authorized by otherwise applicable law, from cash balances held within trusts and other subsidiaries that hold the Primary Restitution Assets.

15. The parties and/or the special master should be authorized to make motion or application to this Court to expand or narrow the scope of Primary Restitution Assets, which should be heard upon notice and hearing.

16. None of the authority vested in the special master by the Court is intended to compel or authorize the special master to violate any other federal or state court orders.

Respectfully submitted this 20th day of December, 2024.

| | |
|---|---|
| DENA J. KING<br>UNITED STATES ATTORNEY | GLENN S. LEON<br>CHIEF<br>CRIMINAL DIVISION, FRAUD SECTION |
| */s/ Daniel Ryan* | */s/ Lyndie M. Freeman* |
| Assistant United States Attorney<br>United States Attorney's Office<br>IL Bar 6279737<br>227 West Trade Street, Suite 1650<br>Charlotte, N.C. 28202<br>Telephone: (704) 338-6222<br>Fax: (704) 344-6629<br>E-mail: daniel.ryan@usdoj.gov | Lyndie M. Freeman<br>Trial Attorney<br>Fraud Section, Criminal Division<br>United States Department of Justice<br>Georgia Bar No. 119499<br>1400 New York Avenue<br>Washington, DC 20005<br>Telephone: 202-616-5315<br>Email: lyndie.freeman@usdoj.gov |

*/s/ Ryan J. Meyer*
Ryan J. Meyer
ryan.meyer@katten.com
Admitted *Pro Hac Vice*

James F. Wyatt, III
NC State Bar No.: 13766
Robert A. Blake, Jr.
NC State Bar No.: 20858

Brandon N. McCarthy
brandon.mccarthy@katten.com
Admitted *Pro Hac Vice*

NC State Bar No.: 13766
Robert A. Blake, Jr.
NC State Bar No.: 20858

**KATTEN MUCHIN ROSENMAN LLP**
2121 N. Pearl St., Suite 1100
Dallas, Texas 75201
Telephone: (214) 765-3680
Facsimile: (214) 765-3200

**WYATT & BLAKE, LLP**
402 W. Trade Street, Suite 101
Charlotte, North Carolina 28202
Telephone: (704) 331-0767
Facsimile: (704) 331-0773
jwyatt@wyattlaw.net
rblake@wyattlaw.net

*Attorneys for Defendant Greg E. Lindberg*

## ARTIFICIAL INTELLIGENCE CERTIFICATION

Pursuant to the Standing Order of this Court entered June 18, 2024, and published to the Bar of the Western District on June 27, 2024, the undersigned hereby certify that:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Dated: December 20, 2024

/s/ Daniel Ryan
*Assistant United States Attorney*