UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3-23-cr-48-MOC

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| GREG E. LINDBERG | ) |

**ORDER APPOINTING SPECIAL MASTER**

**THIS MATTER IS BEFORE THE COURT** on the Joint Motion for Appointment of Special Master, filed by the United States and Defendant Greg E. Lindberg on December 5, 2024. (Doc. No. 54). The motion is **GRANTED**.

**THE COURT HEREBY FINDS AS FOLLOWS:**

1. On February 23, 2023, in a thirteen-count Bill of Indictment, Defendant was charged with conspiracy, in violation of 18 U.S.C. § 371; wire fraud, in violation of 18 U.S.C. § 1343; making false insurance business statements presented to regulators, in violation of 18 U.S.C. § 1033(a); making false entries about the financial condition or solvency of an insurance business, in violation of 18 U.S.C. § 1033(c); and money laundering conspiracy, in violation of 18 U.S.C. § 1956(h). (Doc. No. 1). The indictment alleged, among other things, that as of September 30, 2022, Defendant owed certain insurance companies more than $1.1 billion. (Id. at ¶ 185).

2. On November 12, 2024, Defendant pleaded guilty to Counts One and Thirteen pursuant to a written plea agreement. In the plea agreement, Defendant agreed, among other things, to pay full restitution and to the appointment of a special master to "identify, receive, apportion, and distribute funds for restitution, and perform any other related tasks as ordered by the Court." (Doc. No. 40). In paragraph 10(a) of the plea agreement, Defendant also agreed "to pay full restitution" to all victims of the conduct charged in the Bill of Indictment, including the following

insurance companies and their impacted policyholders: Southland National Insurance Company; Southland National Reinsurance Corporation; Bankers Life Insurance Company; Colorado Bankers Life Insurance Company; Universal Life Insurance Company of Puerto Rico; PB Life and Annuity Co., Ltd.; Omnia Ltd.; Northstar Financial Services (Bermuda) Ltd.; PB Investment Holdings Ltd.; and Universal Life Insurance Company. (Id.).

3. Under the Crime Victims' Rights Act, 18 U.S.C. § 3771, victims are accorded specific rights, and the Act confirms that victims have "[t]he right to full and timely restitution as provided in law." 18 U.S.C. § 3771(a)(6).

4. To fashion a restitution order, the Court must consider and determine: (a) which entities and individuals are properly considered "victims" pursuant to 18 U.S.C. § 3663A(a)(2); (b) the proper amount of restitution owed to each victim pursuant to 18 U.S.C. §§ 3663A(b) and 3664(e); and (c) an appropriate payment schedule pursuant to, among other sections, 18 U.S.C. § 3664(i).

5. In this case, complicated issues are likely to arise in determining an appropriate restitution order because, among other reasons: (a) there are several insurance company victims that collectively have thousands of wronged policyholders; (b) the amount of restitution owed is substantial; (c) several of the insurance company victims are in liquidation proceedings; (d) some of the victims have received, or may before sentencing receive, various amounts of repayment of their outstanding debts; (d) priority of payment, if applicable, amongst victims has yet to be determined; (e) certain property or assets may have joint or overlapping ownership and/or may be subject to various third party claims; (f) certain victims may have civil judgments for money damages against Defendant and his entities; and (g) Defendant's business assets from which restitution will likely be paid are not readily convertible into cash.

2

6. Some of the victims have been severely financially impacted by Defendant's conduct and need whatever restitution can be provided as soon as possible. Accordingly, it is imperative that the parties take steps to maximize the amount of restitution that is recovered and paid.

7. It would be unduly burdensome for the Government, the Probation Office, the Clerk of Court, and the investigative agencies to attempt this process. As a result, an experienced, neutral, and disinterested person should be appointed to assist the Court. Section 3664 authorizes courts to "refer any issue arising in connection with a proposed order of restitution to a magistrate judge or special master for proposed findings of fact and recommendations as to disposition, subject to a de novo determination of the issue by the court." 18 U.S.C. § 3664(d)(6). It would conserve the resources of this Court and others if a special master is appointed to resolve victim and restitution issues in this case under the Court's supervision and guidance.

8. The parties recommend that the Court appoint Joseph Grier of Grier Wright Martinez PA as the special master pursuant to 18 U.S.C. § 3664(d)(6). The parties further recommend that the Court appoint Scott Avila of Paladin Management as the special master's financial advisor to assist the special master in the performance of all tasks related to this Order. Mr. Grier and Mr. Avila have submitted declarations outlining their qualifications and standard rates. Mr. Grier and Mr. Avila are well-qualified to serve in these roles, and the Court finds that their standard rates appear reasonable.

9. To assist in meeting his restitution obligations, Defendant has agreed to take all necessary and reasonable steps in his power to secure in the exclusive possession and control of the special master, or one or more third parties selected by the special master, within 21 days of the entry of this Order, all of Defendant's, Global Growth Holdings, Inc.'s, and Global Growth

Holdings, LLC's rights and interests, whether held directly or indirectly, in the following assets owned, controlled, and/or associated with Defendant and/or his entities or in which Defendant and/or his entities have an economic or controlling interest (collectively referred to as the "Primary Restitution Assets"):

    a. AAPC Holdings, LLC and any related entities or trusts; and

    b. New Hold Co. ("NHC") and the Specified Affiliated Companies, as defined in the June 27, 2019 Memorandum of Understanding and any related entities or trusts that include Specified Affiliated Companies.[1]

10. Defendant has agreed to cooperate with the special master in carrying out the duties and responsibilities of the special master and to take all necessary steps identified by the special master to assist the special master in carrying out his/her duties pursuant to this Order. Defendant has also agreed to refrain from taking and/or cease taking any actions identified by the special master as interfering with the special master carrying out his/her duties.

11. Courts have approved of appointing special masters and have given them responsibilities similar to those being requested in the instant case. See, e.g., United States v. Vaughan, No. 3:01CR11, 2008 U.S. Dist. LEXIS 98817, at *1 (W.D.N.C. Dec. 3, 2008) (Thornburg, J.) (special master appointed in case with losses totaling $33 million involving complicated, offshore, and/or inadequately documented financial transactions to assist in noticing potential victims, setting percentages for their losses, and ultimately distributing $3 million to more than 500 victims); United States v. Olivares, No. 3:13-CR-335, 2014 U.S. Dist. LEXIS 76743, at *2 (W.D.N.C. June 5, 2014) (Cogburn, J.) (special master, who was receiver in parallel civil case

---

[1] See Exhibit A to the Memorandum of Law in Support of the Joint Motion for Appointment of Special Master (Doc. No. 55-1).

brought by U.S. Securities and Exchange Commission, appointed in $850 million Ponzi scheme with 900,000 potential victims in over 150 countries). Here, the requested relief is administratively reasonable; will further the interests of justice as to victim rights; will promote cooperative efforts between the parties, the Court, and others involved or interested; and will increase efficiency in the collection and timely distribution of restitution. Accordingly, for the aforementioned reasons, a court-appointed special master would be best suited to devise a plan and effectuate the restitution order in the best interests of administrative efficiency, justice, and the victims.

**IT IS THEREFORE ORDERED** that the Joint Motion For Appointment of Special Master is **GRANTED**.

**IT IS FURTHER ORDERED** that:

1. Joseph Grier of Grier Wright Martinez PA (the "Special Master") is appointed as Special Master pursuant to 18 U.S.C. § 3664(d)(6).

2. Scott Avila of Paladin Management (the "Financial Advisor") is appointed as the Special Master's Financial Advisor. The Financial Advisor shall assist the Special Master in the performance of all tasks related to this Order. In so assisting the special master, the financial advisor shall be allowed to utilize such other personnel at Paladin Management as reasonably necessary for the performance of his duties as Financial Advisor, and Paladin Management and such personnel should also be granted the rights and protections of "Financial Advisor" under terms of this Order.

3. The Special Master is hereby empowered to perform the following necessary tasks:

a. verify and quantify the losses suffered by each victim and any amounts already received by each victim to compensate for such losses;[2]

b. identify all assets available for liquidation and/or repatriation for the benefit of the victims, including any such assets held by GBIG Capital, LLC, GBIG Holdings, Inc., PBX Holdings, LLC, PBX Bermuda Holdings, Ltd., BMX Holdings, LLC., BMX Bermuda Holdings, Ltd. and any of their subsidiaries, and to the extent those assets are not readily convertible to cash, determine a reasonable estimated value for those assets;

c. select an appropriate method and timetable and seek Court approval to liquidate and/or repatriate any available assets for the benefit of the victims;

d. oversee and help accomplish the liquidation with Court approval and/or repatriation of any available assets for the benefit of the victims;

e. clear title to all assets for transfer to bona-fide buyers;

f. fashion a proposed restitution order;

g. apportion any available funds among the victims in accordance with the Court's restitution order and, if necessary, propose an apportionment methodology to be applied to future restitution payments received;

h. receive and distribute restitution payments to victims in accordance with the Court's restitution order;

---

[2] Defendant has reserved all rights with regard to any arguments regarding calculating loss amount. See U.S.S.G. § 2B1.1Note 3(E)(formerly 2F1.1); see also U.S. v. Lane, 323 F.3d 568, 585-89 (7th Cir. 2003); United States v. Monk, No. 2:20-CR-22-WKW, 2020 WL 5219534 at **8–9 (M.D. Ala. Sept. 1, 2020). Restitution amounts should be reduced by any amount victims have recovered for the same losses. See 18 U.S.C. § 3664(j)(2).

i. cooperate and coordinate with any other receivers previously appointed over assets available for the benefit of the victims, such cooperation and coordination to include seeking modifications, if necessary, of any existing restraining orders and/or injunctions;

j. retain a law firm, including his own, and/or other professionals to assist the Special Master in carrying out his duties;

k. provide periodic reports to the Court about the status of Defendant's restitution obligations; and

l. pay Defendant's outstanding and future legal fees if such fees and expenses have been approved by the Court.

4. Defendant shall take all necessary and reasonable steps in his power to secure in the exclusive possession and control of the Special Master, or one or more third parties selected by the Special Master, within 21 days of the entry of this Order, all of Defendant's, Global Growth Holdings, Inc.'s, and Global Growth Holdings, LLC's rights and interests, whether held directly or indirectly, in the Primary Restitution Assets.

5. The Special Master shall regularly update the Parties throughout the diligence and/or sales process concerning any of the Primary Restitution Assets and should consult with the Parties to the extent the Special Master deems it helpful in fulfilling his duties under this Order.

6. In accomplishing the tasks enumerated above, the Special Master shall attempt to meet Defendant's restitution obligations using all or part of the Primary Restitution Assets.

7. If the Special Master determines that the Primary Restitution Assets are or will likely be sufficient to fully satisfy Defendant's restitution obligations, he shall not seek to liquidate additional assets owned, controlled, and/or associated with Defendant and/or his entities or in

which Defendant and/or his entities have an economic interest (the "Secondary Restitution Assets") until and unless he determines, and so notifies the Court, that the Primary Restitution Assets are not likely to be sufficient to fully satisfy Defendant's restitution obligations.

8. Defendant shall cooperate with the Special Master in carrying out the duties and responsibilities of the Special Master and take all necessary steps identified by the Special Master to assist the Special Master in carrying out his duties pursuant to this Order. Defendant shall also refrain from taking and/or cease taking any actions identified by the Special Master as interfering with the Special Master carrying out his/her duties. If Defendant fails to comply with a directive of the Special Master within 14 days of the Special Master advising Defendant, through Defendant's counsel, of such directive in writing, the Special Master may take any actions and/or cease taking any actions for, or on behalf of, Defendant to enable the Special Master to carry out his duties.

9. The Special Master shall give due consideration to the Government's efforts and the efforts of others appointed by state or federal courts in the various civil lawsuits involving Defendant so as not to duplicate efforts and to minimize expenses.

10. The Special Master shall have the power to: (a) obtain such further order(s) from the Court that he deems prudent or necessary to effectuate the payment of Defendant's restitution obligations; and (b) make a motion or application to the Court regarding instruction or clarification in connection with his powers in this matter.

11. All income tax reporting and payments, whether for periods prior to or during the terms of this Order, shall remain the obligation of Defendant. The Special Master shall not be required to report any income generated by the Primary Restitution Assets (including interest earned), or to pay any income taxes due thereon, nor shall the Special Master bear liability for the

8

failure of Defendant to report said income to taxing authorities or pay the taxes associated with such income.

12. The Special Master has the power to employ a law firm, including his own, and/or other professionals in this matter as reasonably necessary to accomplish the purposes of this Order without further application to the Court.

13. The Special Master will be acting solely in his capacity as Special Master, and the Special Master, the Financial Advisor, and any other professionals retained by the Special Master shall have no personal liability for claims against Defendant, individually or collectively. With respect to any insurance coverage, the Special Master, and other parties with insurable interests, should be named as additional insureds on the policies for the period that the Special Master shall be appointed. No person may pursue any claim against the Special Master, the Financial Advisor, or any other professionals retained by the Special Master for any action or omission taken or made in connection with the Special Master's powers or duties under this Order without first seeking leave of the Court. Neither the Special Master, the Financial Advisor, nor any other professionals retained by the Special Master in connection with this matter shall be liable to any person for any action or omission taken or made in good faith.

14. The Special Master shall prepare quarterly interim statements (each, an "Interim Statement") that, among other things, reflect the fees and expenses of the Special Master, his/her financial advisors, and his/her retained counsel (if any) incurred for said period in carrying out the Special Master's duties, as well as those of any other professionals the Special Master deems appropriate. The Interim Statements should also reflect the fees and expenses of Defendant's counsel if such fees and expenses have been provided to the Special Master. Such Interim Statements should be submitted to the Court for its approval and confirmation, in the form of

either a noticed interim request for fees or a Special Master's final account and report. Upon the Court's approval of each Interim Statement, the Special Master shall pay such approved fees and expenses from the assets administered by the Special Master that the Special Master determines are reasonably available to satisfy such fees and expenses or as otherwise directed by the Court, including, to the extent authorized by otherwise applicable law, from cash balances held within trusts and other subsidiaries that hold the Primary Restitution Assets.

15. The parties and/or the Special Master shall be authorized to make motion or application to this Court to expand or narrow the scope of Primary Restitution Assets, which shall be heard upon notice and hearing.

16. None of the authority vested in the Special Master by the Court is intended to compel or authorize the Special Master to violate any other federal or state court orders.

**SO ORDERED**.

Signed: January 23, 2025

Max O. Cogburn Jr.
United States District Judge