# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>GREG E. LINDBERG,<br><br>    Defendant. | Case No. 3:23-CR-48-MOC |

## KATTEN MUCHIN ROSENMAN LLP'S MEMORANDUM IN SUPPORT OF UNOPPOSED FIRST MOTION FOR PAYMENT OF FEES AND EXPENSES

Katten Muchin Rosenman LLP ("Katten"), through Ryan J. Meyer as counsel of record for Mr. Lindberg, hereby submits this *Memorandum in Support of Unopposed First Motion for Payment of Fees and Expenses* (this "Memorandum") in support of *Katten Muchin Rosenman's First Unopposed Motion for Payment of Fees and Expenses*.

The Motion and this Memorandum were presented to the Special Master for review and he does not oppose the entry of orders approving these fees.

### I.     INTRODUCTION

1. As more fully discussed below, Mr. Lindberg has been subject to a series of interrelated criminal and civil actions by the Department of Justice ("DOJ") and the Securities and Exchange Commission ("SEC") since 2019. As a part of Mr. Lindberg's plea agreement in the present case, the DOJ agreed to a multi-step process for the approval and payment of Mr. Lindberg's counsel's fees whereby they were subject to review by the Special Master appointed in this case and then approval by the Court. The Court memorialized this process in the Order

Appointing the Special Master. FN[1] Dkt. 56. This Motion and supporting Memorandum are submitted to the Court for its review in accordance with that process.

2. DOJ indicted Mr. Lindberg in the Western District of North Carolina in March 2019, along with co-defendants John Gray, John Palermo, and Robin Hayes in a five-count indictment. Case No. 5:19-cr-22 in the Western District of North Carolina (the "Public Corruption case"). Case No. 5:19-cr-22 ("Br. Dkt."), Br. Dkt. 3. Messrs. Lindberg, Gray, and Palermo were indicted on two counts. Mr. Hayes alone was charged on all five counts, including three false statement counts (18 U.S.C. § 1001). After being convicted in an initial trial in February and March 2020, Mr. Lindberg's conviction was vacated by the Fourth Circuit and remanded for re-trial. As more fully discussed below in Section A.i, Mr. Lindberg's retrial was conducted in May 2024. Mr. Lindberg was convicted at his retrial and is currently awaiting sentencing before this Court. Br. Dkt. 497 at p.2; Br. Dkt. Text Order on July 22, 2025.

3. In August 2022, the SEC filed a civil complaint against Mr. Lindberg in the Middle District of North Carolina alleging that he and two co-conspirators (Christopher Herwig and Standard Advisory Services Limited) violated the antifraud provisions of the Investment Advisers Act of 1940 by improperly directing investments from his insurance companies into a series of related operating companies through a series of complex investment structures. Case No. 1:22-cv-715 in the Middle District of North Carolina (the "SEC case"). SEC Dkt. 1. As more fully discussed below in Sections A.ii and A. iii, the factual allegations in the SEC case are substantially identical to a portion of the Financial case, so Mr. Lindberg litigated the SEC case throughout 2024 as a means of preparing for potential trials in both the SEC and Financial cases. Following Mr. Lindberg's plea agreement in the Financial case, Mr. Lindberg reached a bifurcated settlement

---

[1] "FN Dkt." refers to the docket of this case.

with the SEC in March 2025. SEC Dkt. 117. A final judgment will be entered in the SEC case following Mr. Lindberg's sentencing in this case.

4.     In February 2023, Mr. Lindberg was indicted in the Western District of North Carolina in a thirteen-count indictment charging him with one count of conspiracy to commit crimes in connection with the insurance business, wire fraud, and investment adviser fraud; one count of wire fraud; four counts of false insurance business statements presented to regulators; six counts of false entries about the financial condition or solvency of an insurance business; and one count of conspiracy to commit money laundering. Case No. 3:23-cr-48 in the Western District of North Carolina (the "Financial case"). FN Dkt. 1. Mr. Lindberg's co-conspirators Chris Herwig (also a co-defendant in the SEC case) and Devin Solow were charged separately by information in 2022. On November 12, 2024, Mr. Lindberg pleaded guilty to Counts One (conspiracy to commit crimes in connection with the insurance business, wire fraud, and investment advisor fraud) and Thirteen (money laundering conspiracy) of the Financial case, pursuant to a written plea agreement. FN Dkt. 40. Among other things, Mr. Lindberg agreed to the appointment of a Special Master in the Financial Case to determine and pay restitution to the victims in this case as well as pay fees for his counsel following approval of such fees by this Court. Following a joint motion by DOJ and Mr. Lindberg, this Court appointed Joseph W. Grier, III as special master to, among other things, "pay Defendant's outstanding and future legal fees if such fees and expenses have been approved by the Court." FN Dkt. 54, 55, 56.

## II.     FACTUAL BACKGROUND

   *i.  Public Corruption Retrial*

5.      Prior to the first trial, Mr. Hayes entered a plea deal with the Department of Justice ("DOJ") to one false statement count and a dismissal of the other charges against him. Br. Dkt. 70. Mr. Hayes was sentenced to 1 year of probation, Br. Dkt. 257, and was subsequently pardoned.

6.      At the first trial, Mr. Palermo was acquitted. Mr. Lindberg was convicted on both counts and sentenced to 87 months of imprisonment and three years of supervised release. Br. Dkt. 261. Mr. Gray was also convicted on both counts and sentenced to 30 months of imprisonment and two years of supervised release. Br. Dkt. 262. The Fourth Circuit then vacated the convictions and remanded for re-trial.

7.      In the meantime, with respect to the Financial Fraud Case at hand, Mr. Lindberg was indicted on February 23, 2023. FN Dkt. 1. The indictment generated new discovery which had to be reviewed for the public corruption retrial.

8.      The work required for the retrial from April to November 2024 can be broken down into several categories and is well reflected by the numerous docket entries that appear during that time period. Such categories include re-evaluation of the legal landscape and evolving law in preparation for retrial; development of a new litigation strategy in light of the appellate court's ruling; trial preparation including witnesses, exhibits, and experts for trial; jury selection; voir dire strategy; pretrial and post-conviction motions; and physical trial time.

9.      Although defense counsel previously tried this case, the effort to prepare for a retrial did not duplicate past work. Rather, preparing for and trying this case required a reconstruction of strategy and legal framing in light of new circumstances, legal clarification, and trial dynamics. This included reviewing thousands of pages of transcripts, updating legal theories,

and preparing for cross-examinations that would address both prior testimony and appellate guidance.

10. Following Mr. Lindberg's conviction in May 2024, Katten also spent significant resources researching and drafting post-conviction motions and preparing for a potential appeal, until that was mooted at DOJ's request as a part of the plea agreement in the Financial case.

*ii. Financial Case*

11. As discussed above, this case was generated via indictment on February 23, 2023. Katten has served as counsel for Mr. Lindberg since 2019—from investigation through to present. DOJ's lengthy investigation required countless meetings internally and externally, witness interviews, strategy sessions, document review, legal research, and numerous other tasks to support Mr. Lindberg's defense.

12. Post-indictment, Katten has zealously advocated for Mr. Lindberg. This included plea negotiations, discovery, witness interviews, motion drafting, legal research on multiple unique and complex issues raised by this case, strategy sessions, physical court time, and numerous other tasks necessary for Mr. Lindberg's defense.

13. After Mr. Lindberg's guilty plea, which itself required significant effort to negotiate given the complex and multi-faceted nature of this matter, Katten has represented Mr. Lindberg with respect to cooperation with the appointment of a special master and the requirements there under. This included ensuring Mr. Lindberg assigned assets to the special master, constant communication with the special master and all parties involved, facilitating sales to generate fund to pay victims—potentially in full, discussions with interested third parties, and assisting the parties' interactions with the same. Working to meet Mr. Lindberg's obligations has required a significant amount of legal work, such as developing strategies for maximizing value, advocating

for Mr. Lindberg's positions based on review and research, and reviewing numerous lengthy documents and agreements to unwind a complex web of entities to ensure victims are maximally compensated.

14. With respect to representing Mr. Lindberg in assisting with the special master's duties, the special master noted himself in his *Consent Motion for Order Approving Disposition of Net Proceeds from the Sale of the Clanwilliam Group of Companies* the sheer complexity of the disposition of assets to meet future restitution obligations. FN Dkt. 66.

15. The docket entries in this matter indicate a significant number of filings by Mr. Lindberg, which further underscores the depth, complexity, and cost of the representation.

16. Further, Mr. Lindberg's plea agreement specifically provides for payment of his legal fees. FN Dkt. 40.

   *iii.* *SEC Case*

17. As noted above, the SEC case contains factual allegations that are substantially similar to multiple counts in the Financial case. In addition, the document discovery in the SEC case contained several million pages of documents also produced in the Financial case and there was a significant overlap in the key witnesses in both cases.

18. In the course of defending the SEC case, Katten addressed a number of the same factual issues that arose in the Financial case, including a massive amount of discovery review that required parsing and organizing millions of documents for targeted review. This extensive review necessitated progressive level review by an outside contractor and then Katten attorneys. Katten's review strategy was developed based on countless research topics and as discovery progressed, which required constant attention to the posture of the case.

19. Katten also had to perform multiple witness interviews to gather discovery and for the deposition preparation of numerous witnesses. Katten also took the depositions of the other two parties in the SEC case (several over multiple days) as well as a dozen third-party fact witnesses (all of whom likely would have been fact witnesses in the Financial case). Katten also had to prepare and defend Mr. Lindberg for his own deposition in the SEC case.

20. The SEC also forced Katten to engage in defending a motion to compel and filed at least one motion to compel a third-party fact witness (and drafted several more for witnesses who ultimately decided to cooperate).

21. Additionally, Katten kept in frequent contact with the SEC to argue and resolve factual disputes, discuss motions and filings, and ultimately reached a conclusion of the matter by accepting SEC allegations via a no-contest motion for summary judgment on February 27, 2025. SEC Dkt.106, 112. The court rendered judgment on March 13, 2025 and retained jurisdiction to determine penalties with ten days of Mr. Lindberg's sentencing. SEC Dkt. 117.

### III. REQUEST TO PAY FEES AND EXPENSES

22. For the above-described work, Katten respectfully requests the payment of its fees and expenses for the period of April 1, 2024 through June 30, 2025.

23. The Motion and Memorandum was presented to the Special Master for review and he does not oppose the entry of orders approving these fees.

24. Katten requests that the Court approve, and the Special Master be directed to pay, fees in the amount of $2,153,156.02[2] and expenses in the amount of $897,148.84—a total of

---

[2] For comparison's sake, the North Carolina Insurance Companies paid attorney's fees and expenses of approximately $4,431,093 for their related litigation against Mr. Lindberg in calendar year 2024. *See, e.g.*, Quarterly Rehabilitation Reports for Colorado Bankers Life Insurance, Bankers Life Insurance Company, and Southland National Life Insurance Corporation, *available at*: https://cblife.com/quarterly-rehabilitation-reports/.

$3,050,304.86.[3] As more fully set forth in the Declaration of Brandon N. McCarthy (the "McCarthy Declaration"), attached hereto as Exhibit A, these fees are reasonable and necessary. In addition, Katten has ensured that its staffing on these matters is as efficient as possible given the complex nature of the myriad issues presented by Mr. Lindbergs' proceedings and has not billed for any duplicative work.

25. In recognition of the unique nature of this payment process, Katten's fee request of $2,153,156.02 *already* represents a 15% reduction of the billing rates for all timekeepers on these matters. As a result, Katten's fee request represents a *total* discount of $379,968.71.

## IV. THE MOTION SHOULD BE GRANTED

26. The Court should grant Katten's request for its fees and expenses resulting from Mr. Lindberg's defense. Because Mr. Lindberg's plea agreement contemplated that Katten would be compensated for its attorneys' fees and because, as set forth below, Katten's fees are reasonable, and this Court should enter an order to distribute funds to Katten for fees in the amount of $2,153,156.02 and expenses in the amount of $897,148.84.

27. Courts have relied on the recommendations of a special master in determining distribution of legal fees without any further analysis of reasonableness under a factor test. For example, a case involving life insurance companies with numerous impacted policyholders adopted the report of a Special Master approving an attorneys' fees award of approximately $8 million. *See Dickman v. Banner Life Ins. Co.*, 660 F. Supp. 3d 436, 439-40 (D. Md. 2023). The court declined to consider any other factors for reasonableness of fees. *Id.* Katten's requested fees—roughly 33% of those awarded in *Dickman*—represent reasonable and efficient advocacy in a complex and lengthy series of cases.

---

[3] Katten's redacted invoices are attached at Exhibit A-1.

28. In the alternative, the Fourth Circuit evaluates the reasonableness of requested attorneys' fees by looking to twelve factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *Barber v. Kimbrell's, Inc.*, 557 F.2d 216, 226 n.28 (4th Cir. 1978); *see also Hogan v. Cherokee County*, No. 1:18-cv-00096-MR-WCM, 2022 WL 526008, at *2 (W.D.N.C. Feb. 22, 2022) (evaluating the reasonableness of attorneys' fees under the twelve factors).

29. Each of the relevant factors weighs in favor of a finding that Katten's requested attorneys' fees are reasonable. Mr. Lindberg's counsel expended the necessary amount of time to defend a sprawling and complex series of interrelated enforcement and litigation matters that included numerous legal projects as set forth previously and below. *See* Exhibit A.

30. Mr. Lindberg's defense, ongoing after more than five years, involved difficult and complex questions requiring significant skill to navigate and address  As is evident from the Indictment, the Plea Agreement, the Special Master Order, and as is addressed in the Special Master's First Status Report, this Case involves complicated issues because, among other reasons: there are several insurance company victims with tens of thousands of impacted policyholders; several of the insurance company victims are in liquidation proceedings; several victims have received, or will receive, compensatory payments from other sources; certain of the Defendant's

assets are subject to substantial third-party claims; certain victims have civil judgments for money damages against Defendant and his assets; and Defendant's assets are not readily convertible to cash. FN Dkt. 56, at 2. Other complicating factors include the complex corporate governance structure of the Primary Restitution Assets, the secured debt obligations on unfavorable terms encumbering the Defendant's assets, and the numerous pending civil actions with the potential to disrupt the Special Master's efforts.

31. In addition, these cases are all interrelated, which requires a careful balancing act in managing the cases together. The complexity of these issues is further demonstrated given the interrelated nature of each of the cases. As noted throughout, each case involved overlapping evidence of relevant conduct despite each case targeting different specific legal issues. Each case required different defense strategies, filings, negotiations, depositions, discovery productions, witness interviews, among numerous other required tasks. For example, handling the civil SEC case in parallel with the criminal Financial case required special attention to the effect of certain actions and discovery. One strategy could be beneficial to one case while being detrimental to the other. This required a tight rope balancing act, which underscores the interrelatedness of the cases and global case considerations.

32. Indeed, the status report filed in the SEC Case on August 1, 2025 specifically notes the interrelatedness of the SEC claims and Financial Case:

> The victims and facts underlying Lindberg's and Herwig's pleas [in the Financial case] largely mirror the allegations in the SEC's Complaint. Accordingly, the sentencing and orders of restitution and/or forfeiture in Lindberg's and Herwig's criminal cases may materially impact what monetary relief, if any, the SEC seeks against Lindberg, Herwig, and SASL in the SEC case.

SEC Dkt. 119.

33. The Special Master confirmed the sheer complexity of these matters cogently in the Special Master's First Status Report over the course of five pages of discussion:

> Defendant amassed ownership in a complicated web of hundreds of companies across various industries financed through an even more complicated web of lending arrangements with Defendant's insurance company affiliates that the Special Master is investigating. For example, NHC, one of the Primary Restitution Assets, comprises more than three hundred (300) individual SACs. The corporate governance structure of NHC and the SACs is not simple.

FN Dkt. 65 at p. 4–9.

34. As set forth in the McCarthy Declaration, Katten's fees and expenses in the Public Corruption case, Financial case, and SEC case were reasonable and necessary to defend Mr. Lindberg in these interrelated enforcement actions by DOJ and SEC.

35. All requested fees reflect the hours actually worked by Katten and the hourly rates in effect at the time that the services were rendered. Mr. Lindberg's defense team was appropriately staffed with a blend of more experienced and more junior lawyers, each of whom charged not just a market-appropriate rate for the work they performed, but all attorneys performed work on a 15% discounted hourly rate.

36. All requested expenses reflect the actual and necessary expenses of Katten and are billed at the actual amounts paid by Katten for the said expenses.

37. The Motion and this Memorandum were presented to the Special Master for review and he does not oppose the entry of orders approving these fees

## V. CONCLUSION

**WHEREFORE**, Katten respectfully requests that the Court grant the First Unopposed Motion for the Payment of Fees and Expenses.

Date: August 21, 2025     Respectfully Submitted:

**KATTEN MUCHIN ROSENMAN LLP**

| | |
|---|---|
| Robert T. Smith (*pro hac vice*) | */s/ Brandon McCarthy* |
| robert.smith1@katten.com | Ryan J. Meyer (*pro hac vice*) |
| KATTEN MUCHIN ROSENMAN LLP | Texas SBN: 24088053 |
| 1919 Pennsylvania Avenue, N.W. | Ryan.meyer@katten.com |
| Suite 800 | Brandon N. McCarthy (*pro hac vice*) |
| Washington, DC 20006 | Texas SBN: 24027486 |
| (202) 625-3500 – telephone | Brandon.mccarthy@katten.com |
| | Rachel M. Riley (*pro hac vice*) |
| | Texas SBN: 24093044 |
| | Rachel.riley@katten.com |
| | KATTEN MUCHIN ROSENMAN LLP |
| | 2121 N. Pearl Street |
| | Suite 1100 |
| | Dallas, Texas 75201 |
| | (214) 765-3600 – telephone |
| | (214) 765-3602 – facsimile |

*Counsel for Defendant Greg E. Lindberg*

# CERTIFICATION

Pursuant to the Court's June 18, 2024 Standing Order, which was published to the Bar of the Western District of North Carolina on June 27, 2024, the undersigned hereby certifies:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 21st day of August, 2025.

*/s/ Ryan J. Meyer*
Ryan J. Meyer (*pro hac vice*)
Texas SBN: 24088053
Ryan.meyer@katten.com
Brandon N. McCarthy (*pro hac vice*)
Texas SBN: 24027486
Brandon.mccarthy@katten.com
Rachel M. Riley (*pro hac vice*)
Texas SBN: 24093044
Rachel.riley@katten.com
KATTEN MUCHIN ROSENMAN LLP
2121 N. Pearl Street
Suite 1100
Dallas, Texas 75201
(214) 765-3600 – telephone
(214) 765-3602 – facsimile

*Counsel for Defendant Greg E. Lindberg*