# EXHIBIT

# 2

Exhibit 5

Trust Agreement

## TRUST AGREEMENT

**THIS TRUST AGREEMENT,** effective as of March 31, 2016 (the "Agreement"), is among Alpha Re (U.S.) Inc. (the "Grantor"), United Security Assurance Company of Pennsylvania, including, without limitation, any liquidator, rehabilitator, receiver, conservator, or other successor by operation of law (collectively, the "Beneficiary"), and Wilmington Trust, National Association, a qualified United States financial institution within the meaning of the Pennsylvania Insurance Laws (40 P.S. § 442.1(g)(2)) (the "Trustee"). The Grantor, the Beneficiary and the Trustee are hereinafter each sometimes referred to individually as a "Party" and collectively as the "Parties."

## W I T N E S S E T H:

**WHEREAS,** the Grantor, and Beneficiary have entered into the Coinsurance Agreement annexed hereto as Exhibit A with an effective date of March 31, 2016 (the "Coinsurance Agreement"); and

**WHEREAS,** the Beneficiary desires the Grantor to secure payment of all amounts at any time and from time to time owing by the Grantor to the Beneficiary under or in connection with the Coinsurance Agreement; and

**WHEREAS,** the Grantor and the Beneficiary desire to enter into this Agreement pursuant to the regulations of the Pennsylvania Insurance Department (31 Pa. Code, § 163.1 et seq.) in order to create a trust account ("Trust Account") under such regulations; and

**WHEREAS,** the Grantor desires to transfer to the Trustee for deposit to the Trust Account assets in order to secure payments under or in connection with the Coinsurance Agreement; and

**WHEREAS,** this Agreement is made for the sole use and benefit of the Beneficiary and for the purpose of setting forth the duties and powers of the Trustee with respect to the Trust Account; and

**WHEREAS,** the Trustee has agreed to act as Trustee hereunder, and to hold such assets in trust in the Trust Account for the sole use and benefit of the Beneficiary.

**NOW, THEREFORE,** in consideration of the premises and mutual promises set forth herein, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties agree as follows:

## Section 1. Deposit of Assets into the Trust Account

(a) The Grantor shall establish the Trust Account and the Trustee shall administer the Trust Account in its name as Trustee for the Beneficiary. The Trust Account shall be subject to withdrawal by the Beneficiary solely as provided herein.

(b) Upon execution of the Agreement, the Grantor shall transfer to the Trustee, for deposit to the Trust Account, the Assets listed in Exhibit B attached hereto, as further qualified by

the definition in Section 1(c). As stipulated in the Coinsurance Agreement, Grantor shall deposit additional Assets as may be required from time to time so that the Trust Account continues to be funded to the Required Level (as such term is defined in the Coinsurance Agreement). The initial Assets along with any additional deposited Assets shall constitute the corpus of the Trust Account (the "Corpus").

(c) As provided in the Pennsylvania Insurance Laws (40 P.S. § 442.1(b)), "Assets" shall consist only of (1) Cash; (2) Securities listed by the Securities Valuation Office of the National Association of Insurance Commissioners or any successor thereto, including those exempted from filing under the Purposes and Procedures Manual of the Securities Valuation Office of the National Association of Insurance Commissioners, and qualifying as admitted assets and, in any event, satisfy and are invested in accordance with the investment guidelines set forth in Exhibit C hereto (collectively, "Eligible Securities"); (3) Clean, irrevocable, unconditional and evergreen letters of credit issued or confirmed by a qualified United States financial institution; or, (4) Any other form of security acceptable to the Pennsylvania Insurance Commissioner. Except as expressly provided for in this Agreement, the Trustee shall have no obligation or liability with respect to the nature of the Assets held in the Trust Account or the ability or failure of such Assets to meet the definitions as set forth above.

(d) Grantor hereby represents and warrants that any Assets it transfers to the Trust Account will be in such form that the Beneficiary may, and the Trustee upon written direction by the Beneficiary will, negotiate any such Assets without consent or signature from the Grantor or any other person or entity in accordance with the terms of this Agreement.

(e) All Assets shall be held in a safe place by the Trustee at the Trustee's office in the United States.

## Section 2. Withdrawal of Assets from Trust Account

(a) Without notice to the Grantor, the Beneficiary shall have the right, at any time and from time to time, to withdraw from the Trust Account, upon written notice to the Trustee in the form annexed as Exhibit D (the "Withdrawal Notice"), such Assets as are specified in the Withdrawal Notice. The Withdrawal Notice may designate a third party (the "Designee") to whom Assets specified therein shall be delivered. The Beneficiary need present no statement or document in addition to a Withdrawal Notice in order to withdraw any Assets. The Withdrawal Notice shall comply with and be authenticated in accordance with Exhibit G.

(b) Upon receipt of a Withdrawal Notice, the Trustee shall immediately transfer absolutely and unequivocally all right, title and interest in the Assets specified in such Withdrawal Notice, and shall deliver such Assets to or for the account of the Beneficiary or Designee as specified in such Withdrawal Notice.

(c) Subject to paragraph (a) of this Section 2 and to Section 4 of this Agreement, in the absence of a Withdrawal Notice, the Trustee shall allow no withdrawal of any Asset from the Trust Account.

2

## Section 3. Application of Assets

(a) The Beneficiary hereby covenants to the Grantor that it shall use and apply any withdrawn Assets, without diminution because of the insolvency of the Beneficiary or the Grantor, for the following purposes only:

    (i) to pay the Beneficiary for any of Grantor's obligations under the Coinsurance Agreement ("Grantor's Obligations");

    (ii) where the Beneficiary has received a termination notice pursuant to Section 8 of this Agreement, or a resignation or removal notice pursuant to Section 7 of this Agreement and where all of the Grantor's Obligations have been liquidated or discharged ten (10) days prior to the termination date, to make payment to the Grantor of any amounts held in the Trust Account; or

    (iii) where the Beneficiary has received a termination notice pursuant to Section 8 of this Agreement, or a resignation or removal notice pursuant to Section 7 of this Agreement and a successor Trustee has not been appointed within twenty (20) days of the date of such notice, and where any of the Grantor's Obligations remain un-liquidated and un-discharged ten (10) days prior to the termination date, to withdraw amounts equal to such Obligations and deposit such amounts in a separate account, apart from its other assets, in the name of the Beneficiary, in any bank or trust company organized in the United States which is not a parent, subsidiary or affiliate of the Beneficiary, in trust for the uses and purposes specified in subparagraphs (i) and (ii) of this paragraph (a).

(b) The Trustee shall have no responsibility whatsoever to determine whether any Assets meet the definition thereto, or that any Assets withdrawn from the Trust Account pursuant to Section 2 of this Agreement will be used and applied in the manner contemplated by paragraph (a) of this Section 3.

## Section 4. Redemption, Investment and Substitution of Assets

(a) The Trustee shall surrender for payment all maturing Assets and all Assets called for redemption and deposit the proceeds of any such payment in the Trust Account.

(b) Grantor and Beneficiary agree that Grantor, or such other entity as is selected by the Grantor, will be the investment manager ("Investment Manager") for all Assets which may be held in the Trust Account, provided, however, that to the extent the Investment Manager desires to delegate duties or issue directions to another entity concerning management of the Assets (a "Sub-Adviser"), the Investment Manager shall identify such entity, and supervise it. The Grantor shall provide written notice to the Trustee and Beneficiary of any change in the Investment Manager, together with an updated Incumbency Certificate of the new Investment Manager. The Investment Manager is the agent of, and is acting on behalf of, the Grantor. The Grantor shall be solely responsible

3

for all fees charged by and all other obligations to the Investment Manager in connection with the Trust Account. Any Sub-Adviser shall be compensated by the Investment Manager.

(c) From time to time, upon the written order and direction of the Grantor or the Investment Manager, the Trustee shall invest Assets as specified by the Grantor or the Investment Manager. Any instruction or order concerning the sale or purchase of Assets shall be referred to herein as an "Investment Order." If conflicting Investment Orders are received, the Trustee shall not execute either Investment Order, but shall contact the Grantor and the Investment Manager to request further instruction. The Trustee shall execute Investment Orders and settle securities transactions involving Assets by itself or by means of an agent or broker. The Trustee shall have no investment discretion. To the extent that an Investment Order is not received by the Trustee, the funds in the Trust Account shall remain uninvested. The Trustee shall not be responsible for any act or omission, or for the solvency, of any such agent, broker or Sub-Adviser, or the Grantor or Investment Manager.

(d) The Grantor and the Investment Manager are hereby authorized to issue Investment Orders and direct the Trustee to invest the Assets in the Trust Account without obtaining the consent of the Beneficiary prior to each investment.

(e) From time to time, subject to 31 Pa. Code, § 163.6(b-c) and the other provisions of this Agreement, including the requirement that title to Assets shall be recorded in the name of the Trustee, the Trustee is authorized to accept substitutions from the Grantor or the Investment Manager of any Assets in the Trust Account pursuant to a written notice (which shall also certify that such substituted Assets are Eligible Securities or otherwise qualify as "Assets" in Section 1(c) above) (the "Substitution Notice") provided that either the Grantor or the Investment Manager certifies to the Trustee in the Substitution Notice that the aggregate Fair Value (as defined in Section 4(l) below) of the Assets to be deposited or credited to the Trust Account pursuant to such substitution is at least equal to the aggregate Fair Value of the Assets being removed from the Trust Account. No other substitutions from the Grantor or the Investment Manager shall be permissible without the Beneficiary's prior written consent, which consent shall be obtained by the Grantor or the Investment Manager and provided to the Trustee. To the extent written instructions from the Beneficiary are required under 31 Pa. Code, § 163.6(b-c) to permit substitution or withdrawal of Assets from the Trust Account, the Beneficiary shall issue such written instructions within two (2) Business Days following the request of the Grantor.

(f) Upon call or maturity of an Asset in the Trust Account, the Trustee may withdraw the Asset without the consent of the Beneficiary, if the Trustee provides notice to the Beneficiary, liquidates or redeems the Asset, and the proceeds are paid into the Trust Account no later than five (5) days after the liquidation or redemption of the Asset.

(g) This Agreement shall permit the Beneficiary to have the right to withdraw Assets from the Trust Account at any time, without notice to the Grantor, subject only to written notice of the withdrawal from the Beneficiary to the Trustee.

4

(h)      No statement or document other than the written notice by the Beneficiary to the Trustee under subsection (g) shall be required to be presented by the Beneficiary to withdraw Assets, except that the Beneficiary may be required to acknowledge receipt of withdrawn Assets.

(i)      The Grantor hereby covenants that all investments and substitutions of Assets requested by it or by the Investment Manager in accordance with this Section 4 shall be in compliance with the relevant provisions set forth in this Section 4 and the definition of "Assets" in Section 1(c) of this Agreement. The Trustee shall have no liability or obligation to verify compliance with Section 4(f) or the other provisions of this Section 4, and shall be entitled to conclusively rely upon any Investment Order or Substitution Notice received pursuant hereto.

(j)      When the Trustee is directed to deliver Assets against payment, delivery will be made in accordance with generally accepted market practice.

(k)      Any loss incurred from any investment pursuant to the terms of this Section 4 shall be borne exclusively by the Trust Account other than a loss due to the Trustee's own negligence, willful misconduct or lack of good faith.

(l)      For purposes of determining the fair value of any Assets in the Trust Account pursuant to this Agreement, the Parties hereby agree (without any liability being incurred on the part of the Trustee for any incorrect fair valuation of Assets, howsoever caused) to use prices published by a nationally recognized pricing service for Assets for which such prices are available and for Assets for which such prices are not available (or where such prices, in the reasonable opinion of the Grantor, do not accurately represent the fair value), to obtain at the expense of the Grantor and pursuant to its written recommendation, a qualified independent securities valuation firm to appraise and determine the value of such Assets, which shall use methodologies consistent with those which the Grantor uses for determining the fair value of assets held in the Grantor's general account (other than the Assets) in the ordinary course of business (the "Fair Value"). The Trustee shall have no responsibility for determining the valuation of the Assets and shall not be a party to any dispute between the Grantor and the Beneficiary relating to the valuation of Assets. The Fair Value of any Asset in the Trust Account shall include any accrued interest or dividend on such Asset.

(m)      All payments of dividends, interest and other income in respect to Assets in the Trust Account shall be posted and credited by the Trustee, subject to deduction of the Trustee's compensation, indemnities and expenses as provided in Section 6 of this Agreement, in the separate account (the "Income Account") established and maintained by the Grantor at an office of the Trustee. Any interest, dividend or other income automatically posted and credited on the payment date to the Income Account which is not subsequently received by the Trustee shall be reimbursed by the Grantor to the Trustee and the Trustee may debit the Income Account for this purpose. The interest, dividends and other income shall be paid to the Grantor or credited to any account of the Grantor in accordance with written instructions provided from time to time by the Grantor to the Trustee.

Case 3:23-cr-00048-MOC-DCK     Document 113-2     Filed 05/03/26     Page 7 of 24

## Section 5. Rights and Duties of Trustee

(a)  The Trustee shall forward to the Grantor all annual and interim stockholder reports and all proxies and proxy materials relating to the Assets in the Trust Account that are received by the Trustee. The Grantor shall have full and unqualified right to vote any Assets in the Trust Account.

(b)  The Trustee shall notify the Grantor and the Beneficiary in writing within ten (10) days following each deposit to, or withdrawal from, the Trust Account.

(c)  The Trustee shall determine that any Assets for deposit to the Trust Account are in such form that the Beneficiary, or the Trustee upon direction by the Beneficiary may, whenever necessary, negotiate any such Assets, without consent or signature from the Grantor or any other person or entity.

(d)  The Trustee shall have no responsibility whatsoever to determine that any Assets in the Trust Account are or continue to be Assets.

(e)  The Trustee shall furnish to the Grantor and the Beneficiary a statement of all Assets in the Trust Account upon the inception of the Trust Account and monthly thereafter.

(f)  Upon the written request of the Grantor or the Beneficiary, the Trustee shall promptly permit Grantor or the Beneficiary, their respective agents, employees, or independent auditors to examine, audit, excerpt, transcribe and copy, during the Trustee's normal business hours, any books, documents, papers and records relating to the Trust Account or the Assets.

(g)  Unless otherwise provided in this Agreement, the Trustee is authorized to follow and rely upon all instructions given by officers named in incumbency certificates furnished to the Trustee from time to time by the Grantor, Investment Manager and the Beneficiary, respectively, including, without limitation, instructions given by letter, telephone (subsequently confirmed in writing), facsimile transmission, or electronic media, if the Trustee believes such instruction to be genuine and to have been signed, sent or presented by the proper Party or Parties. These incumbency certificates shall contain the names, titles and signatures of the Persons ("Authorized Representatives") duly authorized by the Grantor, Investment Manager and the Beneficiary, including any agent of their designated investment advisor, to act on their behalf under this Agreement. Current incumbency certificates for the Grantor, Investment Manager and the Beneficiary are annexed in Exhibit E hereto. The Trustee shall not incur any liability to anyone resulting from actions taken by the Trustee in reliance in good faith on such instructions, or Trustee's inaction due to the failure of such proper Party or Parties to instruct the Trustee.

(h)  The duties and obligations of the Trustee shall only be such as are specifically set forth in this Agreement, as it may from time to time be amended, and no implied duties (including fiduciary duties) or obligations shall be read into this Agreement against the Trustee.

(i)  The Trustee shall not be personally liable to any Person under any circumstances in

6

Case 3:23-cr-00048-MOC-DCK     Document 113-2     Filed 05/03/26     Page 8 of 24

connection with any of the transactions contemplated by this Agreement, except that such limitation shall not relieve the Trustee of any personal liability it may have for the Trustee's own bad faith, willful misconduct or negligence in the performance of its express duties under this Agreement. In particular, but not by way of limitation of the foregoing:

(i) The Trustee shall not be personally liable for any error of judgment made non-negligently and in good faith by any of its officers or employees;

(ii) No provision of this Agreement shall require the Trustee to expend or risk its personal funds or otherwise incur any financial liability in the exercise of its rights or powers hereunder;

(iii) The Trustee shall not be personally liable for or in respect of the validity or sufficiency of this Agreement or for the due execution hereof by any Person other than the Trustee or for the value or use of the Assets, except to the extent the Trustee is negligent in its use of the Assets;

(iv) Except as expressly provided in this Agreement, the Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, instruction, Investment Order, Withdrawal Notice, entitlement order, approval or other paper or document; and

(v) The Trustee shall not be personally liable for (x) special, consequential or punitive damages, however styled, including, without limitation, lost profits, (y) the acts or omissions of any nominee, correspondent, clearing agency or securities depository through which it holds the Trust's Assets or (z) any losses due to forces beyond the reasonable control of the Trustee, including, without limitation, strikes, work stoppages, acts of war or terrorism, insurrection, revolution, nuclear or natural catastrophes or acts of God and interruptions, loss or malfunctions of utilities, communications or computer (software and hardware) services.

(j) In the exercise or administration of the trust hereunder, the Trustee (i) may act directly or, at the expense of the Grantor, through agents or attorneys, and the Trustee shall not be liable for the default or misconduct of such agents or attorneys selected by it in good faith, and (ii) may, at the expense of the Grantor, consult with counsel, accountants and other experts, and the Trustee shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the advice or opinion of any such counsel, accountants, or other experts selected by it in good faith. Nothing in this paragraph shall relieve the Trustee of any personal liability the Trustee may have for its own negligence, bad faith or willful misconduct in accordance with the terms of this Agreement.

(k) The Trustee shall not have any duty or obligation to manage, make any payment in respect of, register, record, sell, dispose of or otherwise deal with the Assets, or to otherwise take or refrain from taking any action under, or in connection with, any document contemplated hereby to which the Trustee is a party, except as expressly provided by the terms of this Agreement. The Trustee shall have no responsibility to

7

Case 3:23-cr-00048-MOC-DCK    Document 113-2    Filed 05/03/26    Page 9 of 24

record this Agreement, to prepare or file any financing or continuation statement in any public office at any time or otherwise to perfect or maintain the perfection of any ownership or security interest or lien or to prepare or file any tax, qualification to do business or any securities or insurance law filing or report.

(l)     To the extent that, at law or in equity, a Covered Person (as defined in Section 6(d) hereof) has duties (including fiduciary duties) and liabilities relating to the trust created hereunder, the Beneficiary or any other Person, such Covered Person acting under this Agreement shall not be liable to the Beneficiary or to such other Persons for its good faith reliance on the provisions of this Agreement.  To the extent that provisions of this Agreement restrict or eliminate the duties (including fiduciary duties) and liabilities of a Covered Person otherwise existing at law or in equity, such provisions are agreed by the Parties hereto to replace such other duties and liabilities of such Covered Person.

(m)    Except as otherwise provided in this Agreement, in accepting the trusts hereby created, Wilmington Trust, National Association is acting solely as Trustee hereunder and not in its individual capacity, and all Persons having any claim against the Trustee by reason of the transactions contemplated by this Agreement shall look only to the Assets for payment or satisfaction thereof. Nothing in this paragraph shall relieve the Trustee of any personal liability the Trustee may have for its own negligence, bad faith or willful misconduct in accordance with the terms of this Agreement.

(n)     The Trustee shall not be required to provide, on its own behalf, any surety bond or other kind of security in connection with the execution of any of its trusts or powers under this Agreement or any other documents or the performance of its duties hereunder.

(o)     The Trustee shall take such action or refrain from taking such action under this Agreement as it may be directed in writing by the Grantor, the Investment Manager or the Beneficiary from time to time; provided, however, that the Trustee shall not be required to take or refrain from taking any such action if it shall have determined, or shall have been advised by counsel, that such performance may involve the Trustee in personal liability or is contrary to the terms of this Agreement or of any document contemplated hereby to which the Trustee is a party or is otherwise contrary to law.  In the absence of bad faith, the Trustee shall have no liability for following any such instructions.

(p)     If at any time the Trustee determines that it requires or desires guidance regarding the application of any provision of this Agreement or any other document, then the Trustee may deliver a notice to the Grantor or the Beneficiary requesting written instructions as to the course of action desired by the Grantor or the Beneficiary and such instructions shall constitute full and complete authorization and protection for actions taken by the Trustee in reliance thereon.  If the Trustee does not receive such instructions within five (5) Business Days after it has delivered to the Grantor or the Beneficiary such notice requesting instructions, or such shorter period of time as may be set forth in such notice, it shall refrain from taking any action with respect to the matters described in such notice. Each instruction delivered by the Grantor or the Beneficiary to the Trustee shall certify to the Trustee that any actions to be taken pursuant to such instruction comply with the terms of this Agreement and do not violate or constitute a breach of any other document

8

to which the Trustee is a party and that all conditions precedent to such action have been satisfied, and the Trustee may rely on such certification and instruction without inquiry except to the extent it has actual knowledge to the contrary.

(q)     Except for those actions that the Trustee is required to take hereunder without written direction, the Trustee shall not have any obligation or liability to take any action or to refrain from taking any action hereunder that requires written direction in the absence of such written direction as provided hereunder regardless of the consequences of the failure to take such action. The Trustee shall be under no obligation to institute, conduct or defend any litigation under this Agreement unless the Trustee receives written direction and indemnity satisfactory to the Trustee against the reasonable costs, expenses, disbursements, advancements and liabilities in connection with such actions.

(r)     Each of the parties hereto hereby agrees that the Trustee in any capacity (x) has not provided and will not provide in the future, any advice, counsel or opinion regarding the tax, financial, investment, securities law or insurance implications and consequences of the formation, funding and ongoing administration of the trust created hereby, including, but not limited to, income, gift and estate tax issues, insurable interest issues, doing business or other licensing matters and the initial and ongoing selection and monitoring of financing arrangements, (y) has not made any investigation as to the accuracy of any representations, warranties or other obligations of any party hereto and shall have no liability in connection therewith and (z) the Trustee has not prepared or verified, and shall not be responsible or liable for, any information, disclosure or other statement in any disclosure or offering document or in any other document issued or delivered in connection with the transactions contemplated hereby.

(s)     The Trustee shall not have any obligation or duty to supervise or monitor the performance of any other Person and shall have no liability for the failure of any other Person to perform its obligations or duties under this Agreement or otherwise.

(t)     The Trustee shall not be deemed to have knowledge or notice of any fact or event unless notice is provided in accordance with Section 15 of this Agreement referencing the fact or event.

(u)     Notwithstanding anything contained herein to the contrary, the Trustee shall not be required to take any action in any jurisdiction other than in the State of Delaware if the taking of such action will (i) require the registration with, licensing by or the taking of any other similar action in respect of, any state or other governmental authority or agency of any jurisdiction other than the State of Delaware by or with respect to the Trustee; (ii) result in any fee, tax or other governmental charge under the laws of any jurisdiction or any political subdivisions thereof in existence on the date hereof other than the State of Delaware becoming payable by the Trustee; or (iii) subject the Trustee to personal jurisdiction in any jurisdiction other than the State of Delaware for causes of action arising from acts unrelated to the consummation of the transactions by the Trustee contemplated hereby. The Trustee shall be entitled to obtain advice of counsel (which advice shall be an expense of the Grantor) to determine whether any action required to be taken pursuant to the Agreement results in the consequences described in clauses (i), (ii)

9

and (iii) of the preceding sentence. In the event that said counsel advises the Trustee that such action will result in such consequences, the Grantor shall appoint an additional trustee or separate trustee to proceed with such action.

## Section 6. Trustee's Compensation, Expenses, Indemnification, etc.

(a)     For its services as Trustee pursuant to this Agreement, the Trustee shall receive such compensation from the Grantor as may be agreed upon from time to time in writing by the Grantor and the Trustee. A copy of the current compensation arrangement agreed to by the Grantor and the Trustee is annexed as Exhibit F. Any changes to this compensation arrangement shall be made only upon thirty (30) days' prior written notice from the Trustee to the Grantor and the Beneficiary. The Trustee shall issue an invoice to the Grantor for such compensation, which shall be payable quarterly in advance.

(b)     The Grantor shall pay or reimburse the Trustee for all of the Trustee's expenses and disbursements that are reasonably incurred by the Trustee in connection with its duties under this Agreement (including attorneys' fees and expenses), except any such expense or disbursement as may arise from the Trustee's negligence, willful misconduct or lack of good faith.

(c)     From time to time, the Trustee shall be entitled to deduct its compensation and expenses from the Income Account established pursuant to Section 4(m) above. The Trustee shall provide written notice to the Grantor of any such deduction and payment within five (5) business days following the transaction. In no event, however, shall the Corpus be utilized for paying compensation, or reimbursing expenses of the Trustee. If the Income Account does not hold funds sufficient to pay the Trustee's quarterly invoice, the Grantor shall pay the chargeable items included in the Trustee's invoice within thirty (30) business days of receiving the invoice.

(d)     The Grantor shall (i) indemnify, defend and hold harmless the Trustee (in both its individual and trustee capacities) and the officers, directors, employees and agents of the Trustee (collectively, including the Trustee in its individual capacity, the "Covered Persons") from and against any and all losses, damages, liabilities, claims, actions, suits, costs, expenses, disbursements (including the reasonable fees and expenses of counsel and legal fees and expenses incurred in connection with enforcing its rights hereunder), taxes and penalties of any kind and nature whatsoever, to the extent that the foregoing arise out of or are imposed upon or asserted at any time against one or more Covered Persons with respect to the performance of this Agreement, the creation, operation or termination of the Trust or the transactions contemplated hereby, including, without limitation, any breach by the Grantor of any representation or warranty made by the Grantor herein (all of the foregoing as provided in clauses (i) and (ii) above are herein referred to  collectively as "Expenses"), provided, however, that the Grantor shall not be required to indemnify a Covered Person for Expenses as a direct result of such Covered Person's willful misconduct, bad faith or negligence as determined by a final, non-appealable judgment of a court of competent jurisdiction, and (ii) advance to each Covered Person Expenses (including reasonable legal fees and expenses) incurred by such Covered Person in defending any claim, demand, action, suit or proceeding, prior to

10

the final disposition of such claim, demand, action, suit or proceeding, upon receipt by the Grantor of a written request therefor and of an undertaking by or on behalf of the Covered Person to repay such amount if it shall ultimately be determined that the Covered Person is not entitled to be indemnified therefor under this Section. The rights of the Covered Persons and the obligations of Grantor under this Section 6 shall survive the termination of this Agreement and the resignation or removal of the Trustee.

### Section 7. Resignation or Removal of Trustee

(a)     The Trustee may resign at any time by giving not less than sixty (60) days' prior written notice thereof to the Beneficiary and to the Grantor. The Trustee's resignation shall become effective no later than ninety (90) days after notice is provided. The Trustee may be removed by delivery of not less than ninety (90) days' prior written notice of removal to the Trustee executed by both Grantor and Beneficiary. Such resignation or removal shall become effective on the acceptance of appointment by a successor Trustee, the entry into a trust agreement by the successor Trustee, Grantor and Beneficiary that complies with the requirements of 31 Pa. Code, § 163.1 et seq., and the transfer to such successor Trustee of all Assets in the Trust Account in accordance with paragraph (b) of this Section 7.

(b)     Upon receipt by the proper Parties of the Trustee's notice of resignation or the Grantor's notice of removal, the Grantor and the Beneficiary shall appoint a successor Trustee within twenty (20) days of the date of such notice. Any successor Trustee shall be a bank that is a qualified United States financial institution within the meaning of the Pennsylvania Insurance Laws (40 P.S. § 442.1(g)(2)), and shall not be a parent, a subsidiary or an affiliate of the Grantor or the Beneficiary. Upon acceptance of the appointment as Trustee hereunder by a successor Trustee of all Assets in the Trust Account, such successor Trustee shall succeed to and become vested with all rights, powers, privileges and duties of the resigning or removed Trustee. If the Grantor and the Beneficiary fail to appoint a successor Trustee or the nominee shall fail to accept the appointment as successor Trustee within twenty (20) days of the date of any resignation or removal notice, the Beneficiary shall immediately withdraw from the Trust Account all Assets in accordance with Section 3(a) for the purposes specified therein, provided that, if the Beneficiary shall fail to withdraw all Assets within such timeframe, the Trustee may, at the expense of the Beneficiary, petition a court of competent jurisdiction for the appointment of a successor Trustee. The resignation or removal of the Trustee shall become effective upon either of these events, and the resigning or removed Trustee shall then be discharged from any future duties and obligations under this Agreement, but shall continue, after such resignation or removal, to be entitled to the benefits of the indemnities provided herein for the Trustee.

### Section 8. Termination of Trust Account

(a)     The Trust Account and this Agreement, except for the indemnities provided herein, may be terminated only after (i) the Grantor and Beneficiary mutually give the Trustee written notice of their intention to terminate the Trust Account ("Notice of Intention"), (ii) the Trustee has given the Grantor and the Beneficiary the written notice specified in

11

paragraph (b) of this Section 8, and (iii) all amounts due the Trustee have been paid.

(b)     Within three (3) days following receipt by the Trustee of the Notice of Intention, the Trustee shall give written notification to the Beneficiary and the Grantor of the date on which the Trust Account shall terminate.  The termination date shall be at least thirty (30) days but no more than forty-five (45) days subsequent to the date such notice was given.

(c)     On the termination date, upon receipt of written approval of the Beneficiary, the Trustee shall transfer to the Grantor any Assets remaining in the Trust Account, at which time all obligation and liability of the Trustee hereunder shall cease and this Agreement and the trust created hereby shall terminate.

(d)     The Grantor may not terminate this Agreement on the basis of the insolvency of the Beneficiary.

### Section 9.  Governing Law: Submission of Jurisdiction: Waiver of Jury Trial

All matters concerning the construction and interpretation of this Agreement and performance under this Agreement shall be interpreted and construed according to the laws of the State of Delaware, without regard to said state's conflict of laws rules.

The parties hereto agree that any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement  or the transactions contemplated hereby shall be brought in the Court of Chancery of the State of Delaware, County of New Castle or if such court does not have jurisdiction over the subject matter of such proceeding or if such jurisdiction is not available, in the United States District Court for the District of Delaware, and each of the parties hereby irrevocably consent to the exclusive jurisdiction of those courts (and of the appropriate appellate courts therefrom) in any suit, action or proceeding and irrevocably waives, to the fullest extent permitted by applicable law, any objection which it may now or hereafter have to the laying of the venue of any suit, action or proceeding in any of those courts or that any suit, action or proceeding which is brought in any of those courts has been brought in an inconvenient forum.  Process in any suit, action or proceeding may be served on any party anywhere in the world, whether within or without the jurisdiction of any of the named courts and such service shall, to the fullest extent permitted by applicable law, have the same legal force and effect as if served upon such party within the State of Delaware.

The Parties hereto hereby irrevocably waive, to the fullest extent permitted by applicable law, any and all right to trial by jury in any legal proceeding arising out of or relating to this Agreement or the transactions contemplated hereby.

### Section 10.  Successors and Assigns

Except as expressly permitted by Section 7 of this Agreement, no Party may assign this Agreement or any of its rights or obligations hereunder, whether by merger, consolidation, sale of all or substantially all of its assets, liquidation, dissolution or otherwise without the prior written consent of the other Parties, provided that any Person into which the Trustee may be merged or with which it may be consolidated, or any Person resulting from any

12

merger or consolidation to which the Trustee shall be a party, or any Person which succeeds to all or substantially all of the corporate trust business of the Trustee, shall be the successor Trustee under this Agreement without the consent of any other Party or the execution, delivery or filing of any paper or instrument or any further act to be done on the part of the Parties hereto, notwithstanding anything to the contrary herein; provided further however, that such successor Trustee shall comply with the requirements of applicable law and of this Agreement.

**Section 11. Severability**

The invalidity or unenforceability of any particular term or condition of this Agreement shall not affect the other terms and provisions hereof, and this Agreement shall be construed in all respects as if such invalid or unenforceable term or provision has been omitted.

**Section 12. Waiver of Terms**

Failure by the Trustee, the Grantor or the Beneficiary to insist upon compliance with any of the terms and conditions of this Agreement at any given time or under any given set of circumstances shall not operate to waive or modify such terms or conditions or in any manner render them unenforceable as to any other time or as to any other occurrence, whether the circumstances are or are not the same, and no waiver of any of the terms or conditions of this Agreement shall be valid or of any force or effect unless contained in a written memorandum specifically expressing such waiver and signed by an officer of each Party duly authorized to sign such waiver.

**Section 13. Entire Agreement**

This Agreement constitutes the entire and sole contract among the Parties concerning the Trust Account, and there are no understandings, or agreements, conditions or qualifications relative to this Agreement which are not fully expressed in this Agreement.

**Section 14. Amendments**

This Agreement may be modified or otherwise amended, and the observance of any term of this Agreement may be waived, if such modification, amendment or waiver is in writing and signed by the Parties.

**Section 15. Notices**

(a)     All notices under this Agreement and other communications shall be in writing and shall be deemed to have been duly given or made (i) when delivered personally, (ii) when made or given by prepaid telex, telegraph, or e-mail (with confirmation of delivery) (iii) in the case of mail delivery, upon the expiration of three (3) days after any such notice shall have been deposited in the United States mail for transmission by first class mail, postage prepaid, or upon receipt thereof, whichever shall first occur and when addressed as follows:

To Grantor:          Alpha Re (U.S.) Inc.
                     76 Saint Paul Street, Suite 500

13

Case 3:23-cr-00048-MOC-DCK     Document 113-2     Filed 05/03/26     Page 15 of 24

Burlington, VT 05401
Attn: Donald D. Solow, President
Telephone No.: (908) 219-7050

with a copy to (which shall not constitute notice for purposes of this section):

Katten Muchin Rosenman LLP
575 Madison Avenue
New York, New York 10022
Attn: Marc M. Tract
Telephone No.: (212) 940-8760

To Beneficiary: United Security Assurance Company of Pennsylvania
673 E. Cherry Lane
P.O. Box 64477
Souderton, Pennsylvania 18964
Attn: William Neugroschel
Telephone No.: (215) 723-3044

with a copy to (which shall not constitute notice for purposes of this section):

Funk & Bolton, P.A.
36 South Charles Street, 12th Floor
Baltimore, Maryland 21201
Attn: Ren L. Tundermann
Telephone No.: (410) 659-7700

To Trustee: Wilmington Trust, National Association
1100 North Market Street
Wilmington, Delaware 19890
Attn: Patrick Donahue - Corporate Trust Administration
Telephone No.: (302) 636-6439
Facsimile No.: (302) 636-6395

(b)     Each Party may from time to time designate a different address for notice and other communications by giving written notice of such change to the other Parties. All notices and other communications relating to the Beneficiary's approval of the Grantor's authorization to substitute Trust Assets in the Trust Account and to the termination of the Trust Account shall be in writing and may not be made or given by prepaid telex or telegraph.

**Section 16. Headings**

The headings of the Sections have been inserted for reference only and shall not be deemed to constitute a part of this Agreement.

14

## Section 17. Miscellaneous

The trust created hereby may be referred to as the "USAP Reinsurance Trust."

## Section 18. Counterparts

This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall constitute an original, but such counterparts together shall constitute but one and the same Agreement.

*[Remainder of this page intentionally left blank]*

15

**IN WITNESS WHEREOF,** the Parties have caused this Agreement to be executed and delivered by their respective duly authorized officers thereunto duly authorized as of the date first above written.

Signed this 2nd day of August, 2016

For Alpha Re (U.S.) Inc., as Grantor

Attest:

Signature: _Arnold A. A._

By: _Donald D. Solow_

Title: _President_

Signed this ___ day of _____, 2016

For United Security Assurance Company of Pennsylvania, as Beneficiary

Attest:

Signature: _____

By: _____

Title: _____

Signed this ___ day of _____, 2016

For **Wilmington Trust, National Association**

**Not in its individual capacity but solely** as Trustee

Attest:

Signature: _____

By: _____

Title: _____

16

**IN WITNESS WHEREOF,** the Parties have caused this Agreement to be executed and delivered by their respective duly authorized officers thereunto duly authorized as of the date first above written.

Signed this ____ day of _____, 2016

For Alpha Re (U.S.) Inc., as Grantor

Attest:

Signature: _____

By: _____

Title: _____

Signed this 2nd day of August, 2016

For United Security Assurance Company of Pennsylvania, as Beneficiary

Attest:

Signature: W J Neugroschel

By: William Neugroschel

Title: President and CEO

Signed this ____ day of _____, 2016

For **Wilmington Trust, National Association**

**Not in its individual capacity but solely** as Trustee

Attest:

Signature: _____

By: _____

Title: _____

16

**IN WITNESS WHEREOF,** the Parties have caused this Agreement to be executed and delivered by their respective duly authorized officers thereunto duly authorized as of the date first above written.

Signed this ___ day of _____, 2016

For Alpha Re (U.S.) Inc., as Grantor

Attest:

Signature: _____

By: _____

Title: _____

Signed this ___ day of _____, 2016

For United Security Assurance Company of Pennsylvania, as Beneficiary

Attest:

Signature: _____

By: _____

Title: _____

Signed this 1 day of August, 2016

For **Wilmington Trust, National Association**

**Not in its individual capacity but solely** as Trustee

Attest:

David B. Young
Vice President

Signature: _____

By: _____ Patrick J. Donahue
Vice President

Title: _____

16

# EXHIBIT A

## COINSURANCE AGREEMENT

# EXHIBIT B

## LIST OF ASSETS

**Cash**

EXHIBIT C

INVESTMENT GUIDELINES

# Alpha Re (U.S.) Inc.
*Investment Guidelines for Reinsurance Trust*

**By Asset Type**

| | | |
|---|---|---|
| **Cash and Short Term Investments** | 1% Min – 100% | Max |
| Cash & short-term (SSAP No. 2) | 100% | Max |
| **Investment Grade Securities** | 100% | Max |
| Governments | 100% | Max |
| Corporate Bonds | 100% | Max |
| Asset Backed & Mortgage Backed Securities[1] | 100% | Max |
| **Non-Investment Grade Securities** | 50% | Max |
| Corporate (High Yield) | 50% | Max |
| ABS & MBS (Mezzanine & Equity) | 50% | Max |
| **Equity Investments** | 15% | Max |
| Common Stock | 33% | Max |
| Convertible Bonds & Securities | 100% | Max |
| **Derivatives** | | |
| Limited to long-only options (puts and calls) and Covered call options[2] | 5% | Max |
| **Sector Constraints** | | |
| Foreign Investments and Foreign Currency | 25% | Max |
| **Single Issuer** | | |
| Limited to greater of 10% or $2 million[3] | | |

**By Credit Rating**

| | | |
|---|---|---|
| AA – or greater rating | 100% | Max |
| A – rating | 100% | Max |
| BBB – rating | 75% | Max |
| Investment Grade or Higher | 75% | Min |
| Minimum quality | B | |

---

[1] Mortgage Backed Securities to include Residential or Commercial

[2] "Call option" means an option to buy an asset at an agreed price on or before a particular date, and includes rights and warrants. "Put option" means an option to sell an asset at an agreed price on or before a particular date. "Covered call" means a call option where the reinsurance trust already owns the related security.

[3] There are no limitations on cash, drafts, and short term investments (as defined in SSAP No. 2) or the purchase of U.S. Government Securities and U.S. Agency Securities.

19

**Other Permitted PA Assets**[4]                                    25%   Maximum

**Other Guidance**
The asset manager shall select investments having a duration appropriate for the reinsured liabilities, giving due consideration to (1) required liquidity, (2) volatility in fair value, and (3) reinvestment rates.

In the case of unrated securities, the Investment Manager will assign such unrated securities a rating determined by it in its sole discretion in accordance with the Investment Manager's internal rating system, in which case such ratings will be deemed to be those of a NRSRO. Each investment in unrated securities must be approved by Alpha Re (U.S.) Inc.

---

[4] Any security that qualifies as an admitted asset under Pennsylvania law and is listed by the Securities Valuation Office (SVO) of the National Association of Insurance Commissioners (NAIC), including those exempted from filing under the Purposes and Procedures Manual of the SVO.

20

Case 3:23-cr-00048-MOC-DCK     Document 113-2     Filed 05/03/26     Page 24 of 24