# EXHIBIT 14

**VISTA LIFE & CASUALTY REINSURANCE COMPANY**

July 30, 2020

*VIA ELECTRONIC MAIL AND*
*CERTIFIED MAIL RETURN RECEIPT REQUESTED*

Greg E. Lindberg
2222 Sedwick Road
Durham, NC 27713
gel@eliequity.com

Greg E. Lindberg
████████████████████
Durham, NC 27713
gelindberg@gmail.com

> **Re:** **Demand for Repurchase Under Letter Agreement, dated November 16, 2018**

Dear Mr. Lindberg:

Reference is hereby made to that certain letter agreement, dated November 16, 2018 (the "Letter Agreement"), entered into between Vista Life & Casualty Reinsurance Company, on behalf of Separate Account No. 1.16 ("Vista") and you, Greg E. Lindberg ("You" or the "Principal"), as principal, controlling party and ultimate beneficial owner of the Eli Global group of companies. A copy of the Letter Agreement is annexed hereto. All capitalized terms used but not defined herein shall have the meanings given to them in the Letter Agreement.

Vista hereby provides notification to You that a repurchase Trigger Event under the Letter Agreement has occurred as a result of, *inter alia*, the private loan investments held in the Trust Account and listed on Schedule I (as amended, amended and restated, restated, supplemented or otherwise modified from time to time, the "Loan Agreements" and each, a "Loan Agreement") being delinquent for more than ninety (90) days in the payment of scheduled interest or principal.

As a result, in accordance with Section 2 of the Letter Agreement, Vista hereby demands that You repurchase for cash the Loan Agreements within forty-five (45) calendar days from the date hereof at a price equal to the fair value of such Loan Agreements prior to giving effect to any change in their fair value due to circumstances causing the Trigger Event.

In making such demand, Vista has not waived any of its rights, powers, privileges or remedies arising from any Trigger Event, Defaults or Events of Default available under the Letter Agreement or any Loan Agreement, at law or in equity, all of which rights, powers, privileges or remedies are hereby expressly reserved by Vista, together with the right to act or not act with respect to any such rights, powers, privileges and remedies at any time, without the

necessity of any further notice, demand or other action on the part of the Vista. Further, neither a failure nor any delay on the part of Vista in exercising any right, power, privilege or remedy accruing upon any Trigger Event, Default or Event of Default under the Letter Agreement or any Loan Agreement shall impair any right, power, privilege or remedy of any Agent, as applicable, or any lender, as applicable, in respect of, or constitute or be construed to be a waiver of, any such Trigger Event, Default or Event of Default under the Letter Agreement or any Loan Agreement, or any acquiescence thereto.

Vista has incurred and will continue to incur fees and expenses (including attorneys' fees and expenses) in connection with the Trigger Event described in this notice and any future actions related thereto. Acceptance of any payments or principal or interest, or of other partial payments, will not constitute a waiver of or forbearance on any of Vista's rights.

Sincerely,

VISTA LIFE & CASUALTY REINSURANCE COMPANY, ACTING ON BEHALF OF SEPARATE ACCOUNT NO. 1.16

_____

Donald D. Solow

2

SCHEDULE I

1.  Loan and Security Agreement dated as of August 24, 2016, by and among Amherst, LLC, as "Borrower" thereunder, the entities from time to time party thereto as "Lenders" thereunder, and New England Capital, LLC as "Agent" thereunder.

2.  Loan and Security Agreement dated as of December 6, 2017, by and among Augusta Asset Management, Inc. as "Borrower" thereunder, the entities from time to time party thereto as "Lenders" thereunder, and New England Capital, LLC as "Agent" thereunder.

3.  Loan and Security Agreement dated as of August 24, 2016, by and among Barnstead, LLC, as "Borrower" thereunder, the entities from time to time party thereto as "Lenders" thereunder, and New England Capital, LLC as "Agent" thereunder.

4.  Loan and Security Agreement dated as of August 24, 2016, by and among Bow, LLC, as "Borrower" thereunder, the entities from time to time party thereto as "Lenders" thereunder, and New England Capital, LLC as "Agent" thereunder.

5.  Loan and Security Agreement dated as of August 24, 2016, by and among Canaan, LLC, as "Borrower" thereunder, the entities from time to time party thereto as "Lenders" thereunder, and New England Capital, LLC as "Agent" thereunder.

6.  Loan and Security Agreement dated as of September 19, 2016, by and among Claremont, LLC, as "Borrower" thereunder, the entities from time to time party thereto as "Lenders" thereunder, and New England Capital, LLC as "Agent" thereunder.

7.  Loan and Security Agreement dated as of August 24, 2016, by and among Deering, LLC, as "Borrower" thereunder, the entities from time to time party thereto as "Lenders" thereunder, and New England Capital, LLC as "Agent" thereunder.

8.  Loan and Security Agreement dated as of August 24, 2016, by and among Derry, LLC, as "Borrower" thereunder, the entities from time to time party thereto as "Lenders" thereunder, and New England Capital, LLC as "Agent" thereunder.

9.  Loan and Security Agreement dated as of August 24, 2016, by and among Dunbarton, LLC, as "Borrower" thereunder, the entities from time to time party thereto as "Lenders" thereunder, and New England Capital, LLC as "Agent" thereunder.

10. Loan and Security Agreement dated as of August 24, 2016, by and among Durham, LLC, as "Borrower" thereunder, the entities from time to time party thereto as "Lenders" thereunder, and New England Capital, LLC as "Agent" thereunder.

11. Loan and Security Agreement dated as of August 24, 2016, by and among Effingham, LLC, as "Borrower" thereunder, the entities from time to time party thereto as "Lenders" thereunder, and New England Capital, LLC as "Agent" thereunder.

12. Loan and Security Agreement dated as of August 24, 2016, by and among Farmington, LLC, as "Borrower" thereunder, the entities from time to time party thereto as "Lenders" thereunder, and New England Capital, LLC as "Agent" thereunder.

13. Loan and Security Agreement dated as of August 24, 2016, by and among Goshen, LLC, as "Borrower" thereunder, the entities from time to time party thereto as "Lenders" thereunder, and New England Capital, LLC as "Agent" thereunder.

14. Loan and Security Agreement dated as of December 28, 2016, by and among Henniker, LLC, as "Borrower" thereunder, the entities from time to time party thereto as "Lenders" thereunder, and New England Capital, LLC as "Agent" thereunder.

15. Loan and Security Agreement dated as of August 24, 2016, by and among Littleton, LLC, as "Borrower" thereunder, the entities from time to time party thereto as "Lenders" thereunder, and New England Capital, LLC as "Agent" thereunder.

16. Loan and Security Agreement dated as of August 24, 2016, by and among Londonderry, LLC, as "Borrower" thereunder, the entities from time to time party thereto as "Lenders" thereunder, and New England Capital, LLC as "Agent" thereunder.

17. Loan and Security Agreement dated as of September 19, 2016, by and among Meredith, LLC, as "Borrower" thereunder, the entities from time to time party thereto as "Lenders" thereunder, and New England Capital, LLC as "Agent" thereunder.

18. Loan and Security Agreement dated as of August 24, 2016, by and among Merrimack, LLC, as "Borrower" thereunder, the entities from time to time party thereto as "Lenders" thereunder, and New England Capital, LLC as "Agent" thereunder.

19. Loan and Security Agreement dated as of August 24, 2016, by and among Nashua, LLC, as "Borrower" thereunder, the entities from time to time party thereto as "Lenders" thereunder, and New England Capital, LLC as "Agent" thereunder.

20. Loan and Security Agreement dated as of August 24, 2016, by and among Rindge, LLC, as "Borrower" thereunder, the entities from time to time party thereto as "Lenders" thereunder, and New England Capital, LLC as "Agent" thereunder.

21. Loan and Security Agreement dated as of August 24, 2016, by and among Rumney, LLC, as "Borrower" thereunder, the entities from time to time party thereto as "Lenders" thereunder, and New England Capital, LLC as "Agent" thereunder.

22. Loan and Security Agreement dated as of August 24, 2016, by and among Stoddard, LLC, as "Borrower" thereunder, the entities from time to time party thereto as "Lenders" thereunder, and New England Capital, LLC as "Agent" thereunder.

23. Loan and Security Agreement dated as of August 24, 2016, by and among Swanzey, LLC, as "Borrower" thereunder, the entities from time to time party thereto as "Lenders" thereunder, and New England Capital, LLC as "Agent" thereunder.

24. Loan and Security Agreement dated as of January 30, 2018, by and among Tybee Island Asset Management, Inc. as "Borrower" thereunder, the entities from time to time party thereto as "Lenders" thereunder, and New England Capital, LLC, as "Agent" thereunder.

25. Loan and Security Agreement dated as of September 19, 2016, by and among Wolfeboro, LLC, as "Borrower" thereunder, the entities from time to time party thereto as "Lenders" thereunder, and New England Capital, LLC as "Agent" thereunder.

26. Loan and Security Agreement dated as of March 31, 2017, by and among Academy Financial Assets, LLC as "Borrower" thereunder, the entities from time to time party thereto as "Lenders" thereunder, and Colorado Bankers Life Insurance Company as "Agent" thereunder.

27. Loan and Security Agreement dated as of September 5, 2017, by and among Atlas Financial Investments, Inc. as "Borrower" thereunder, the entities from time to time party thereto as "Lenders" thereunder, the subsidiaries of Borrower from time to time party thereto as "Collateral Party" thereunder, and Colorado Bankers Life Insurance Company as "Agent" thereunder.

28. Loan and Security Agreement dated as of September 5, 2017, by and among Fiasco Fine Wine, LLC as "Borrower" thereunder, the entities from time to time party thereto as "Lenders" thereunder, the subsidiaries of Borrower from time to time party thereto as "Collateral Party" thereunder, and Colorado Bankers Life Insurance Company as "Agent" thereunder.

29. Loan and Security Agreement dated as of August 2, 2017, by and among Gilford Asset Management, Inc. as "Borrower" thereunder, the entities from time to time party thereto as "Lenders" thereunder, and Southland National Insurance Company as "Agent" thereunder.

30. Loan and Security Agreement dated as of May 2, 2016, by and among Standard Financial Limited as "Borrower" thereunder, the entities from time to time party thereto as "Lenders" thereunder, and Southland National Insurance Company as "Agent" thereunder.

31. Loan and Security Agreement dated as of April 28, 2017, by and among Standard Malta Holdings Limited. as "Borrower" thereunder, the entities from time to time party thereto as "Lenders" thereunder, and Colorado Bankers Life Insurance Company as "Agent" thereunder.

32. Loan and Security Agreement dated as of November 8, 2017, by and among Summerville Asset Management, Inc. as "Borrower" thereunder, the entities from time to time party thereto as "Lenders" thereunder, and Colorado Bankers Life Insurance Company as "Agent" thereunder.

November 16th , 2018

Greg E. Lindberg
2222 Sedwick Road
Durham, NC 27713

Dear Mr. Lindberg:

This letter agreement (this "Agreement") is entered into in connection with the Coinsurance Agreement effective March 31, 2016 (the "Coinsurance Agreement") between United Security Assurance Company of Pennsylvania ("Ceding Company") and Vista Life & Casualty Reinsurance Company, acting solely through Separate Account No. 1.16 (the "Reinsurer").

It is mutually agreed to and understood by the Reinsurer and Principal (as defined herein) as follows:

- Mr. Greg E. Lindberg (the "Principal") is a principal, controlling party, and ultimate beneficial owner of the Eli Global group of companies.

- The Principal has the means, authority and ownership control to satisfy all the terms of this agreement either personally or through one of the identified entities provided in Mr. Lindberg's audited Statement of Financial Condition dated December 31, 2017, listed under "Investment(s) in Closely Held Businesses".

- The Principal and the Reinsurer (collectively referred to as the "Parties" and/or in the singular "Party") are the Parties to this Agreement.

- Pursuant to the Coinsurance Agreement, Ceding Company ceded a quota share of risk and the Reinsurer accepted and agreed to indemnify the Ceding Company for the Quota Share of the Long Term Care Claims Liability of the Reinsured Policies (as such terms are defined in Article III of the Coinsurance Agreement).

- For the assumption of the risk identified in Article I of the Coinsurance Agreement, the Reinsurer received premiums as set forth in Article VII of the Coinsurance Agreement.

- The premiums paid to the Reinsurer along with any other payments required under the Coinsurance Agreement have been placed into a trust account that is maintained in accordance with criteria set forth in Article XX of the Coinsurance Agreement (the "Trust Account").

- The Parties wish to allow the Reinsurer to require the repurchase of certain assets by the Principal to the extent the appropriate consent and disclosure is provided for each repurchase by the Reinsurer or the owner of the asset, in accordance with the Investment Advisers Act of 1940, as amended (the "Advisers Act").

- "Repurchase" for purposes of this Agreement shall mean that the Principal purchases or arranges for the purchase of investments from the Trust Account in exchange for cash or other permitted Assets (as defined in the Coinsurance Agreement).

In consideration of the above and the mutual covenants set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

**Repurchase Trigger**.   The Reinsurer shall have the right to demand that the Principal repurchase investments from the Trust Account if any private loan investment held in the Trust Account is delinquent more than 90 days in the payment of scheduled interest or principal.

The event described in this Section 1 above shall be a "Trigger Event".   Notwithstanding the foregoing, the Parties acknowledge and agree that a repurchase caused by a Trigger Event identified in this Section 1 shall in no event be considered a guaranty of performance of the investments in the Trust Account.

2.    **Settlement**.

(a)    Upon the occurrence of a Trigger Event in accordance with Section 1 herein, such investment shall be repurchased by the Principal within forty-five (45) calendar days of notification thereof to Principal by the Reinsurer.

(b)    The repurchase price used to settle any repurchase under Section 2(a) will be equal to the fair value of the investment prior to giving any effect to changes in fair value due to circumstances that caused the Trigger Event.

(c) Notwithstanding the foregoing, a repurchase under this Agreement shall only occur to the extent the appropriate consent and disclosure is provided by the Reinsurer or owner of the asset, in accordance with the Advisers Act.

3.    **Remedies.**  Principal acknowledges that the Reinsurer shall suffer irreparable harm if the provisions of this Agreement are not promptly complied with and monetary damages may not be a sufficient remedy for any breach or threatened breach of this Agreement, and that the Reinsurer shall be entitled, without waiving any other rights or remedies, to seek such injunctive or equitable relief as may be deemed proper by a court of competent jurisdiction.  Principal shall not state or otherwise assert, as a defense to any proceeding for such specific performance or injunctive relief, that the Reinsurer has an adequate remedy at law.

4.    **Confidentiality.**  Each Party agrees to keep all information related to this Agreement confidential in all respects, and not to share such information with third parties other than: (a) such Party's reinsureds, employees and advisors who are subject to written obligations of confidentiality no less restrictive than the terms hereof with respect to third party confidential information or are subject to legal or binding ethical obligations of confidentiality; and (b) pursuant to requirements of disclosure by a court, government agency, or other regulatory authority (provided that such party notifies the each other to the extent permitted by such legal requirement, prior to such disclosure).  Each of the Parties hereto agrees to keep the existence of this Agreement,

Case 3:23-cr-00048-MOC-DCK    Document 113-14    Filed 05/03/26    Page 8 of 10

and the terms thereof, absolutely confidential, and to refrain from publicizing the existence of the relationship between the Parties hereto.

5. **Termination**. This Agreement will continue in full force and effect until the earlier of (a) termination of the Coinsurance Agreement or (b) the written mutual consent of the Parties.

[Signature page follows]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the date first written above.

**VISTA LIFE & CASUALTY REINSURANCE COMPANY, ON BEHALF OF SEPARATE ACCOUNT NO. 1.16**

By: _____

Name: Donald D. Solow

Title: President


**GREG E. LINDBERG,**
in his individual capacity

By: _____

Name: Greg Lindberg

Title: Manager

4