# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>GREG E. LINDBERG,<br><br>    Defendant. | Case No. 3:23-CR-48-MOC |

## SPECIAL MASTER'S STATEMENT CONCERNING DEFENDANT'S COOPERATION

NOW COMES Joseph W. Grier, III, as special master appointed pursuant to 18 U.S.C. § 3664(d)(6) (the "Special Master"), by and through counsel, who hereby files this *Special Master's Statement Concerning Defendant's Cooperation* in advance of the sentencing hearing currently scheduled for 09:30 A.M. on May 26, 2026 at 401 West Trade Street, Charlotte, North Carolina in Courtroom 5A, and respectfully represents to the Court as follows:

1. The Special Master observes at the outset that Defendant provided voluminous data and input on the tasks assigned to the Special Master that were helpful to the Special Master's duties. In addition, Defendant's counsel participated in weekly pre-set hourly long meetings with the Special Master, the Special Master's financial advisors, the Special Master's counsel, and representatives from the U.S. Attorney's Office and Department of Justice since the beginning of 2025. Perhaps more importantly, Defendant's counsel, particularly Ryan Meyer, made themselves freely available during the past approximately fifteen (15) months to answer questions of the Special Master's counsel and financial advisors and to track down needed information, often with Defendant's assistance.

2. In *Defendant Greg E. Lindberg's Sentencing Memorandum* (Doc. No. 145) ("Defendant's Sentencing Memo"), Defendant itemizes eleven (11) different instances of

1

Defendant cooperating with the Special Master's efforts to fulfill the Special Master's duties imposed by this Court's *Order Appointing Special Master* entered on January 23, 2025 (Doc. No. 56) (the "Special Master Order").[1] While Defendant's representations are generally accurate, some of them warrant additional context to fairly assess the extent of Defendant's cooperation.

    a.    <u>Executing Assignment Agreements</u>. The Special Master Order directed Defendant to assign his interests in the Primary Restitution Assets to the Special Master within 21 days (Doc. No. 56, at 7, ¶ 4). Counsel for those Primary Restitution Assets prepared agreements for Defendant to so assign his interests; however, Defendant's counsel requested certain revisions to the assignment agreements, notably including an edit that preserved Defendant's right to receive "tax distributions." Although the Special Master understood this provision to refer only to ordinary tax distributions that might accrue from normal operations, counsel for one of the Primary Restitution Assets later expressed the concern that Defendant could argue, through that change to the assignment agreement, that a substantial portion of the net proceeds generated from the Special Master's eventual liquidation of that asset should be disbursed, not to Defendant's victims as restitution, but rather as a mandatory tax distribution.[2]

Accordingly, the asset's counsel prepared a waiver document clarifying that Defendant would not receive any of the Primary Restitution Asset's net sale proceeds as a "tax distribution" (thereby freeing up such funds to pay restitution), and the Special Master asked that Defendant sign such waiver on October 27, 2025. Despite several follow-up

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings set forth in the Special Master Order.

[2]     This was not solely a concern about ensuring that the full value of the Primary Restitution Assets went to victims. Potential purchasers of the Primary Restitution Assets have substantial apprehension about entering into any transaction that involves funds flowing to Defendant for both liability and public relations reasons. Thus, signing the waiver could have increased buyer interest, and the purchase price of, the applicable Primary Restitution Asset.

2

requests by the Special Master's counsel to Defendant's counsel, **Defendant never complied with this request**, nor did Defendant ever seek to revise the draft waiver or articulate through counsel any substantive concerns with the waiver to the Special Master.[3]

On May 14, 2026, the Special Master, through counsel, rescinded the Special Master's request that Defendant execute the above-described waiver. In lieu thereof, the Special Master presented Defendant with a new waiver document (the "New Waiver"). The New Wavier specifies that, to the extent Defendant opposes a sale of a Primary Restitution Asset that the Special Master presents to this Court for approval, then Defendant's sole recourse remains with this Court and Defendant shall not otherwise seek to collaterally attack an order of this Court approving a transaction.[4] Although Defendant has not yet signed the New Waiver, the Special Master expects that Defendant will execute the New Waiver before or during the sentencing hearing.[5]

Furthermore, Defendant agreed to keep confidential certain information concerning the Primary Restitution Assets in one of the assignment agreements and then later breached this confidentiality provision—in a manner hampering the Special Master's efforts to maximize the value of the corresponding Primary Restitution Asset—by publicly disclosing the confidential information in filings made in various outstanding lawsuits against one of his victims, ULICO.

---

[3] Defendant's counsel has told the Special Master's counsel that the reason they never engaged with the Special Master on the first waiver was due to uncertainty surrounding Defendant's tax situation.

[4] The goal of the New Waiver is to give prospective purchasers comfort that they will not be dragged into litigation with Defendant should they purchase a Primary Restitution Asset through a Court-approved transaction, a legitimate fear given Defendant's litigious history in other courts.

[5] The substantive text of the New Waiver (excluding signature blocks and recitals) is approximately one page in length.

b. <u>Relinquishing a Previously Approved $40,000,000 Tax Escrow in Connection with the Sale of the Clanwilliam Group of Companies ("Clanwilliam")</u>. No clarification needed. This significant concession was critical to consummating the Clanwilliam sale.

c. <u>Executing Releases and Dismissing Lawsuits to Permit Clanwilliam Closing</u>. After the Court appointed the Special Master, Defendant filed several lawsuits against the trustee of the Clanwilliam trust and the prospective purchaser of Clanwilliam seeking, *inter alia*, to slow or stop the consummation of the Clanwilliam sale. When the Special Master inquired about these suits, Defendant's counsel advised that the purpose of the suits was to make sure that the Special Master would preside over this sale as opposed to others. Once the Special Master determined that the Clanwilliam sale would be beneficial for the restitution process, the Special Master requested that the lawsuits be dismissed *with* prejudice, which, understandably, was a closing condition for both the buyer and seller. Defendant did not do so, electing instead to dismiss the lawsuits *without* prejudice. Given the delicate status of the Clanwilliam deal (which various parties had been trying to close since 2023, if not earlier), Defendant's failure to dismiss his lawsuits *with* prejudice caused appreciable strife among the various parties to, and jeopardized the overall viability of, the Clanwilliam transaction. To remedy this situation, the Special Master negotiated subsequent releases among the parties, which Defendant executed as stated in Defendant's Sentencing Memo. The Clanwilliam sale thereafter closed, and Defendant has not since initiated new lawsuits against the trustee of the Clanwilliam trust or the Clanwilliam purchaser, to the Special Master's knowledge.

4

d.      Dismissing Appeals for Certain State Court Proceedings.  The Special Master was not involved in the appeals referenced in Defendant's Sentencing memo, the dismissal of which, on information and belief, preceded the entry of the Special Master Order.  As such, the Special Master offers no clarification on this item.

e.      Assisting in the Clanwilliam Transaction.  As stated above, Defendant facilitated the Clanwilliam transaction (i) by foregoing a $40,000,000 escrow from the Clanwilliam sale proceeds that the Wake County Superior Court earmarked to pay possible income taxes prior to the Special Master's involvement and (ii) by releasing Defendant's claims/lawsuits against the Clanwilliam buyer and seller.  Other than those items and the general assistance described in paragraph 1 above, Defendant did not assist the Special Master's efforts in connection with Clanwilliam.

f.      Executing Assignments and Releases to Enable Asset Sales.  As stated above, Defendant (i) assigned his interests in the Primary Restitution Assets to the Special Master as required by the Special Master Order and (ii) released Defendant's claims/lawsuits against the Clanwilliam buyer and seller.  Defendant has not executed any other assignments or releases to enable asset sales.  As described in paragraph 2(a) above, the Special Master asked Defendant to sign two different additional waivers that would facilitate future sales of Primary Restitution Assets, but Defendant has not yet executed either waiver.[6]

g.      Voluntarily Providing Tax Refund Checks Totaling $570,492.27 to the Special Master.  One of the Specified Affiliates Companies was due refunds from the U.S.

_____

[6]      Admittedly, the Special Master withdrew the request that Defendant execute the first waiver, instead requesting now that Defendant sign the New Waiver, which was communicated to Defendant's counsel for the first time on May 14, 2026.  The Special Master believes Defendant will have a meaningful opportunity to consider the New Waiver before or during the sentencing hearing.

5

Treasury on account of employee retention tax credits, which refund checks were delivered to Defendant. The Special Master agrees that Defendant voluntarily disclosed the existence of these funds to the Special Master upon Defendant's receipt of the same. Initially, Defendant asked the Special Master to use a portion of these funds to pay for various of Defendant's personal expenses. Once the Special Master rejected that request, Defendant promptly turned the funds over to the Special Master. It remains unclear whether these funds ultimately will be applied to restitution, turned over the NHC Holdings, LLC, or relinquished to the applicable Specified Affiliated Company.

h. <u>Consent to Protective Order Concerning Policyholder Data</u>. No clarification needed.

i. <u>Providing Copies of Tax Returns to Special Master</u>. No clarification needed.

j. <u>Working to Address Numerous Tax Issues Facing NHC Holdings, LLC</u>. Outside of the general assistance described in paragraph 1 above, the Special Master is unaware of efforts taken by Defendant to address the outstanding tax issues facing NHC Holdings, LLC.

k. <u>Payments Made Prior to Special Master Order</u>. Defendant sought restitution credit for various payments or other transfers made prior to entry of the Special Master Order that the Special Master does NOT consider to be a return of money taken for restitution purposes, as explained in the Special Master's restitution report (Doc. No. 106, at 23–25). The Special Master maintains that most, if not all, of the transfers Defendant references in this portion of Defendant's Sentencing Memo were done for fresh and

6

independent consideration and therefore, did not constitute a return of property taken for restitution purposes.

3. In addition to the foregoing clarifications, the Special Master wishes to highlight that Defendant continues to pursue civil litigation against his victims (primarily ULICO), the trustee of one or more trusts established to preserve the value of one or more restitution assets, and others. Defendant's contentions in some of this litigation overlap with the restitution issues in this case (*e.g.*, arguments that ULICO has been repaid in full and is not due anything further from Defendant). Although arguably exceeding the scope of the Special Master's authority, the Special Master nevertheless requested that Defendant dismiss these lawsuits. Defendant declined, and the Special Master has not pushed the issue given the question of whether Defendant's conduct in this regard falls within the Special Master's purview. Regardless, Defendant's pursuit of such civil litigation detracts from the Special Master's efforts to maximize the value of the restitution assets.[7]

Respectfully submitted this 22d day of May, 2026.

*/s/ Michael L. Martinez*
Joseph W. Grier, III (State Bar No. 7764)
Michael L. Martinez (State Bar No. 39885)
Benjamin D. Rhodes (State Bar No. 62618)
Grier Wright Martinez, PA
521 East Morehead Street, Suite 440
Charlotte, North Carolina 28202
Telephone: 704.332.0209; Fax: 704.332.0215
Email: mmartinez@grierlaw.com

*Attorneys for the Special Master*

---

[7] This is primarily because the litigation deters buyers from wanting to purchase a Primary Restitution Asset on account of (a) bolstering Defendant's litigious reputation and (b) creating the perception that the Special Master could not prevent Defendant from causing disruption throughout a sale process overseen by the Special Master.

## ARTIFICIAL INTELLIGENCE CERTIFICATION

The undersigned hereby certifies that: no artificial intelligence was knowingly employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources Westlaw, Lexis, FastCase, and Bloomberg. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Respectfully submitted this 22d day of May, 2026.

*/s/ Michael L. Martinez*
Michael L. Martinez (State Bar No. 39885)
Grier Wright Martinez, PA
521 East Morehead Street, Suite 440
Charlotte, North Carolina 28202


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of the foregoing *Special Master's Statement Concerning Defendant's Cooperation* were served on following parties by electronic mail as indicated below.

Daniel Ryan (Daniel.ryan@usdoj.gov)
Benjamin Bain-Creed (Benjamin.Bain-Creed@usdoj.gov)
Assistant U.S. Attorney(s)
U.S. Attorney's Office

Lyndie Freeman (Lyndie.Freeman@usdoj.gov)
Criminal Division
U.S. Department of Justice

James F. Wyatt, III (jwyatt@wyattlaw.net)
Wyatt & Blake, LLP
*Attorneys for Defendant*

Ryan J. Meyer (ryan.meyer@katten.com)
Brandon McCarthy (brandon.mccarthy@katten.com)
Katten Muchin Rosenman LLP
*Attorneys for Defendant*

Wes J. Camden (wcamden@williamsmullen.com)
Caitlin M. Poe (cpoe@williamsmullen.com)
Lauren E. Fussell (lfussell@williamsmullen.com)
Williams Mullen
*Attorneys for the N.C. Insurance Companies*

Benjamin L. Worley (bworley@longleaflp.com)
Longleaf Law Partners
*Attorneys for the Bermuda Ins. Companies*

Luis F. Llach-Zúñiga (LLlach@cstlawpr.com)
Casillas Santiago Torres LLC
*Attorneys for ULICO*

Charles A. (Tony) Jones (tony.jones@troutman.com)
Chris Browning (chris.browning@troutman.com)
R. Kyle Driggers (kyle.driggers@troutman.com)
troutman pepper locke
*Attorneys for ULICO*

J. Walton Milam III (wmilam@rosenwoodrose.com)
Rosenwood, Rose & Litwak, PLLC
*Attorneys for Vista/Cell 1.16*

Jeffrey E. Oleynik (JOleynik@BrooksPierce.com)
D.J. O'Brien III (dobrien@brookspierce.com)
Kate E. Giduz (KGiduz@BrooksPierce.com)
Brooks, Pierce, McLendon, Humphrey & Leonard, LLP
*Attorneys for Nederlandsche Algemeene Maatschappij van Levensverzekering "CONSERVATRIX" N.V.*

8

Jason Cowley (jcowley@mcguirewoods.com)
McGuireWoods LLP
*Attorneys for NOLHGA*

Joel Glover (joel.glover@faegredrinker.com)
Eric Au (eric.au@faegredrinker.com)
Faegre Drinker Biddle & Reath LLP
*Attorneys for NOLHGA*

Respectfully submitted this 22d day of May, 2026.

*/s/ Michael L. Martinez*
Michael L. Martinez (State Bar No. 39885)
Grier Wright Martinez, PA
521 East Morehead Street, Suite 440
Charlotte, North Carolina 28202
Telephone: 704.332.0209; Fax: 704.332.0215
Email: mmartinez@grierlaw.com