## EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 3:23-CR-48-MOC |
| GREG E. LINDBERG, | |
| Defendant. | |

## CONSENT MOTION FOR ORDER APPROVING DISPOSITION OF NET PROCEEDS FROM THE SALE OF THE CLANWILLIAM GROUP OF COMPANIES

NOW COMES Joseph W. Grier, III, as special master appointed pursuant to 18 U.S.C. § 3664(d)(6) (the "Special Master"), by and through counsel, who, with the consent of the United States and Defendant Greg E. Lindberg ("Lindberg"), files this *Consent Motion for Order Approving Disposition of Net Proceeds from the Sale of the Clanwilliam Group of Companies* (this "Consent Motion") pursuant to this Court's *Order Appointing Special Master* entered on January 23, 2025 (Doc. No. 56) (the "Special Master Order"), and, in support hereof, respectfully represents as follows to the Court:

### I.    PROCEDURAL BACKGROUND

1.     On February 23, 2023, in a thirteen-count Bill of Indictment, Defendant was charged with: conspiracy, in violation of 18 U.S.C. § 371; wire fraud, in violation of 18 U.S.C. § 1343; making false insurance business statements presented to regulators, in violation of 18 U.S.C. § 1033(a); making false entries about the financial condition or solvency of an insurance business, in violation of 18 U.S.C. § 1033(c); and money laundering conspiracy, in violation of 18 U.S.C. § 1956(h).  Doc. No. 1.

1

2. The indictment alleged, among other things, that as of September 30, 2022, Defendant owed certain insurance companies more than $1.1 billion. *Id.* at ¶ 185. The losses catalogued by the Bill of Indictment focus primarily on those suffered by the following insurance company victims (and their constituent individual policyholders): (1) Southland National Insurance Company, Southland National Reinsurance Corporation, Colorado Bankers Life Insurance Company, and Bankers Life Insurance Company (collectively, the "North Carolina Insurance Companies"); (2) PB Life and Annuity Co., Ltd. ("PBLA"), PB Investment Holdings Ltd. ("PBIHL"), Omnia Ltd. ("Omnia"), and Northstar Financial Services (Bermuda) Ltd. ("Northstar, and, collectively with PBLA, PBIHL, and Omnia, the "Bermuda Insurance Companies"); and (3) Universal Life Insurance Company ("ULICO"). *See* Doc. No. 1. The Bermuda Supreme Court has determined that ULICO is a policyholder of PBLA under Bermuda law. PBLA has no policyholders other than ULICO.

3. On November 12, 2024, Defendant pleaded guilty to Counts One and Thirteen pursuant to a written plea agreement. In the plea agreement, Defendant agreed, among other things, to pay full restitution to all victims of the conduct charged in the Bill of Indictment and to the appointment of a special master to "identify, receive, apportion, and distribute funds for restitution, and perform any other related tasks as ordered by the Court." Doc. No. 40.

4. On December 12, 2024, the United States and Defendant jointly moved for the appointment of the Special Master given the complexity of the issues incidental to calculating and paying victim restitution in this case. Doc. No. 54. The Special Master Order was entered on January 23, 2025.

## II.  FACTUAL BACKGROUND

### A.  Complexity of Defendant's Assets

5.  The Special Master Order directs the Special Master to, *inter alia*:  (1) "identify all assets available for liquidation . . . for the benefit of the victims"; (2) "select an appropriate method and timetable and seek Court approval to liquidate . . . any available assets for the benefit of victims"; and (3) "oversee and help accomplish the liquidation with Court approval."  Doc. No. 56, at 6.  The Special Master Order also instructs the Special Master to determine whether what the Special Master Order refers to as "the Primary Restitution Assets" will be sufficient to satisfy Defendant's restitution obligations in full before seeking to liquidate Defendant's assets other than the Primary Restitution Assets.  *Id.*, at 7–8.

6.  The Special Master is in the process of preparing a more fulsome report to the Court on the status of the Special Master's efforts in this case.  But, to summarize, Defendant amassed ownership in a complicated web of hundreds of companies across various industries financed through an even more complicated web of lending arrangements with Defendant's insurance company affiliates that the Special Master is only beginning to understand.  For example, NHC Holdings, LLC ("NHC"), one of the Primary Restitution Assets, comprises more than three hundred (300) individual companies, and the corporate governance structure of NHC and those companies is not simple.

7.  Furthermore, prior to the formation of NHC, demands for repayments of loans from lenders and/or pressure from regulators resulted in Defendant, Defendant's holding company, n/k/a Global Growth Holdings, LLC ("GGH"), and the North Carolina Insurance Companies entering into a memorandum of understanding (the "MOU") that required Defendant and GGH to form NHC and contribute hundreds of Defendant's affiliate companies (each a "SAC," and, collectively, the "SACs") to the ownership and control of NHC, which would be governed by an unaffiliated

board primarily responsible with looking after the best interests of innocent policyholders. Defendant breached his obligations under the MOU and caused certain SACs to be contributed to various "change of control" or "change of ownership" trusts,[1] thereby further complicating Defendant's and NHC's relationships with those many businesses that owed money to the insurance companies. Defendant's and GGH's interests in NHC and the SACs constitute Primary Restitution Assets under the Special Master Order.

**B.      The MOU Action Pending Before the Wake County Superior Court**

8.      Defendant, GGH, and the North Carolina Insurance Companies entered into the MOU for the purpose of creating a mechanism through which Defendant would recompense the injuries suffered by certain of his victims:  NHC managing the SACs in a manner sufficient to repay loans to insurance company lenders over time.  When Defendant failed to contribute the SACs to NHC as contemplated by the MOU, the North Carolina Insurance Companies sued to enforce the agreement embodied by the MOU in the action currently pending before the North Carolina General Court of Justice, Superior Court Division, as 19CVS13093-910 (Wake County) (the "MOU Action").

9.      Although the Special Master Order directs the Special Master to oversee and help accomplish the liquidation of Defendant's assets with Court approval, the Wake County Superior Court entered an injunction in the MOU Action on October 1, 2019, generally preventing the liquidation of any of the SACs before they are contributed to NHC.[2]

---

[1]      Clanwilliam, the subject of this Consent Motion, is subject to one such trust, the trustee of which is H. Steve Wilson ("Wilson").

[2]      The Special Master Order states that "[n]one of the authority vested in the Special Master by the Court is intended to . . . authorize the Special Master to violate any . . . state court orders."  Doc. No. 56, at 10.

4

### C.    Clanwilliam Group of Companies

10.    On information and belief, the Clanwilliam Group of Companies ("Clanwilliam"), a group of healthcare software companies headquartered in Ireland, are among the most valuable of the SAC groups and, therefore, would likely be one of the largest sources of recovery for victims.  As the companies composing Clanwilliam are identified as SACs in the MOU, their sale is restrained by the injunction entered in the MOU Action.  On March 31, 2020, the Wake County Superior Court established a "Review Panel" to provide guidance to the Wake County Superior Court on proposed transactions that would otherwise violate the TRO, including any sale involving Clanwilliam.

11.    The Wake County Review Panel voted in favor of a proposed sale of Clanwilliam in early 2023.

12.    On March 14, 2023, the Wake County Superior Court entered an order in the MOU Action (the "Wake County Clanwilliam Order"), which partially modified the MOU Action injunction to permit a sale of Clanwilliam to proceed subject to various requirements and conditions.  The Wake County Clanwilliam Order details how any sale proceeds net of all closing costs and legitimate contractual obligations of Clanwilliam must be distributed, specifying a distribution waterfall that, in effect, would preclude any of the proceeds flowing to and through the Special Master.[3]

13.    The Clanwilliam sale originally proposed to the Review Panel did not move forward in the spring of 2023.

---

[3]    In essence, the Wake County Clanwilliam Order's waterfall divides the proceeds between the North Carolina Insurance Companies, the Bermuda Insurance Companies, and another insurance company, Vista Life & Casualty Reinsurance Company and affiliates ("Vista"), after reserving an amount for possible income tax obligations.

### D.     Other Litigation Impacting the Clanwilliam Sale Transaction

14.     Since the entry of the Wake County Clanwilliam Order, the Special Master was appointed in these proceedings and has been tasked with aiding the Court with the restitution process. Pursuant to the Defendant's Plea Agreement as well as the Order appointing the Special Master, the Defendant has agreed that the Special Master may step into his shoes for purposes of marshalling the Primary Restitution Assets to satisfy his restitution obligations. While the Special Master's eventual appointment could not have been known to the Wake County Court at the time it entered the Wake County Clanwilliam Order, the order functionally prohibits the Special Master from receiving any funds from a sale of Clanwilliam by prohibiting the Defendant and GGH from receiving any proceeds of the Clanwilliam sale.

15.     Also, while the Clanwilliam sale was pending, the Bermuda Insurance Companies filed a suit against Lindberg, the SACs (including Clanwilliam), and other entities in an effort to secure the Bermuda Insurance Companies' ability to offset their alleged losses from the equity in Defendant's assets, which adversary proceeding is currently pending before the U.S. Bankruptcy Court for the Southern District of New York as case number 23-01000 (the "Bermuda Suit").

16.     Finally, after the Special Master Order was entered, Defendant filed civil actions against trustee Wilson in Texas and Colorado without the advance knowledge or consent of the Special Master (the "Wilson Suits"). Defendant's professed purpose of the Wilson Suits was to facilitate the Special Master's efforts, including slowing down the Clanwilliam transaction in order to afford the Special Master the opportunity to familiarize himself with the proposed Clanwilliam transaction. For the avoidance of doubt, the Special Master (a) never requested that the Wilson Suits be filed, (b) considers the Wilson Suits a nuisance at this time; and (c) intends to facilitate the dismissal of the Wilson Suits, *in toto*, in due course, including by demanding that Defendant dismiss the Wilson suits pursuant to Paragraph 8 of the Special Master Order.

### E.    Current Status of the Clanwilliam Transaction

17.    On information and belief, the purchase and sale agreement between Clanwilliam and the Purchaser has certain closing deliverables or closing conditions that must be satisfied before the sale is consummated and only three (3) of those conditions remain unsatisfied: (a) certain regulatory approval(s); (b) dismissal of the Wilson suits; and (c) dismissal of Clanwilliam from the Bermuda Suit.[4]  In addition, the purchase and sale agreement explicitly provides that any sale proceeds net of all closing costs and legitimate contractual obligations of Clanwilliam (the "Proceeds") be delivered only to a deposit account approved by the Wake County Superior Court.  Furthermore, the Purchaser has requested that the Special Master consent to the transaction in writing, but has not demanded the same as a closing deliverable.

18.    The Special Master estimates that, based on currency exchange rates in effect on April 27, 2025, the Proceeds will total $318,000,000[5]; *provided, however*, that this estimate fluctuates as the foreign currency exchange rate varies[6] and closing costs increase and decrease, over time.

### F.    Proposed Distribution of the Clanwilliam Sale Proceeds

19.    Given the impediments to closing and fearing the loss of an opportunity to provide meaningful value to Defendant's victims in the near future, the Special Master, the United States,

---

[4]    Since entry of the Special Master Order, the Bermuda Insurance Companies have consistently expressed to the Special Master their willingness to dismiss their litigation claims against Clanwilliam to accommodate the sale transaction, but only if the Bermuda Insurance Companies receive their "fair share" of the Proceeds.

[5]    Clanwilliam's sale to the Purchaser will result in certain tax liabilities and obligations for a SAC, Triton Financial Limited ("Triton"), in Ireland (the "Irish Tax Liabilities").  In addition, Triton has incurred and continues to incur various costs and expenses relating to the Irish Tax Liabilities, including (i) the filing of all past due financial accounts with the Irish government and (ii) calculating Triton's tax liability and withholding obligations associated with Clanwilliam's sale to the Purchaser (the "Triton Closing Costs").  Based on currency exchange rates as of April 27, 2025, the Special Master initially estimated that the Proceeds would total $338,000,000.  However, the Special Master, in consultation with NHC, has determined that $20,000,000 should be escrowed to satisfy Irish Tax Liabilities and Triton Closing Costs.

[6]    The economic portions of purchase and sale agreement are expressed in Euros.

Defendant, the North Carolina Insurance Companies, the Bermuda Insurance Companies, ULICO,[7] NHC, and Vista worked together to try to find a solution that would allow the Clanwilliam transaction to close and to provide some more immediate relief to victims.

20.     The result of these negotiations is the following proposal by and among the above-referenced parties (the "Clanwilliam Proposal"):

a.  The North Carolina Insurance Companies and other parties to the MOU Action shall seek entry of an order by the Wake County Superior Court amending the relief granted pursuant to the Wake County Clanwilliam Order to permit distribution of the Proceeds to the Special Master at a deposit account designated by the Special Master to the Purchaser in writing.

b.  The Bermuda Insurance Companies shall withdraw the Bermuda Suit as against the Clanwilliam group of companies, subject to the approval of the Bermuda Supreme Court and the United States Bankruptcy Court overseeing the Bermuda Insurance Companies' chapter 15 proceedings.

c.  Defendant shall withdraw the claims in the Wilson Suits relating to the Clanwilliam sale transaction.

d.  The Proceeds shall be disbursed as soon as reasonably practicable and only as follows:

i.    $14,112,426 to the Special Master as a reserve for satisfying administrative expenses incurred in connection with this case, including those of Defendant's criminal defense counsel, and approved pursuant to the procedure set forth in the Special Master Order;

ii.   $108,195,266 to the Bermuda Insurance Companies, to be allocated as follows (subject to approval of the Bermuda Supreme Court): $80,993,997 for PBLA (and, by extension, for ULICO), $18,868,418 for Northstar, $3,714,041 for Omnia, and $4,618,810 for PBIHL;

iii.  $23,520,710 to Vista; and

iv.   $172,171,598 allocated to the North Carolina Insurance Companies to be disbursed in accordance with subpart (f) below.

e.  To the extent the Proceeds are more or less than $318,000,000, the Special Master, the Bermuda Insurance Companies, Vista, and the North Carolina Insurance

---

[7]     Although the Special Master is not disbursing funds directly to ULICO pursuant to the Clanwilliam Proposal, ULICO, the sole policyholder of PBLA under Bermuda law and beneficiary of the PBLA-ULICO Trust, stands to receive the bulk of the Bermuda Insurance Companies' portion of the Proceeds.

Companies shall share in the gain or loss *pro rata* based on the foregoing distribution amounts (*i.e.*, 4.438% to the administrative expense reserve, 34.024% to the Bermuda Insurance Companies, 7.396% to Vista, and 54.142% to the North Carolina Insurance Companies).

f.  The Special Master shall, as soon as reasonably practicable, disburse the North Carolina Insurance Companies' $172,171,598 share of the Proceeds, as adjusted pursuant to subpart (e) above, to first directly pay the North Carolina Insurance Companies' policyholders with uncovered losses such uncovered loss amounts as restitution pursuant to 18 U.S.C. § 3664(j)(1), with the remaining balance to be distributed to the North Carolina Insurance Companies for distribution pursuant to the North Carolina insurance liquidation priority statute(s), including to, or for the benefit of, state guaranty associations as Class 2 claimants.

g.  The Bermuda Insurance Companies shall cause fifty percent (50%) of the Paradigm Park Holdings, LLC funds currently held at Metropolitan Commercial Bank in the amount of $1,979,879.79 (as of June 10, 2025) (the "Paradigm Funds") to be disbursed to the Katten Muchin Rosenman LLP ("Katten") trust account, which funds may only be disbursed to satisfy the fees and expenses of Katten and Wyatt & Blake as approved by the Court, and for no other purpose whatsoever absent the prior approval of the Court.

h.  If NHC determines, in its discretion and in the ordinary course of managing its affairs, that any of the following SACs has no further material value to NHC and NHC does not otherwise intend to sell such SAC, then the Special Master shall have the option of assuming ownership and control of such SAC upon terms and conditions mutually acceptable to the Special Master and NHC:  SixSails, LLC; Certitrek Group, LLC; ELP Holdings, LLC; Global TIC CE, LLC; Fiasco Fine Wine, LLC; Century Vision Global, LLC; Marval Investments Limited; and Intralan Investments Limited.

i.  To the extent the reasonable and necessary Irish Tax Liabilities and Triton Closing Costs are less than $20,000,000, NHC and/or Triton, as appropriate, shall pay such excess amount to the Special Master for subsequent distribution consistent with the percentages outlined in subpart (e) above.  To the extent the reasonable and necessary Irish Tax Liabilities and Triton Closing Costs are more than $20,000,000, NHC and/or Triton, as appropriate, shall be entitled to receive or retain out of the net sales proceeds received from any subsequent sale of a SAC an amount equal to such shortfall.

j.  Notwithstanding any of the foregoing to the contrary, in recognition that certain of the potential Irish Tax Liabilities would result from a formalistic perspective of various transactions and structures implemented by Defendant that ignores the remedial reality of the transaction, the Bermuda Insurance Companies and/or ULICO, with the consent of Clanwilliam and the Special Master, as necessary, may take any actions consistent with applicable law, including without limitation relinquishing or abandoning interests in SACs, transferring interests in SACs to the

9

special master, and/or receiving the distribution referenced in subpart (d) above directly from Clanwilliam, if deemed appropriate to maximize victim recoveries; provided that the Bermuda Insurance Companies and/or ULICO shall not take any such actions without the prior written approval of the Special Master, Vista, and the North Carolina Insurance Companies.

### III. RELIEF REQUESTED

21. Through this Consent Motion, the Special Master seeks entry of an Order: (a) directing the Special Master to disburse the Proceeds in the manner detailed above and otherwise authorizing the Special Master to perform in accordance with the Clanwilliam Proposal; and (b) crediting all amounts distributed under this proposal to the North Carolina Insurance Companies, the Bermuda Insurance Companies, and Vista (to the extent Vista is determined to be a victim entitled to restitution) toward Defendant's ultimate restitution obligations as determined by a future order of restitution entered by the Court.

22. To be clear, this Consent Motion is not asking the Court to direct any other party to the Clanwilliam Proposal to perform, or refrain from taking, any action.

### IV. ARGUMENT

23. Absent the Clanwilliam Proposal, the Special Master would receive none of the Proceeds under the Wake County Clanwilliam Order and, more importantly, the Clanwilliam sale transaction might not come to fruition, thereby depriving Defendant's victims of the opportunity to recover substantial sums sooner rather than later.

24. In an ideal set of circumstances, the Special Master would have completed his restitution victim analyses—and made recommendations to the Court concerning the same—before seeking Court approval of (i) a restitution asset sale or (ii) how funds from such a sale would be disbursed to victims. Indeed, the proportionate flow of the Proceeds contemplated by the Clanwilliam Proposal almost certainly will deviate in some degree from the general victim restitution apportionment later approved by the Court in this proceeding. Notwithstanding, under

the unique circumstances presented here, that deviation should not impede this hard-fought solution to the Clanwilliam dilemma, which seizes a rare opportunity to put significant recoveries into the hands of key victim constituencies, especially considering that victims have struggled to collect from Defendant, including individual policyholder victims through the North Carolina Insurance Companies' or Bermuda Insurance Companies' liquidation proceedings, over a period exceeding five years.

25. Delaying a resolution on Clanwilliam until after the Special Master proposes restitution calculation and distribution methodologies risks the Purchaser walking away from the transaction altogether. The negative impact of the prospective purchaser walking away from the transaction is exacerbated by the fact that the Clanwilliam companies have loan obligations set to mature in October of this year that, absent a sale, could result in debt collection litigation that would have a negative impact on Clanwilliam's value—and, therefore, its value to the victims.

26. Even though the North Carolina Insurance Companies, Bermuda Insurance Companies, and/or both of them may be receiving more or less proportionally from the Proceeds than they would be entitled to receive from other restitution assets under the distribution methodology later established in this case, the Special Master anticipates collecting enough funds in the future to equalize distributions to other victims (if any) upon the Court's final approval of a distribution process.[8]

27. The Clanwilliam Proposal: (i) carefully balances various competing interests in a manner satisfactory to the largest victim groups in this proceeding; (ii) creates a much-needed

---

[8] Although the Special Master is unsure whether the Special Master will recommend that the Court treat Vista as a victim in this proceeding, Vista's potentially "out of order" distribution from the Proceeds is critical to the Clanwilliam Proposal because, without Vista's cooperation, the Wake County Clanwilliam Order (through which Vista is entitled to a larger distribution than what is being proposed here) could not be modified without further litigation. If the Court determines that Vista is a victim entitled to restitution, then the amounts paid to Vista pursuant to this Clanwilliam Proposal should be credited against the restitution amount ordered by the Court.

administrative expense reserve for the Special Master's professionals to rely on in performing their duties in this case; and (iii) otherwise serves the best interests of the victims. Accordingly, the Special Master seeks the Court's assistance in solidifying the Special Master's responsibilities pursuant to the Clanwilliam Proposal in order to encourage the other parties to similarly perform as promised.

28. A proposed order granting this Consent Motion is being tendered for the Court's consideration contemporaneously with the filing of this Consent Motion. The undersigned has conferred with counsel for the Defendant and the United States concerning the substance of this Motion, both of whom consent to the relief requested through this Consent Motion and the form of the attached proposed order.

**WHEREFORE**, the Special Master—with the consent of the United States and Defendant—respectfully requests that the Court enter an order directing the Special Master to disburse the Proceeds in the manner agreed to in connection with the Clanwilliam Proposal and otherwise authorizing the Special Master to perform in accordance with the Clanwilliam Proposal.

Respectfully submitted this 3d day of July, 2025.

*/s/ Michael L. Martinez*
Joseph W. Grier, III (State Bar No. 7764)
Michael L. Martinez (State Bar No. 39885)
Benjamin D. Rhodes (State Bar No. 62618)
Grier Wright Martinez, PA
521 East Morehead Street, Suite 440
Charlotte, North Carolina 28202
Telephone: 704.375-3720; Fax: 704.332.0215
Email: mmartinez@grierlaw.com

*Attorneys for Joseph W. Grier, III, Special Master*

## ARTIFICIAL INTELLIGENCE CERTIFICATION

The undersigned hereby certifies that: no artificial intelligence was knowingly employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Respectfully submitted this 3d day of July, 2025.

/s/ Michael L. Martinez
Michael L. Martinez (State Bar No. 39885)
Grier Wright Martinez, PA
521 East Morehead Street, Suite 440
Charlotte, North Carolina 28202

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of the foregoing *Consent Motion for Order Approving Disposition of Net Proceeds from the Sale of the Clanwilliam Group of Companies* were served on following parties by electronic mail or U.S. Mail, postage prepaid, as indicated.

Daniel Ryan
Assistant U.S. Attorney
U.S. Attorney's Office
Via Email: Daniel.ryan@usdoj.gov

James F. Wyatt, III
Wyatt & Blake, LLP
Via Email: jwyatt@wyattlaw.net
*Attorneys for Defendant*

Ryan J. Meyer
Brandon N. McCarthy
Katten Muchin Rosenman LLP
Via Email: ryan.meyer@katten.com &
brandon.mccarthy@katten.com
*Attorneys for Defendant*

Wes J. Camden
Caitlin M. Poe
Williams Mullen
Via Email: wcamden@williamsmullen.com &
cpoe@williamsmullen.com
*Attorneys for the N.C. Insurance Companies*

Nicholas F. Kajon
Constantine D. Pourakis
Stevens & Lee
Via Email: nicholas.kajon@stevenslee.com &
constantine.pourakis@stevenslee.com
*Attorneys for the Bermuda Ins. Companies*

Luis F. Llach-Zúñiga
Casillas Santiago Torres LLC
Via Email: LLlach@cstlawpr.com
*Attorneys for ULICO*

Charles A. (Tony) Jones
troutman pepper locke
Via Email: tony.jones@troutman.com
*Attorneys for ULICO*

John W. Babcock
James C. Lanik
Waldrep Wall Babcock & Bailey PLLC
Via Email: jbabcock@waldrepwall.com &
jlanik@waldrepwall.com
*Attorneys for NHC*

Don Solow
Vista Life & Casualty Reinsurance Company
Via Email: dsolow@vistare.us

Ronan Lennon
Chief Legal Officer, Clanwilliam
Via Email: Ronan.Lennon@clanwilliamgroup.com

John Bash
Quinn Emanuel Urquhart & Sullivan, LLP
Via Email: johnbash@quinnemanuel.com
*Attorneys for H. Steve Wilson*

H. Steve Wilson
Trustee of Various Trusts
Via Email: Steve@hswilson.com

Margaret R. Westbrook
K&L Gates LLP
Via Email: Margaret.Westbrook@klgates.com
*Attorneys for William P. Janvier*

William P. Janvier
Receiver & Special Master in Various Actions
Via Email: wjanvier@smvt.com

Byron L. Saintsing
Smith Debnam Narron Drake Saintsing & Myers, LLP
Via Email: bsaintsing@smithdebnamlaw.com
*Attorneys for Galen Publishing, LLC*

Jeffrey E. Oleynik
Kate E. Giduz
Brooks, Pierce, McLendon, Humphrey & Leonard, LLP
Via Email: JOleynik@BrooksPierce.com & KGiduz@BrooksPierce.com
*Attorneys for Nederlandsche Algemeene Maatschappij van Levensverzekering "CONSERVATRIX" N.V.*

Kevin B. Huff
Kellogg Hansen, Todd, Figel & Frederick, P.L.L.C
Via Email: khuff@kellogghansen.com
*Attorneys for TA Associates, L.P.*

Arthur B. Price
General Counsel, TA Associates, L.P.
Via Email: aprice@TA.com

John W. Fletcher III
Fletcher, Tydings, Williams-Tracy & Gott, PLLC
Via Email: JFletcher@fletchertydings.com
*Attorneys for ICP Services, Peter & Carol Pinto, & Rob Hirsch*

Daniel E. Rohner
Shook, Hardy & Bacon L.L.P.
Via Email: DROHNER@shb.com
*Attorneys for Wells Family Trust, Richard and Michelle Dowdican Revocable Trust, Mason Wells, Robert M. Nelson, and David Evans*

Respectfully submitted this 3d day of July, 2025.

*/s/ Michael L. Martinez*
Michael L. Martinez (State Bar No. 39885)
Grier Wright Martinez, PA
521 East Morehead Street, Suite 440
Charlotte, North Carolina 28202