**EXHIBIT O2**

Case 3:23-cr-00048-MOC-DCK     Document 234-48     Filed 07/14/26     Page 1 of 11

Confidential

Universal Financial Holdings LLC
1120 S 6th Street
Suite 501
Saint Louis, Missouri 63104

November 17, 2022

GBIG Capital, Inc.
2222 Sedwick Road
Durham, North Carolina 27713
Attn: Justin Holbrook

Re: Indication of Interest

Ladies and Gentlemen:

Based on our review of information previously provided, Universal Financial Holdings LLC ("UFH") is pleased to provide this indication of interest ("Indication of Interest") to GBIG Capital, LLC. ("GBIG Capital") to acquire 100% of the membership interest of GBIG Holdings, LLC ("GBIG Holdings") pursuant to the general terms and conditions contained in the summary of proposed terms attached hereto and included herein by reference (the "Acquisition Term Sheet").

UFH requires 30 days to complete confirmatory financial, actuarial, tax and legal due diligence on GBIG Holdings and its wholly owned subsidiaries Bankers Life Insurance Company ("BLIC"), Colorado Bankers Life Insurance Company ("CBL"), and Southland National Insurance Company ("SNIC"). Upon completion of diligence, UFH will immediately sign a binding purchase agreement to acquire GBIG Holdings.

Within 15 days of signing the binding purchase agreement, UFH shall submit a Form A to approve the sale of BLIC, CBL, and SNIC. Subject to the consent of North Carolina Insurance Department, UFH shall file a Form R to approve the re-domestication of BLIC, CBL, and SNIC to Oklahoma.

The terms set forth in the Acquisition Term Sheet are subject to the absence of a material adverse change in the condition (whether financial or otherwise) or results of operations of GBIG Holdings, BLIC, CBL, and SNIC.

Further, you agree to pay UFH a work fee in the amount of $250,000.00. Such work fee will not be subject to counterclaim or set-off or be otherwise affected by any claim or dispute relating to any other matter. The work fee shall be non refundable regardless of whether the transaction closes and shall not be creditable against any other amounts payable. The work fee shall be paid as follows: a) $125,000.00 immediately upon execution of this Indication of Interest, and b) $125,000.00 upon execution of a binding purchase agreement for GBIG Holdings.

In the event GBIG Capital elects not to proceed with the transaction for any reason or GBIG Capital consummates a sale or other transaction for BLIC, CBL, and SNIC, with similar effects

1

with a party other than UFH or any of its affiliates, in each case, prior to March 31, 2023 (an "Alternate Transaction"), then GBIG Capital shall promptly pay to UFH as liquidated damages, the sum of $500,000.00 (the "Break-Up Fee") by wire transfer of immediately available funds, provided that the Break-Up Fee shall not be payable if (a) UFH has declined, refused, failed or otherwise not made reasonable and good faith efforts to pursue the transaction upon the terms contained in the Acquisition Term Sheet or UFH fails, following a request by GBIG Capital, to reaffirm promptly in writing UFH's willingness to pursue the transaction on the terms and conditions contained in the Acquisition Term Sheet, or (b) UFH or any of its affiliates participates in an Alternate Transaction.

The parties hereto shall each indemnify and hold the other party and its respective affiliates and its and their respective directors, officers, members, managers, employees, and agents harmless from and against all claims, losses, damages, and liabilities (including reasonable attorneys' fees) resulting from or arising out of any act or omission of such party or its directors, officers, managers, employees or agents taken with respect to or in furtherance of this Indication of Interest, other than such losses and damages which are found by a final, non-appealable judgment of a court of competent jurisdiction to arise out of the indemnified person's gross negligence or willful misconduct, provided, that any indemnification with respect to the transaction contemplated hereby shall be set forth in the definitive agreements for the transaction and shall supersede and replace the indemnity contained herein.

This Indication of Interest and any claim, controversy or dispute related to or in connection with this Indication of Interest or the relationship of the parties hereto and the interpretation and enforcement of the rights and duties of the parties hereto shall be governed by and construed in accordance with the laws of the State of Delaware, excluding any of its conflict-of-law provisions that would cause the laws of any other jurisdiction to be applied. Each of the parties hereto irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of any federal court sitting in the State of Delaware, and any appellate court from any thereof, over any suit, action or proceeding arising out of or relating to the transactions contemplated by this Indication of Interest and agrees that all claims in respect of any such action or proceeding shall be heard and determined in such Delaware state or, to the extent permitted by law, in such federal court. Each party hereto irrevocably waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal proceeding arising out of or relating to this Indication of Interest or the transactions contemplated hereby (whether based on contract, tort or any other theory). None of the parties hereto shall be liable for any special, indirect, consequential or punitive damages in connection with this Indication of Interest, the Acquisition Term Sheet, the transaction or any related transaction.

This Indication of Interest may be executed in any number of counterparts, each of which shall be an original, and all of which, when taken together, shall constitute one agreement. Delivery of an executed signature page of this Indication of Interest by facsimile or other electronic transmission (e.g., "pdf" or "tif") shall be effective as delivery of a manually executed counterpart hereof.

2

Sincerely,

UNIVERSAL FINANCIAL HOLDINGS LLC, a Missouri limited liability company

By: _____
Name: Robert Alban
Title: CEO

Accepted and agreed as of the date first written above:

SPONSOR:

GBIG CAPITAL, LLC., a Delaware corporation

By: _____
Name:
Title:

3

## Acquisition Term Sheet
## Summary of Proposed Terms of Acquisition
### *For Discussion Purposes Only*

**This Summary of proposed terms of acquisition sets forth the principal terms of a proposed acquisition of GBIG Holdings, LLC and is an expression of intent only and is not a binding agreement or commitment to execute the proposed transaction. There is no binding obligation on the part of any party to proceed with the proposed transaction described in this Acquisition Term Sheet unless and until definitive agreements regarding the proposed transaction are signed by the relevant parties and all required internal approvals of each party are secured.**

**Fundamental Terms:**      At the Closing (defined hereinafter), Universal Financial Holdings ("UFH") will purchase all of the outstanding membership interests of GBIG Holdings LLC ("GBIG Holdings") for $1 of consideration plus UFH shall be required to deliver to GBIG Capital, LLC $317 Million of Seller Related Assets on the terms and conditions described below. Seller-Related Assets shall be assets that are related to the seller or related to Global Growth Holdings, Inc. and shall be selected at the UFH's sole discretion.

At the Closing, UFH or an affiliate shall purchase HME, HPC, and Fiasco Fine for $150 Million. Subject to regulatory approval, UFH intends to assign its purchase obligation to SNIC.

On or before the Closing of GBIG Holdings:

1) Global shall close the ARM refinancing providing $4 Million, $86 Million, and $13 Million of liquidity to BLIC, CBL and SNIC, respectively.

2) Global shall complete additional refinancings to provide $198.5 Million of liquidity to CBL and $67.0 Million of liquidity to SNIC. See Exhibit A for pro forma sources of this $265.5 Million in liquidity transactions.

Concurrent with Closing of GBIG Holdings:

1) CBL shall novate the BLIC reinsurance treaty to AxarRe (Cayman). CBL shall transfer non-Seller related assets with a book value equal to reserves less a 5% novation fee paid by AxarRe. The reinsurance shall be restructured to provide reserve credit to CBL.

2) CBL shall reinsure 90% of its annuity reserves to AxarRe (Cayman). CBL shall transfer $347 Million of Seller related assets to AxarRe and additional non-Seller related assets. The total book value of such assets shall be equal to the reserves transferred less a 5% ceding commission paid by AxarRe. The reinsurance shall be structured to provide reserve credit to CBL

3) CBL shall reinsure 100% of its worksite reserves to Liberty Bankers Life (Oklahoma). CBL shall transfer non-Seller related assets with a book value equal to reserves less a $50 Million ceding commission paid by Liberty Bankers. CBL and Liberty Bankers shall file under

4

the Oklahoma insurance business transfer law for approval to novate the worksite policies to Liberty Bankers.

4) BLIC shall reinsure 90% of its annuity reserves to AxarRe (Cayman). BLIC shall transfer $53 Million of Seller related assets to AxarRe and additional non-Seller related assets. The total book value of such assets shall be equal to the reserves transferred less a 5% ceding commission paid by AxarRe. The reinsurance shall be structured to provide reserve credit to BLIC.

5) UFH shall recapitalize BLIC with a $15 Million cash investment.

6) Global Growth shall guarantee the approximately $475 Million of Seller related assets retained by CBL and SNIC. Such Seller related assets shall pay cash interest at a rate of 5.0% beginning 12 months after Closing with such amounts capitalized as PIK until that time.

7) Beckett Group or an affiliate thereof shall provide AxarRe a guarantee on the approximately $400 Million of Seller related assets assumed by AxarRe. Such Seller related assets shall pay cash interest at a rate of 50% beginning 12 months after Closing with such amounts capitalized as PIK until that time.

8) Global shall commit to repurchase the $400 Million of Seller related assets from AxarRe in 2032. Such commitment shall be guaranteed by the Beckett Group or an affiliate thereof.

**Delivery of Seller Related Assets:**

Within 6 months of i) the sum of CBL's cash and non-Seller related invested assets exceeding its policyholder liabilities and ii) the sum of CBL and SNIC's Seller related assets totaling $317 Million or less, UFH shall request regulatory approval for an extraordinary dividend for CBL and SNIC consisting of Seller related assets and UFH shall simultaneously purchase any remaining Seller related assets owned by CBL and SNIC. Seller shall simultaneously deliver to GBIG Capital deferred contingent consideration consisting of Seller related assets and cash in an amount equal to $317 Million less the amount of any defaults of Seller related assets that have occurred since Closing and less a provision for any tax owed by UFH and its affiliates and members as a result of the Seller related asset distribution. The parties shall cooperate to structure the transaction to optimize for tax. Notwithstanding the preceding, the parties shall make best efforts to complete the delivery of the deferred contingent consideration within 24 months of Closing and in no event shall the delivery of the deferred contingent consideration occur more than 42 months after Closing.

**Conditions to Obligation:**

UFH and GBIG's obligation to consummate the transaction contemplated hereby is specifically subject to the following conditions: (i) negotiation and timely execution of the definitive stock purchase agreement (the "SPA") with such terms, provisions and additional conditions as shall be mutually acceptable to the parties hereto, (ii) satisfactory completion of the Purchaser's due diligence investigation, (iii) UFH securing $75 Million of

5

financing for the HME, HPC, and Fiasco Fine Wine acquisition or obtaining agreement from the existing third party lenders to roll their financing, and (iv) all governmental and third party certificates, permits and approvals that are required in connection with Purchaser's acquisition and operation of business shall have been obtained including:

- Form A approval and approval to exit rehabilitation.
- Form R approval. UFH will submit a plan for redomestication for regulatory consideration.
- Form D approval for the contemplated reinsurance transactions

**Pre-Closing Covenants:** The parties agree to use their reasonable best efforts to obtain all necessary third-party and governmental consents (including all certificates, permits and approvals required in connection with the acquisition or operation of SNIC and the consummation of the transaction).

**Best Efforts** The parties agree to negotiate in good faith and to use their best efforts to (i) execute the Definitive Agreements providing for the transaction as expeditiously as possible, but in any event before 5:00 p.m. EDT on January 15, 2023 (the "Signing Deadline") and (ii) close the transaction as soon as is reasonably practicable, but in no event after May 31, 2023 (the "Closing"). Time is of the essence. The Definitive Agreements shall provide in detail the terms and conditions of the transaction including such representations, warranties, non-compete/non-solicitation covenants, indemnities and other conditions as are customary in similar transactions and shall be reasonably satisfactory to each of the parties hereto.

**Public Announcements** The existence, terms and conditions of this Acquisition Term Sheet are confidential and any press release or other public announcement relating to the transaction shall not be issued by any party hereto without the prior written consent of the other.

**Governing Law:** Delaware

**Closing Conditions:** Closing the proposed transaction is subject to conditions precedent customary for transactions of this type, including:

1) completion of all business, legal and financial due diligence of GBIG Holdings, BLIC, CBL and SNIC;

2) completion of legal documentation for the transaction on mutually satisfactory terms;

3) receipt of all necessary governmental and third-party consents, authorizations, and approvals, including, without limitation, as required as a result of the Rehabilitation Proceeding;

6

## Exhibit A: Sources of Liquidity:

| | |
|---|---|
| HME/HPC / Fiasco Fine Wine Sale | $125.0m |
| Clanwilliam Sale | $145.5m |
| **Total** | **$265.5m** |

7

# Exhibit B: Pro Forma BLIC Balance Sheet

| ASSETS | 6/30/2022 | ARM Refi | Other Refinancings | Annuity Reinsurance | Recap | Pro Forma Closing Balance Sheet |
|---|---|---|---|---|---|---|
| Cash | 48,800,984 | 4,000,000 | 0 | -64,300,984 | 15,000,000 | 3,500,000 |
| Public Investment Grade Bonds | 190,933,496 | | | -161,028,128 | | 29,905,368 |
| Other | 1,378,369 | | | -1,378,369 | | 0 |
| Total Liquid Investments | 241,112,849 | 4,000,000 | 0 | -225,329,112 | 15,000,000 | 33,405,368 |
| **Total Global Related Exposure** | **55,881,815** | **-3,000,000** | **0** | **-52,881,815** | | **0** |
| Private Debt Portfolio | 17,671,790 | | | -17,671,790 | | 0 |
| Reinsurance Recievable | 2,330,627 | | | | | 2,330,627 |
| Recievable from Parent / Affiliate | 0 | | | | | 0 |
| DTA | 15,273,004 | | | -7,972,949 | | 7,300,055 |
| Other Assets | 1,307,119 | | | | | 1,307,119 |
| **TOTAL ASSETS** | **333,577,204** | **1,000,000** | **0** | **-303,855,666** | **15,000,000** | **44,343,169** |
| **LIABILITIES** | | | | | | |
| Policyholder Liabilites | 346,061,657 | | | -311,455,491 | | 34,606,166 |
| Other Liabilities | 2,164,090 | | | | | 2,164,090 |
| Asset Valuation Reserve | 5,836,995 | | | | | 5,836,995 |
| **TOTAL LIABILITIES** | **354,062,742** | **0** | **0** | **-311,455,491** | **0** | **42,607,251** |
| **CAPITAL & SURPLUS** | | | | | | |
| Pro Forma Surplus | -20,485,538 | 1,000,000 | 0 | 7,599,825 | 15,000,000 | 1,735,918 |
| Pro Forma Total Available Capital | -14,648,543 | 1,000,000 | 0 | 7,599,825 | 15,000,000 | 7,572,913 |

8

Confidential

## Exhibit C: Pro Forma CBL Balance Sheet

| ASSETS | 6/30/2022 | ARM Refi | Other Refinancings | Worksite Reinsurance | Annuity Reinsurance | Total |
|---|---|---|---|---|---|---|
| Cash | 162,423,000 | 86,000,000 | 198,482,986 | -200,000,000 | -221,905,986 | 25,000,000 |
| Public Investment Grade Bonds | 1,273,703,751 | | | | -1,210,752,858 | 62,950,893 |
| Other | 22,218,868 | | | | -22,218,868 | 0 |
| **Total Liquid Investments Available** | **1,458,345,619** | 86,000,000 | 198,482,986 | -200,000,000 | -1,432,658,844 | **87,950,893** |
| **Total Global Related Exposure** | 1,029,060,947 | -74,000,000 | -198,482,986 | | -347,118,185 | 409,459,776 |
| Private Debt Portfolio | 18,548,829 | | | | -18,548,829 | 0 |
| Uncollected & Deferred Premium | 13,304,059 | | | | | 13,304,059 |
| DTA | 57,286,821 | | | -14,274,750 | -48,458,256 | -5,446,185 |
| Other Assets | 12,631,023 | | | | | 12,631,023 |
| **TOTAL ASSETS** | **2,589,177,298** | 12,000,000 | 0 | -214,274,750 | -1,846,784,114 | **517,899,565** |
| **LIABILITIES** | | | | | | |
| Policyholder Liability | 2,312,193,986 | | | -250,000,000 | -1,892,974,587 | 169,219,399 |
| Other Liabilities | 55,622,448 | | | | | 55,622,448 |
| Asset Valuation Reserve | 141,137,086 | | | | | 141,137,086 |
| **TOTAL LIABILITIES** | **2,508,953,520** | 0 | 0 | -250,000,000 | -1,892,974,587 | 365,978,933 |
| **CAPITAL & SURPLUS** | | | | | | |
| Pro Forma Surplus | 80,223,778 | 12,000,000 | 0 | 35,725,250 | 46,190,473 | 151,920,633 |
| Pro Forma Total Available Capital | 221,360,864 | 12,000,000 | 0 | 35,725,250 | 46,190,473 | 293,057,719 |

Case 3:23-cr-00048-MOC-DCK    Document 234-48    Filed 07/14/26    Page 10 of 11

## Exhibit D: Pro Forma SNIC Balance Sheet

| | 6/30/2022 | ARM Transaction | Other Refinancings | HME, HPC, and FFW Purchase | Pro Forma Closing Balance Sheet |
|---|---|---|---|---|---|
| **ASSETS** | | | | | |
| Cash | 26,563,815 | 13,000,000 | 67,000,000 | -75,000,000 | 31,563,815 |
| Public Investment Grade Bonds | 13,160,548 | | | | 13,160,548 |
| Other | 5,073,650 | | | 75,000,000 | 80,073,650 |
| **Total Liquid Investments Available** | **44,798,013** | **13,000,000** | **67,000,000** | **0** | **124,798,013** |
| **Total Global Related Exposure** | **144,153,123** | **-11,000,000** | **-67,000,000** | **0** | **66,153,123** |
| **Total Insurance Company Investments** | **41,310,000** | | | | 41,310,000 |
| Uncollected & Deferred Premium | 1,544,968 | | | | 1,544,968 |
| Recievable from Parent | 0 | | | | 0 |
| Other Recievables | 543,097 | | | | 543,097 |
| Funds Held with Reinsured Companies | 59,930,904 | | | | 59,930,904 |
| Federal Tax Due & Accrued | 1,484,925 | | | | 1,484,925 |
| DTA | 13,438,067 | | | | 13,438,067 |
| **TOTAL ASSETS** | **307,203,097** | **2,000,000** | **0** | **0** | **309,203,097** |
| **LIABILITIES** | | | | | |
| Policyholder Liabilites | 251,431,654 | | | | 251,431,654 |
| Other Liabilities | 13,320,287 | | | | 13,320,287 |
| Interest Maintenance Reserve | 6,834,850 | | | | 6,834,850 |
| Asset Valuation Reserve | 23,233,428 | | | | 23,233,428 |
| **TOTAL LIABILITIES** | **294,820,219** | **0** | **0** | **0** | **294,820,219** |
| **CAPITAL & SURPLUS** | | | | | |
| Pro Forma Surplus | 12,382,878 | 2,000,000 | 0 | 0 | 14,382,878 |
| Pro Forma Total Available Capital | 35,616,306 | 2,000,000 | 0 | 0 | 37,616,306 |