# TRUST AGREEMENT

-by and among-

THE BRYN MAWR TRUST COMPANY OF DELAWARE,
the Delaware Trustee

HUGH STEVEN WILSON,
the Independent Trustee

and

ENTRUST GLOBAL GROUP, LLC,
a North Carolina limited liability company
Grantor and Sole Beneficiary

Dated as of June __, 2021

---

THE BECKETT COLLECTIBLES TRUST

---

# TABLE OF CONTENTS

ARTICLE I DEFINITIONS ........ 1
ARTICLE II FORMATION OF TRUST ........ 5
2.1. Creation ........ 5
2.2. Office ........ 5
2.3. Purposes ........ 5
2.4. Initial Contribution of Trust Property ........ 5
2.5. Declaration of Trust by Trustees ........ 5
2.6. Tax Matters ........ 6
2.7. Situs of Trust ........ 6
2.8. Limitation on Certain Activities ........ 6
ARTICLE III TRANSFER OF INTERESTS ........ 8
3.1. Restrictions on Transfer ........ 8
3.2. Issuance of Interests ........ 8
3.3. Conditions to Admission of New Beneficial Owners ........ 9
ARTICLE IV DISTRIBUTIONS ........ 9
4.1. Payments From Trust Property Only ........ 9
4.2. Distributions from the Trust ........ 9
4.3. Duties Relating to BKX Distributions ........ 9
ARTICLE V RIGHTS AND OBLIGATIONS OF OWNERS ........ 11
5.1. Limitation of Liability ........ 11
5.2. No Legal Title to Trust Property in the Grantor, etc ........ 11
5.3. Transfer of Trust Property by Trustees is Binding ........ 11
ARTICLE VI TRUSTEES IN GENERAL ........ 11
6.1. Acceptance of Trust and Duties ........ 11
6.2. Limitation on Fiduciary Duties of Trustees ........ 11
6.3. Not Acting in Individual Capacity ........ 12
6.4. Authority of Trustees ........ 12
6.5. Authorization ........ 12
6.6. Reliance ........ 12
6.7. Advice of Counsel ........ 12
6.8. Compensation and Expenses ........ 12
ARTICLE VII DUTIES OF TRUSTEES ........ 13
7.1. Duties of the Trustees in General ........ 13
7.2. Actions of Independent Trustee ........ 14
7.3. Books and Records ........ **Error! Bookmark not defined.**

7.4. Furnishing of Documents ..... 14
7.5. Duty to Act ..... 15
ARTICLE VIII INDEMNIFICATION AND PAYMENT OF THE TRUSTEES ..... 15
ARTICLE IX TERMINATION OF TRUST ..... 16
9.1. Termination in General ..... 16
9.2. Distribution of Trust Property to Grantor ..... 16
9.3. Certificate of Cancellation ..... 16
ARTICLE X SUCCESSOR TRUSTEES ..... 16
10.1. Resignation or Removal of a Trustee ..... 16
10.2. Appointment of Successor Trustees ..... 17
ARTICLE XI MISCELLANEOUS ..... 18
11.1. Limitations on Rights of Others ..... 18
11.2. Notices ..... 18
11.3. Severability ..... 19
11.4. Counterparts; Electronic Transmission ..... 19
11.5. Successors and Assigns ..... 19
11.6. Usage of Terms ..... 19
11.7. Headings ..... 19
11.8. Governing Law ..... 19
11.9. Amendments ..... 20

**TRUST AGREEMENT OF**
**BECKETT COLLECTIBLES TRUST**
**A DELAWARE STATUTORY TRUST**

This Agreement of Trust dated as of June ___, 2021 (this "**Trust Agreement**") of the BECKETT COLLECTIBLES TRUST, a Delaware statutory trust (the "**Trust**"), is hereby made by and among THE BRYN MAWR TRUST COMPANY OF DELAWARE, as co-trustee (the "**Delaware Trustee**"), HUGH STEVEN WILSON as co-trustee (the "**Independent Trustee**" and together with the Delaware Trustee, the "**Trustees**" and each a "**Trustee**") and ENTRUST GLOBAL GROUP, LLC, a North Carolina limited liability company as the grantor and sole beneficiary of the Trust (the "**Grantor**").

WHEREAS, the Grantor and the Trustees have agreed to create this Trust as a "statutory trust" in accordance with Chapter 38 of Title 12 of the Delaware Code, 12 Del. C. § 3801 et seq. (the "**Delaware Statutory Trust Act**") and intend that this Trust Agreement constitute the "governing instrument" of the Trust (as such term is defined in Section 3801(f) of the Delaware Statutory Trust Act);

WHEREAS, the Grantor will acquire its Interest in the Trust in exchange for its contribution to the Trust of its entire membership interest in BKX Holdings, LLC, a North Carolina limited liability company (the "**Contribution**").

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

## ARTICLE I
## DEFINITIONS

For all purposes of this Trust Agreement, the capitalized terms set forth below shall have the following meanings:

"**Adverse Proceeding**" means *Case No. 5:19-cr-22-MOC-DSC, United States of America v. Greg E. Lindberg, et. al*.

"**Affiliate**" means, with respect to any specified Person, any other Person owning beneficially, directly or indirectly, any ownership interest in such specified Person or directly or indirectly controlling or controlled by or under direct or indirect common control with such specified Person.

"**Assignment Agreement**" means that certain membership interest assignment agreement to be entered into by and between the Grantor, and the Trust, pursuant to which the Grantor shall make its Contribution to the Trust.

**"BKX**" means BKX Holdings, LLC, a North Carolina limited liability company.

"**BKX Distribution**" means a Transfer of Property made by BKX to the Trust.

"**Code**" means the Internal Revenue Code of 1986, as amended from time to time.

"**Control**" means (whether capitalized or not), with respect to any specified Person, the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" shall have meanings correlative to the foregoing. Without limiting the generality of the foregoing, a Person shall be deemed to Control any other Person in which it owns, directly or indirectly, more than 50% of the ownership interests.

"**Delaware Statutory Trust Act**" shall have the meaning given in the recitals hereto.

"**Fundamental BKX Matters"** means and includes any of the following actions with respect to BKX and/or any of its subsidiaries:

(a) Amending the organizational documents (including operating agreements);

(b) Removing or appointing any directors or officers;

(c) Changing the compensation of directors or officers;

(d) Choosing an accounting firm for purposes of determining distributable EBITDA or distributable cash, as applicable;

(e) Permitting deviations from the definition of distributable EBITDA or distributable cash, as applicable, in the organizational documents (for instance, to the extent the board wants to retain additional cash for operation);

(f) Requiring additional capital contributions;

(g) Issuing, creating, redeeming or organizing equity;

(h) Approving transfers of equity;

(i) Dissolving, approving the wind-up of, appointing a receiver for, liquidating, or initiating a bankruptcy proceeding;

(j) Appointing or changing auditors;

(k) Altering accounting reference date/financial year end;

(l) Any refinancing of the entity's existing indebtedness or any other incurring or guaranteeing additional indebtedness in excess of $5,000,000;

(m) Changing the tax status of the entity;

(n) Approving the sale or other disposition of all or substantially all of the assets;

(o) Declaring or paying any dividend or the making of any other distribution;

(p) Establishing subsidiaries, acquiring or disposing of shares in any company or participating in, or terminating any participation in, any partnership or joint venture or acquiring or disposing of any other investment;

(q) Granting any lease or third party rights in respect of the entity's property;

(r) Making any claim, disclaimer, surrender, election or consent of a material nature for tax purposes;

(s) Listing any share capital or other securities on any exchange.

(t) Beginning or settling any legal or arbitration proceedings (other than routine debt collection);

(u) Entering into any abnormal or unusual contract or commitment, including any which:

(i) is outside the ordinary course of business;

(ii) is unlikely to be profitable;

(iii) would have extended payment terms;

(iv) would involve a total outlay over the term of the contract in excess of a fixed amount; or

(v) is of a long-term nature;

(v) Incurring expenditures in excess of $1,000,000;

(w) Granting any power of attorney to conclude a transaction in excess of $5,000,000;

(x) Applying for the registration of intellectual property or allowing any such registration to lapse or be cancelled;

(y) Assigning, licensing, transferring, disposing of or otherwise dealing with any intellectual property (except in the ordinary course of business) or accepting any restrictions on the use of its intellectual property;

(z) Reorganizing or changing the nature or scope of the entity's business;

(aa) Creating or redeeming any mortgage, charge, debenture or other security over the entity's property;

(bb) Approving or amending any business plan, development plan or budget (or any similar documents);

(cc) Making a loan or granting any credit (other than in the normal course of business) or giving any guarantee or indemnity;

(dd) Amending the entity's name;

(ee) Approving a merger or conversion of the entity.

"**Independent Trustee**" means Hugh Steven Wilson, and any Person who is appointed in accordance with ARTICLE X to serve as the successor to Hugh Steven Wilson. A Person may only serve as the "Independent Trustee" if such Person (i) has been designated by the Grantor to serve as Independent Trustee; (ii) is not at the time of appointment as an independent trustee or at any time while serving as a trustee of the Trust, and has not been at any time during the two (2) years preceding such appointment, Controlled by, under the Control of, or related by blood or marriage to the Grantor or Greg Lindberg; (iii) is not a current or future plaintiff in the Litigation and (iv) is not at the time of appointment as an independent trustee or at any time while serving as a trustee of the Trust, and has not been at any time prior to such appointment, Controlled by, under the Control of, related to, employed by, engaged as an officer, director, or consultant of, or otherwise affiliated with, Noble Consulting Services, Inc., the North Carolina Department of Insurance, or any plaintiffs in the Litigation.

"**Interest**" means the Grantor's undivided beneficial interest in the Trust.

"**Litigation**" means case No. 19 cv 013093, filed on October 1, 2019 in Wake County, North Carolina, titled Southland National Insurance Corporation, et al. v. Greg Lindberg et al.

"**LLC Agreement**" means the Amended and Restated Limited Liability Company Agreement of BKX, as the same may be amended, restated, modified, or supplemented from time to time.

"**Membership Interest**" means the Grantor's membership interest in BKX, which will be assigned and contributed to the Trust by the Grantor pursuant to the Assignment Agreement.

"**Person**" means a natural person, corporation, limited partnership, general partnership, limited liability company, joint stock company, joint venture, association, company, trust, bank, trust company, land trust, business trust, statutory trust, or other organization, whether or not a legal entity, and a government or agency or political subdivision thereof.

"**Property**" means any property, real, personal, or mixed, tangible or intangible, including money.

"**Regulations**" means U.S. Treasury Regulations promulgated under the Code.

"**Refinancing**" means refinancing of senior debt owed by BKX and/or its subsidiaries.

"**Section**" means a section in this Trust Agreement, unless otherwise specified.

"**Transaction Documents**" means the Trust Agreement, the LLC Agreement, the Assignment Agreement, and other documents delivered in connection herewith and therewith, as

the same may be amended, restated, supplemented, or otherwise modified from time to time.

"**Transfer**" means any assignment, sale, exchange, issue, conveyance, deed, bill of sale, lease, mortgage, pledge, grant, hypothecation, security interest, encumbrance, gift, license, lease, or disposition, whether by operation of law or otherwise.

"**Trust Property**" shall mean all right, title and interest of the Trust in and to any property contributed to the Trust by the Grantor or otherwise owned by the Trust, including without limitation the Membership Interest.

## ARTICLE II
## FORMATION OF TRUST

2.1. Creation. The Grantor and the Trustees hereby create the Trust on the terms and conditions set forth herein for the benefit of the Grantor. The Trust shall be known as the "Beckett Collectibles Trust," in which name the Independent Trustee may conduct the business of the Trust, make and execute contracts, and sue and be sued. It is the intention of the parties hereto that the Trust created hereby constitute a statutory trust under the Delaware Statutory Trust Act and that this Trust Agreement constitute the governing instrument of the Trust. The Delaware Trustee is hereby authorized and directed to execute and file a certificate of trust with the Secretary of State of the State of Delaware in the form attached hereto as Exhibit A.

2.2. Office. The office of the Trust will be the corporate trust office of the Delaware Trustee located at 20 Montchanin Road, Suite 100, Greenville, Delaware 19807, or such other address in the State of Delaware as the Delaware Trustee may designate by written notice to the Grantor and the Independent Trustee from time to time (the "**Corporate Trust Office**").

2.3. Purposes. The purposes of the Trust are to engage in the following activities: (i) to enter into or assume and comply with the terms of the Transaction Documents; (ii) to acquire and hold legal title to the Membership Interest and any other Trust Property; (iii) to serve as the member of BKX, subject to the terms of this Trust Agreement and the LLC Agreement; (iv) to receive BKX Distributions and to make distributions to the Grantor, to the extent permitted by law and any agreements of lenders to and creditors of the Trust, which govern the same; (v) to make distributions in the manner provided for in this Trust Agreement; and (vi) to take such other actions as the Trustees deem necessary or advisable to carry out the foregoing, subject to the terms of this Trust Agreement. The Trust shall conduct no business other than as specifically set forth in this Section 2.3.

2.4. Initial Contribution of Trust Property. Effective as of the date of this Trust Agreement, the Grantor has made its Contribution to the Trust in accordance with the Assignment Agreement. The Trustees hereby acknowledge receipt in trust from the Grantor, as of the date of this Trust Agreement, of the Contribution, which constitutes the initial Trust Property.

2.5. Declaration of Trust by Trustees. The Trustees hereby declare that they will hold the Trust Property upon the terms and conditions herein for the sole use and benefit of the Grantor. It is the intention of the parties hereto that the Trust constitute a "statutory trust" under the Delaware Statutory Trust Act and that this Trust Agreement constitute the governing

instrument of such statutory trust. The parties hereto agree that they shall take no action contrary to the foregoing intention. Effective as of the date hereof, the Trustees will have all rights, powers, and duties set forth herein and, to the extent not inconsistent herewith, in the Delaware Statutory Trust Act with respect to accomplishing the purposes of the Trust. Except to the extent expressly provided herein, this Trust shall be irrevocable with respect to the Grantor.

2.6. Tax Matters. The Trust shall not constitute a "business trust" within the meaning of Regulations Section 301.7701-4(b) or any other business entity for federal income tax purposes, but shall instead constitute a trust within the meaning of Regulations Section 301.7701-4(c) and a "grantor trust" under Subpart E of Part 1, Subchapter J of the Code (Code Sections 671 and following). As such, all income and deductions of the Trust shall be treated for income tax purposes as income and deductions of the Grantor. The parties hereto agree that they will file all their tax returns in a manner consistent with that intent unless otherwise required by a taxing authority. Except as otherwise expressly provided herein, any tax elections required or permitted to be made by the Trust under the Code or otherwise will be made by the Grantor. The Trust will not elect to be treated as a corporation for any tax purpose.

2.7. Situs of Trust. The Trust will be located and administered in the State of Delaware. Payments will be received by the Trust only in the State of Delaware, and payments will be made by the Trust only in the State of Delaware. The only office of the Trust will be at the Corporate Trust Office.

2.8. Limitation on Certain Activities.

(a) Notwithstanding any provisions of this Trust Agreement and any provision of applicable law that otherwise so empowers the Trustees, neither the Trust, nor the Trustees on behalf of or with respect to the Trust, nor any other Person on behalf of the Trust shall have any authority to do any of the following without the Grantor's prior written consent:

(i) perform any act in contravention of or constituting an event of default under the LLC Agreement;

(ii) authorize, consent to, or vote on the approval or disapproval of any Fundamental BKX Matters;

(iii) engage in any business or activity other than those set forth in Section 2.3;

(iv) to the fullest extent permitted by law, dissolve, wind-up or liquidate the Trust, except as provided in Sections 9.2 and 9.3 of this Trust Agreement;

(v) to the fullest extent permitted by law, take any action that might cause the Trust to become insolvent, or file a voluntary petition or otherwise initiate proceedings to be adjudicated bankrupt or insolvent, or consent to the institution of bankruptcy or insolvency proceedings against the Trust, or file a petition seeking or consenting to reorganization or relief of the Trust as debtor under any applicable federal or state law relating to bankruptcy, insolvency, or other relief for debtors with respect to the Trust; or seek or

consent to the appointment of any trustee, receiver, conservator, assignee, custodian, liquidator (or other similar official) of the Trust or of all or any substantial part of the properties and assets of the Trust, or make any general assignment for the benefit of creditors of the Trust, or admit in writing the inability of the Trust to pay its debts generally as they become due or declare or effect a moratorium on the Trust debt or take any action in furtherance of any such action;

(vi) Transfer the Membership Interest or any of the Trust Property, other than making payments to cover the reasonable expenses of the Trust and making distributions to the Grantor, in each case, as described herein;

(vii) require the Grantor to make any additional contributions of Trust Property;

(viii) enter into any transaction with an Affiliate unless such transaction is concluded on commercially reasonable terms comparable to those at an arm's length transaction;

(ix) merge, convert, combine, or consolidate the Trust with any other entity;

(x) grant a power of attorney, appoint any agents or officers, or otherwise delegate any authority to any other Person to act on behalf of the Trust;

(xi) amend the Trust Agreement, the Certificate of Trust, or the LLC Agreement;

(xii) lend money, borrow money from, act as a surety, guarantor, or endorser for, guarantee or assume any obligations of, provide collateral for, or incur any indebtedness on behalf of the Trust;

(xiii) issue any additional beneficial interests or other interests in the Trust or in any of the Trust Property;

(xiv) redeem all or any portion of the Interest;

(xv) to the fullest extent permitted by law, file, commence, seek, or prosecute an action for partition or forced sale of all or any portion of the Trust Property; or

(xvi) take any other action not expressly authorized by this Trust Agreement or the Grantor or required by applicable law.

(b) Notwithstanding any other provision of this Trust Agreement, the Trustees shall and shall cause the Trust at all times to:

(i) observe statutory formalities with respect to the administration of the Trust and in the conduct of the Trust's activities;

(ii) maintain books and records and bank accounts separate from those of any other Person;

(iii) not commingle its assets with those of any other Person;

(iv) conduct business in its own name, hold itself out to creditors and the public as a legal entity separate and distinct from any other Person, and correct any known misunderstanding regarding its separate identity;

(v) allocate and charge fairly and reasonably any common expenses or overhead;

(vi) except for distributions permitted under the terms of this Trust Agreement, transact all business with Affiliates on arm's-length terms and pursuant to enforceable agreements which have been approved by the Grantor;

(vii) not assume, guarantee, pledge its assets to secure, or pay the debts or obligations of any other Person;

(viii) not make any loans or advances to any other Person;

(ix) pay its own liabilities and expenses out of its own funds;

(x) maintain adequate capital in light of its contemplated operations; and

(xi) maintain all required qualifications to do business in any state where such qualification is required.

## ARTICLE III
## TRANSFER OF INTERESTS

3.1. Restrictions on Transfer. Subject to compliance with applicable securities laws, any necessary regulatory approvals, any transfer restrictions set forth in the LLC Agreement, and this Trust Agreement, and provided that such Transfer does not result in the Trust having to register as an investment company or require the Trust or any Trustee to register as an investment advisor under the Investment Company Act of 1940, as amended, all or any portion of the Interest of the Grantor may be Transferred by the Grantor without the prior consent of any of the Trustees. All expenses of such Transfer shall be paid by the Grantor. Absent a specific provision to the contrary in the documentation of the Transfer, a Transfer of the Grantor's Interest in the Trust will constitute of Transfer of all of the Grantor's rights under this Trust Agreement, including, without limitation, the Grantor's consent rights with respect to Fundamental BKX Matters.

3.2. Issuance of Interests. The Grantor shall be the sole beneficial owner (within the meaning of the Delaware Statutory Trust Act) of one hundred percent (100%) of the beneficial interests in the trust. The beneficial interests in the Trust shall be uncertificated. The Trustees shall not issue any additional beneficial interests in the Trust or the Trust Property without the

prior written consent of the Grantor. Any purported issuances of additional beneficial interests which have not received the Grantor's prior written consent shall be null and void.

3.3. Conditions to Admission of New Beneficial Owners. If the Grantor Transfers all or part of its Interest to any other Person, this Trust Agreement shall be amended simultaneously with such Transfer and the recipient of such Transferred Interest must agree to be bound by the terms of this Trust Agreement, as amended or restated.

## ARTICLE IV
## DISTRIBUTIONS

4.1. Payments From Trust Property Only. All payments to be made by the Trustees under this Trust Agreement shall be from the Trust Property.

4.2. Distributions from the Trust. Promptly following receipt of a BKX Distribution, the Independent Trustee shall distribute to the Grantor the full amount of such BKX Distribution, reduced only by reasonable reserves for trust expenses. Notwithstanding the foregoing, the Independent Trustee may retain a portion of any BKX Distribution, other than a BKX Distribution made to the Trust to cover income tax liabilities resulting from the Trust's status as the member of BKX (a "**BKX Tax Distribution**"), to pay or reimburse the Trustees for any fees, expenses or indemnities due and owing to the Trustees on behalf of the Trust and retain such additional amounts as the Independent Trustee reasonably deems necessary to pay anticipated ordinary current and future Trust expenses ("**Reserves**"). For the avoidance of doubt, the Independent Trustee shall promptly distribute to the Grantor all income received by the Trust from a BKX Tax Distribution, without retaining any portion of such BKX Tax Distribution for reimbursements or Reserves. All amounts distributable to the Grantor pursuant to this Trust Agreement shall be paid by check or in immediately available funds by transfer to a banking institution with bank wire transfer facilities for the account of the Grantor, as instructed from time to time by the Grantor.

4.3. Duties Relating to BKX Distributions. With respect to BKX Distributions, the Independent Trustee shall have the duties set forth in Sections 4.3(a), (b) and (c) below.

(a) Tax Distributions.

(i) Because the Trust is a grantor trust for income tax purposes, the Grantor will be legally responsible for any income tax liability of the Trust that is generated by the assets transferred to the Trust by the Grantor. For purposes of determining tax liability only, the "**Grantor**" shall include, as applicable, the Grantor and the Person ultimately liable for payment of federal and state income tax on the income of the Trust that flows through the Grantor, and such person is referred to in this Section as the "**Taxpayer**".

(ii) On at least a quarterly basis, the Independent Trustee shall use commercially reasonable efforts to cause the Trust to pay to the Taxpayer the amount of tax that would be due based on the highest applicable (federal and state) tax rates applied to the amount of taxable income

deemed to pass through to the Grantor from the Trust (in all cases to include interest, penalties, and additions to tax), at least ten (10) days prior to the relevant statutory deadline for payment of the applicable tax. The Trustee shall take the actions reasonably and in good faith necessary to obtain cash from which to fund the BKX Tax Distributions, pursuant to this Section 4.3(a), from any asset or legal entity held by the Trust, without regard to the source of the taxable income triggering the need for the BKX Tax Distributions.

(iii) In determining the source of funding for any distributions required under this Section 4.3, the Independent Trustee shall take into consideration all relevant aspects including, but not limited to, (A) the cash position of the Trust assets taken as a whole, (B) the cash positions of each legal entity within the Trust, (C) the cost efficiencies, from a tax perspective and otherwise, associated with the distribution of cash from any specific Trust asset or legal entity making a distribution, (D) the legal and contractual restrictions and limitations the Trust assets and legal entities are under, and (E) the restrictions imposed by this Trust Agreement

(iv) If the Taxpayer's net tax liability with respect to any taxing authority increases with the inclusion of the Trust's tax attributes on the Taxpayer's applicable tax return, then the Trust shall pay to the Taxpayer the amount of the net tax liability incurred from inclusion of the Trust's tax attributes at least ten (10) days prior to the relevant statutory deadline for payment of the applicable tax. At year end, if the BKX Tax Distributions distributed during the year were insufficient to cover the income tax liabilities (in all cases to include interest, penalties, and additions to tax) that flowed through to the Taxpayer on account of the assets held by the Trust, the Trust shall make additional BKX Tax Distributions that are sufficient to cover such income tax liabilities.

(b) Distributions for Creditor Liabilities. If the Independent Trustee becomes aware of a creditor liability of the Grantor, the Independent Trustee shall request that BKX make a BKX Distribution to the Trust so that such funds can be distributed by the Trust and used to satisfy and discharge the creditor liability when it becomes due and payable.

(c) Other Distributions. On at least a quarterly basis, the Independent Trustee will review all BKX Distributions to the trust including those described in Section 4.3(a)(i) and (ii) above. If the Independent Trustee determines that the total amount of the other BKX Distributions taken together with the distributions described in Section 4.3(a)(i) and (ii) above is less than seventy-five percent (75%) of BKX's EBITDA, then the Independent Trustee shall request that BKX increase the amount of its distributions so that at least seventy-five percent (75%) of the BKX's EBITDA is distributed to the Trust, in each case to the extent permitted by applicable laws, rules and regulations binding upon BKX and taking into account any applicable limitations and/or restrictive covenants under any credit agreement or other material agreement binding upon BKX, including without limitation, the definitive documents related to the Refinancing.

## ARTICLE V
## RIGHTS AND OBLIGATIONS OF OWNERS

5.1. Limitation of Liability. The Grantor shall be entitled to the same limitation of personal liability extended to stockholders of private corporations for profit organized under the Delaware General Corporation Law.

5.2. No Legal Title to Trust Property in the Grantor, etc. Legal title to the Trust Property, including the Membership Interest, shall be held by the Trust, and the Grantor shall not have legal title to the Trust Property. Neither the bankruptcy, dissolution, death, or other incapacity of the Beneficiary, nor the transfer, by operation of law or otherwise, of any right, title, or interest of the Grantor in and to the Trust Property or hereunder shall terminate this Trust Agreement. Except as expressly set forth herein, the Grantor shall not be liable for any liabilities or obligations of the Trust or the Trustees or for the performance of this Trust Agreement.

5.3. Transfer of Trust Property by Trustees is Binding. Any Transfer of the Trust Property or any part thereof by the Independent Trustee made pursuant to the terms of this Trust Agreement shall bind the Grantor and be effective to Transfer all rights, title, and interest of the Trustees and the Grantor in and to the Trust Property. Notwithstanding anything in this Trust Agreement to the contrary, any Transfer of Trust Property, other than a distribution to the Grantor or a payment to cover the reasonable expenses of the Trust, must be approved by the Grantor in writing prior to the occurrence of such Transfer. The Trustees agree that they shall not enter into a binding contract to Transfer, sell or otherwise dispose of (including via issuance of stock-based compensation) the Membership Interest or any other Trust Property without the prior written consent of the Grantor.

## ARTICLE VI
## TRUSTEES IN GENERAL

6.1. Acceptance of Trust and Duties. The Trustees accept the Trust hereby created and agree to perform their duties as so provided, including receiving and disbursing all money received by them constituting part of the Trust Property (after paying or reimbursing the Trustees for any fees or expenses paid by the Trustees on behalf of the Trust and retaining such additional amounts as the Independent Trustee reasonably deems necessary for Reserves). If requested by an applicable regulator, the Trustees agree to be fingerprinted and have a background check.

6.2. Limitation on Fiduciary Duties of Trustees. Consistent with Sections 3803(b) and 3806(c) of the Delaware Statutory Trust Act, the duties and liabilities of the Trustees to the Trust and the Grantor pursuant to this Trust Agreement are expressly limited as set forth in this Section 6.2. The Independent Trustee shall not be individually liable for its omissions or actions on behalf of the Trust, except for: (i) its own fraud, willful misconduct, bad faith, or negligence; (ii) the inaccuracy of its representations or warranties contained in Section 6.5; (iii) its own income taxes based on fees, commissions or compensation received as a trustee; or (iv) its failure to use ordinary care to disburse money received by them in accordance with the terms hereof. The Delaware Trustee shall not be individually liable for its omissions or actions on behalf of the Trust except for its own fraud willful misconduct, bad faith or gross negligence in performing its duties in Section 7.1(b) hereunder.

6.3. Not Acting in Individual Capacity. Except as otherwise provided in this ARTICLE VI, the Trustees act solely as trustees hereunder and not in their individual capacity, and all Persons other than the Grantor having any claim against the Trustees by reason of the transactions contemplated hereby shall look only to the Trust Property for payment or satisfaction thereof.

6.4. Authority of Trustees. The Trustees shall manage, control, dispose of or otherwise deal with the Trust Property consistent with their duties to conserve and protect the Trust Property, subject to any restrictions required by the LLC Agreement or otherwise provided in this Trust Agreement.

6.5. Authorization. Each Trustee hereby represents and warrants to the Grantor that this Trust Agreement has been duly authorized, executed and delivered by such Trustee.

6.6. Reliance. The Trustees shall not be liable to anyone for relying on any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper believed by them to be genuine and signed by the proper parties. The Trustees may accept a copy of a resolution of the board of directors or other governing body of any corporate party, certified by the secretary or a senior officer thereof, as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect. As to any fact or matter, the manner of ascertainment of which is not specifically prescribed herein, the Trustees may for all purposes hereof rely on an officer's certificate of the relevant Person (if not an individual) as to such fact or matter, and such certificate shall constitute full protection to the Trustees for any action taken, suffered, or omitted by it in good faith in reliance thereon.

6.7. Advice of Counsel. In the administration of the Trust and the interpretation of this Trust Agreement, the Trustees may perform any of their powers and duties directly or through agents or attorneys and may consult with counsel, accountants and other skilled Persons selected and employed by them. The Trustees shall not be liable for anything done or omitted in good faith in accordance with the advice or opinion within the scope of competence of any such counsel, accountant or other skilled Persons selected with due care.

6.8. Compensation and Expenses.

(a) For serving as Independent Trustee hereunder, Hugh Steven Wilson shall be entitled to such reasonable compensation, which may be in excess of the compensation otherwise allowed by Delaware statutory law, as set out in Schedule 1.

(b) Any other Trustee acting hereunder pursuant to an appointment authorized or directed to be made hereunder shall be entitled to such reasonable compensation, which may be in excess of the compensation otherwise allowed by Delaware statutory law, as may be agreed upon between appointor and appointee, or, in the absence of any such agreement, to such compensation as may be allowed by the laws of the State of Delaware in effect from time to time.

(c) The Trustees shall pay out of the income or principal or both, as they shall determine, the charges and expenses that each Trustee incurs in the administration of the trust.

(d) Each Trustee may from time to time prior to the settlement of its accounts, and without court approval, make such payments to itself, individually, on account of its compensation as it determines to be just and reasonable. It shall not be chargeable for interest by reason of any such payment and shall not be required to file a bond to secure repayment.

(e) A Trustee who ceases to act for any reason shall be entitled to any compensation already paid as well as to any compensation then earned but unpaid. Notwithstanding the foregoing, no Trustee serving hereunder shall be entitled to receive a termination fee in the event such Trustee is removed, resigns or otherwise ceases to serve prior to the termination of the trust.

## ARTICLE VII
## DUTIES OF TRUSTEES

7.1. Duties of the Trustees in General.

(a) The Trustees shall only have the duties and obligations expressly provided in this Trust Agreement. Except to the extent specifically provided in Section 7.1(b) or elsewhere in this Trust Agreement, all the duties and obligations of the Trustees or of any of them under this Trust Agreement shall be solely the duties and obligations of the Independent Trustee.

(b) The Delaware Trustee is appointed to serve as the trustee of the Trust in the State of Delaware for the purpose of satisfying the requirement of Section 3807(a) of the Delaware Statutory Trust Act that the Trust have at least one trustee with a principal place of business in Delaware. It is understood and agreed by the parties hereto that, except as specifically provided herein or required by applicable law, the Delaware Trustee shall have none of the duties or liabilities of the Independent Trustee and that all references herein to "Trustees" shall refer to the Independent Trustee unless and only to the extent this Trust Agreement expressly provides otherwise. The duties of the Delaware Trustee shall be limited to (i) obtaining an Employer Identification Number (EIN) for the Trust, (ii) accepting legal process served on the Trust in the State of Delaware, (iii) receiving correspondence mailed to the Trust at the Corporate Trust Office and forwarding such correspondence to the Independent Trustee and the Grantor, (iv) the execution of any certificates required to be filed with the Delaware Secretary of State which the Delaware Trustee is required to execute under Section 3811 of the Delaware Statutory Trust Act, and (v) any other duties specifically allocated to the Delaware Trustee in this Trust Agreement. To the extent that at law or in equity the Delaware Trustee has duties (including fiduciary duties) and liabilities relating thereto to the Trust or the Grantor, it is hereby understood and agreed by the other parties hereto that such duties and liabilities are replaced by the duties and liabilities of the Delaware Trustee expressly set forth in this Trust Agreement.

(c) Except as provided in Section 7.1(b), the Independent Trustee is hereby authorized and directed to enter into any agreement permitted or directed by this Trust Agreement without the consent or signature of the Delaware Trustee including, without limitation, the Transaction Documents. Except for the filing of a certificate amendment as provided by and for the purpose stated in Section 10.1, the Delaware Trustee is authorized and

directed to enter into such other documents and take such other actions as the Independent Trustee shall specifically direct in written instructions delivered to the Delaware Trustee; *provided*, *however*, that (i) the Delaware Trustee will take such action merely in a ministerial nondiscretionary capacity, as directed by the Independent Trustee, and (ii) the Delaware Trustee shall not be required to take any action if the Delaware Trustee shall determine, or shall be advised by counsel, that such action is likely to result in personal liability or is contrary to applicable law or any agreement to which the Delaware Trustee is a party. For the avoidance of doubt, this Section 7.1(c) does not limit or condition the separate duties of the Delaware Trustee set forth in Section 7.1(b).

7.2. Actions of Independent Trustee.

(a) Generally. The Independent Trustee is hereby authorized and directed to take any and all necessary actions to conserve and protect the Trust Property consistent with the terms of this Trust Agreement, including, but not limited to:

(i) receiving the Contribution from the Grantor;

(ii) entering into or assuming and complying with the terms of the Transaction Documents;

(iii) receiving BKX Distributions as a result of the Trust's ownership of the Membership Interest;

(iv) making distributions to the Grantor in accordance with ARTICLE IV;

(v) receiving Notices to the Trust from BKX (or its members or managers) or other Persons and delivering such Notices to the Grantor;

(vi) voting on the approval or disapproval of actions submitted by BKX to the Trust, in its capacity as the member of BKX, for approval, except for Fundamental BKX Matters, which may only be voted upon in accordance with the Grantor's instructions;

(vii) taking such other actions and executing such other documents as may be specifically authorized in writing by the Grantor from time to time.

(b) BKX Matters other than Fundamental BKX Matters. With respect to matters that are not Fundamental BKX Matters and are submitted by BKX to the Trust, in the Trust's capacity as the member of BKX, for approval or disapproval, the Independent Trustee shall cause the Trust to vote on such matters in accordance with the recommendation of the Board of Managers of BKX.

7.3. Furnishing of Documents. The Independent Trustee will promptly furnish to the Grantor, copies of all reports, Notices, material requests, demands, certificates, financial statements, and any other material writings ("**Reports**") received by the Independent Trustee. The Independent Trustee shall request that BKX shall provide all Reports received from its

subsidiaries (the "**Operating Subsidiaries**") to the Trust and shall request that the Grantor shall have access to the management and the physical premises of the Operating Subsidiaries.

7.4. Duty to Act.

(a) The Trustees shall not be required to act or refrain from acting under this Trust Agreement or the LLC Agreement (other than the actions expressly prohibited by this Trust Agreement) if the Trustees reasonably determine, or have been advised by legal counsel, that such actions or inactions may result in personal liability, unless the Trustees are indemnified by the Grantor against any liability and costs (including reasonable legal fees and expenses) which may result in a manner and form reasonably satisfactory to the Trustees. However, the Grantor shall not be required to indemnify the Trustees with respect to any of the matters described in Section 6.2(i) through 6.2(v).

(b) Neither the Delaware Trustee nor the Independent Trustee shall have any duty (i) except as provided in Section 7.1(b) with respect to the Delaware Trustee, to file, record or deposit any document or to maintain any such filing, recording or deposit or to refile, rerecord or redeposit any such document, (ii) to pay or discharge any tax levied against any part of the Trust Property, (iii) to confirm, verify, investigate or inquire into the failure to receive any reports or financial statements from any party obligated under the Transaction Documents to provide such reports or financial statements, or (iv) to inspect, ascertain, or inquire as to the performance or observance of any of the covenants of any other Person under the Transaction Documents.

## ARTICLE VIII
## INDEMNIFICATION AND PAYMENT OF THE TRUSTEES

8.1. Each Trustee shall be entitled to be indemnified, defended, and held harmless by the Trust from the Trust Property (and thereafter, if the Trust Property cannot adequately indemnify the Trustees, will be indemnified by the Grantor) against any loss, liability, or expense (including, without limitation, reasonable costs and expenses of litigation, and of investigation, damages, judgments, and amounts paid in settlement, and including reasonable out of pocket legal fees and expenses in connection with enforcement of its rights hereunder) arising out of, or incurred in connection with, the exercise and performance of any of the powers and duties of such Trustee; provided that the Trustees shall not be entitled to indemnification pursuant to this ARTICLE VIII for any loss, liability, or expense incurred by reason of willful misconduct, negligence, or breach of fiduciary duty in the performance of the Trustee's obligations and duties hereunder (the "**Indemnified Acts**"). The provisions of this ARTICLE VIII shall survive any resignation or removal of the Trustee and appointment of a successor trustee. The Trustees shall be advanced any amounts incurred in defending an action brought or threatened in respect of Indemnified Acts shall be paid out of the Trust Property (or by the Grantor if the Trust Assets cannot adequately cover such amounts) in advance of final disposition upon delivery to the Grantor of a legal opinion of trust counsel that indemnification is likely to be warranted and the Trustee's written agreement to refund such amounts if it is ultimately determined that indemnification is not warranted.

## ARTICLE IX
## TERMINATION OF TRUST

9.1. Termination in General. The Trust shall dissolve and wind up in accordance with Section 3808 of the Delaware Statutory Trust Act and the Trust Property shall, subject to ARTICLE IV hereof, be distributed to the Grantor, upon the first to occur of any of the following, in each case subject to the conditions described below, unless the Trust terminates by virtue of Section 9.1(f), in which case the Trust assets will be distributed to such other trust:

(a) the reversal of any potential conviction in the Adverse Proceeding via reversal, acquittal, dismissal, decision of the government to not re-try the case following any mistrial or remand for new trial, pardon, or other exoneration;

(b) at such time as BKX or all or substantially all of its and its subsidiaries' assets have been sold in an arms' length transaction;

(c) upon repayment in full of all obligations issued by BKX and/or any of its subsidiaries under the contemplated Refinancing;

(d) at such time as the Independent Trustee determines there is no material impact on the Grantor or the Beneficiary as a result of the Adverse Proceeding;

(e) at such time as the Grantor provides written approval of the termination of the Trust and the holders of the obligations issued by BKX and/or any of its subsidiaries in the contemplated Refinancing have consented to such termination; and

(f) at such time as the Trustees are satisfied (having consulted with the board of BKX) that the Trust is no longer required by reason of another trust being interposed in the ownership structure such that neither Greg Lindberg nor any Person Controlled by, under the Control of, or related by blood or marriage to the Grantor or Greg Lindberg will remain the ultimate beneficial owner of the Group following termination of the Trust.

9.2. Distribution of Trust Property to Grantor. Upon termination of the Trust as provided in Section 9.1, the Independent Trustee shall dissolve and wind up the Trust in accordance with Section 3808 of the Delaware Statutory Trust Act and distribute all of the then Trust Property to the Grantor, subject to ARTICLE IV.

9.3. Certificate of Cancellation. Upon the completion of winding up of the Trust, the Trustees shall cause a Certificate of Cancellation to be filed with the Delaware Secretary of State and thereupon the Trust and this Trust Agreement shall terminate.

## ARTICLE X
## SUCCESSOR TRUSTEES

10.1. Resignation or Removal of a Trustee. A Trustee or any successor may resign at any time by giving at least thirty (30) days' prior written notice to the Grantor; provided that such Trustee has been paid all compensation it is entitled to hereunder. If a Trustee or successor has not been paid all compensation it is entitled to hereunder, it may resign at any time by giving

at least ten (10) days' prior written notice. The Grantor may remove any Trustee at any time, with or without cause, by providing written notice to such Trustee. Additionally, if the Delaware Trustee has not been paid its annual compensation as provided in Section 6.8 as of the anniversary of the signing of this Trust Agreement and such nonpayment is not cured within ten (10) business days following the date on which the Delaware Trustee provides written notice of such nonpayment, then the Delaware Trustee may resign effective immediately and, pursuant thereto, may file a certificate of amendment with the Delaware Secretary of State indicating its resignation as trustee and registered agent. Notwithstanding anything herein to the contrary, no resignation or removal of a Trustee shall be effective until a successor trustee has been appointed and such successor trustee has accepted its responsibilities, all as hereinafter provided.

10.2. Appointment of Successor Trustees.

(a) The Trust shall not be terminated solely due to the resignation, death, liquidation, or removal of any Trustee. In the event of the resignation, death, liquidation, or removal of the Independent Trustee, the Grantor shall appoint by written instrument a successor Independent Trustee to fill the vacancy. In the event of the resignation, death, liquidation, or removal of the Delaware Trustee, the Independent Trustee shall appoint by written instrument a successor Delaware Trustee. The appointment of a successor trustee shall be effective upon the successor trustee's agreeing to such appointment and agreeing to be bound by the terms of this Trust Agreement.

(b) If a successor trustee shall not have been appointed within sixty (60) days after the resignation, death, liquidation, or removal of a Trustee, the Grantor or a Trustee may apply to any court of competent jurisdiction in the United States to appoint a successor trustee to act until such time, if any, as a successor shall have been appointed as provided above. Any successor so appointed by such court shall immediately and without further act be superseded by any successor appointed as provided above within one (1) year from the date of the appointment by such court. Any successor, however appointed, shall execute and deliver to its predecessor trustee (the Delaware Trustee, Independent Trustee, or a successor trustee, as the case may be) an instrument accepting such appointment, and thereupon such successor, without further act, shall become vested with all the estates, properties, rights, powers, duties and trusts of the predecessor trustee in the trusts hereunder with like effect as if originally named a Delaware Trustee or Independent Trustee; but, upon the written request of such successor, such predecessor shall execute and deliver an instrument transferring to such successor, upon the trusts herein expressed, all the estates, properties, rights, powers, duties and trusts of such predecessor, and such predecessor shall duly assign, transfer, deliver and pay over to such successor all monies or other property then held by such predecessor upon the trusts herein expressed. Any right of the Grantor against the predecessor trustee, in its, his or her individual capacity, shall not be prejudiced by the appointment of any successor trustee and shall survive the termination of the trusts created hereby.

(c) Any successor Independent Trustee, however appointed, shall be a Person who meets the definition of the Independent Trustee contained herein.

(d) Any successor Delaware Trustee, however appointed, shall be a bank or trust company with its principal place of business in the State of Delaware. Any corporation or

other entity into which the Delaware Trustee may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which such Delaware Trustee shall be a party, or any corporation to which substantially all the corporate trust business of the Delaware Trustee may be transferred, shall, subject to the preceding sentence, be the Delaware Trustee under this Trust Agreement without further act. Any successor Delaware Trustee, however appointed, shall be competent and qualified to (i) serve as a trustee of a statutory trust formed pursuant to the Delaware Statutory Trust Act, and (ii) take all actions required by the Delaware Trustee pursuant to the Trust and the Transaction Documents in the State of Delaware.

## ARTICLE XI
## MISCELLANEOUS

11.1. Limitations on Rights of Others. Nothing in this Trust Agreement, whether express or implied, shall give to any Person other than the Trustees and the Grantor any legal or equitable right, remedy or claim hereunder. Consistent with section 3806(c) of the Delaware Statutory Trust Act, the Beneficiary and Grantor shall have no fiduciary duties to any of the Trustees, the Trust or any other Person to the fullest extent permitted by law. Further pursuant to Section 3806(a), neither the Grantor nor the Beneficiary shall have the power to give direction to any of the Trustees, the Trust or any other Person, except as expressly set forth in this Trust Agreement.

11.2. Notices. All notices, requests, demands, consents and other communications ("**Notices**") required or contemplated by the provisions hereof shall refer on their face to this Trust Agreement (although failure to do so shall not make such Notice ineffective), shall, unless otherwise stated herein, be in writing and shall be (i) personally delivered, (ii) sent by reputable overnight courier service, (iii) sent by certified or registered mail, postage prepaid and return receipt requested, or (iv) transmitted by facsimile or electronic mail with electronic confirmation of receipt, in each case, as follows:

| | |
|---|---|
| if to the Delaware Trustee: | The Bryn Mawr Trust Company of Delaware<br>20 Montchanin Road, Suite 100<br>Greenville, Delaware 19807<br>Email: readdy@bmtc.com |
| if to the Independent Trustee: | Hugh Steven Wilson<br>575 Circle Drive<br>Denver, Colorado 80206<br>Email: Steve@hswilson.com |
| if to the Grantor: | Entrust Global Group, LLC<br>2222 Sedwick Road<br>Durham, NC, 27713, USA<br>Email: gelindberg@gmail.com<br>PNordberg@eliglobal.com<br>skumar@globalgrowth.com |

or at such other address and facsimile number or email as shall be designated, respectively, by the Trustees or the Grantor in a written notice to the other Persons receiving Notices pursuant to this Section. Notices given pursuant to this Section 11.2 shall be deemed received upon the earliest of the following to occur: (i) upon personal delivery; (ii) on the fifth (5th) day following the day sent, if sent by registered or certified mail; (iii) on the next business day following the day sent, if sent by reputable overnight courier; (iv) if transmitted by telephone facsimile, on the day sent if such day is a business day of the addressee and the telephone facsimile is received by the addressee by 5:00 p.m. local time of the addressee on such day and otherwise on the first business day of the addressee after the day that the telephone facsimile is sent; and (v) if transmitted by email, on the day sent if such day is a business day of the recipient and the email is received by the recipient by 5:00 p.m. local time of the recipient on such day and otherwise on the first business day of the recipient after the day that the email is sent.

11.3. Severability. Any provision of this Trust Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

11.4. Counterparts; Electronic Transmission. This Trust Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument. This Trust Agreement may be executed manually or electronically. Executed counterparts of this Trust Agreement may be delivered by mail, facsimile, email, or other means of electronic transmission.

11.5. Successors and Assigns. All covenants and agreements contained herein shall be binding upon and inure to the benefit of the Trustees and their successors and assigns and the Grantor and its successors and assigns, all as herein provided. Any request, notice, direction, consent, waiver or other writing or action by the Grantor shall bind its successors and assigns.

11.6. Usage of Terms. With respect to all terms in this Trust Agreement, the singular includes the plural and the plural includes the singular; words importing any gender include the other gender; references to "writing" include printing, typing, lithography and other means of reproducing words in a visible form; references to agreements and other contractual instruments include all subsequent amendments thereto or changes therein entered into in accordance with their respective terms and not prohibited by this Trust Agreement; references to Persons include their successors and permitted assigns; and the term "including" means including without limitation.

11.7. Headings. The headings of the various Articles and Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

11.8. Governing Law. This Trust Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware applicable to contracts to be performed entirely within such state, including all matters of construction, validity, and performance.

11.9. Amendments. The Grantor retains no rights to revoke the Trust Agreement or substantially amend its provisions, except this Trust Agreement may be amended as follows:

(a) The Trustees may amend the Trust Agreement in a manner that does not materially expand the rights of the Trustees or materially prejudice the Grantor or BKX,; provided that any material amendments to the Trust Agreement shall be subject to any required regulatory consents;

(b) The Trustees may amend this Trust Agreement as may be required by an applicable regulator or in accordance with any relevant court order concerning Greg Lindberg, the Grantor or BKX; and

(c) Upon written request by the Grantor to the Trustees, subject to any required regulatory consents, the Trustees shall make such amendment(s) to this Trust Agreement, with respect to any one or more provisions hereof, to (i) cure any ambiguity, (ii) correct or supplement any provisions herein that may be inconsistent with any other provisions herein, or (iii) add any other provisions with respect to matters or questions arising under this Trust Agreement that will not be inconsistent with the provisions of this Trust Agreement.

[Remainder of Page Left Intentionally Blank]

**IN WITNESS WHEREOF**, the parties hereto have caused this Trust Agreement to be duly executed by their respective officers or authorized representatives as of the day and year first above written.

**GRANTOR:**

**ENTRUST GLOBAL GROUP, LLC,**
a North Carolina limited liability company

By: ____________________________
Name: Greg E. Lindberg
Title: Manager

**DELAWARE TRUSTEE:**

THE BRYN MAWR TRUST COMPANY OF DELAWARE

By: ____________________________
Name: __________________________
Title: ___________________________

**INDEPENDENT TRUSTEE:**

By: ____________________________
Hugh Steven Wilson, an individual

**IN WITNESS WHEREOF**, the parties hereto have caused this Trust Agreement to be duly executed by their respective officers or authorized representatives as of the day and year first above written.

**GRANTOR:**

**ENTRUST GLOBAL GROUP, LLC**,
a North Carolina limited liability company

By: ________________________
Name: Greg E. Lindberg
Title: Manager

**DELAWARE TRUSTEE:**

THE BRYN MAWR TRUST COMPANY OF DELAWARE

By: ________________________
Name: ______________________
Title: ______________________

**INDEPENDENT TRUSTEE:**

By: ________________________
Hugh Steven Wilson, an individual

**IN WITNESS WHEREOF**, the parties hereto have caused this Trust Agreement to be duly executed by their respective officers or authorized representatives as of the day and year first above written.

**GRANTOR:**

**ENTRUST GLOBAL GROUP, LLC,**
a North Carolina limited liability company

By: ______________________
Name: Greg E. Lindberg
Title: Manager

**DELAWARE TRUSTEE:**

THE BRYN MAWR TRUST COMPANY OF DELAWARE

By: ______________________
Name: Robert W. Eaddy
Title: President

**INDEPENDENT TRUSTEE:**

By: ______________________
Hugh Steven Wilson, an individual

**[Signature Page to Trust Agreement of Beckett Collectibles Trust]**

## SCHEDULE 1

## INDEPENDENT TRUSTEE REMUNERATION

1.1 The Independent Trustee shall be paid the sum of $[20,000] per (whole or partial) calendar month (the "**Fees**"), for as long as he remains a Trustee. The Fees shall be paid by Beckett Collectibles Holdings, LLC. To the extent applicable, the Fees shall be paid to the Trustee net of any withholding tax amounts.

1.2 The Fees shall be paid into a bank account nominated in writing by the Independent Trustee in arrears each calendar month following the date of this Instrument (or on the Business Day next following such date to the extent that such date is not a Business Day).

1.3 Any other Independent Trustee shall have his or its remuneration determined by the Grantor at the time of appointment of such Independent Trustee and the terms of such remuneration shall be recorded in the relevant joinder to this Trust Agreement.

1.4 Any Independent Trustee shall be deemed to be an independent contractor and nothing in this Trust Agreement shall give rise to an employment relationship between the Independent Trustee (or its director or officers) and any other entity. No Independent Trustee shall be required to perform his or its duties in Delaware or any other location.

**EXHIBIT A**

**CERTIFICATE OF TRUST**

*(See attached)*