# ASSIGNMENT AGREEMENT

This ASSIGNMENT AGREEMENT ("Agreement") is made effective as of February 13, 2025 (the "**Effective Date**"), by and between Global Growth Holdings, LLC (fka Global Growth Holdings, Inc.), a Florida limited liability company ("**Global Growth**"), Greg E. Lindberg ("**Sponsor**," and together with Global Growth, "**Assignor**') and Joseph W. Grier, solely in his capacity as special master appointed by the United States District Court for the Western District of North Carolina in USA v Lindberg, criminal case 3-23-cr-48-MOC ("**Assignee**" or "**Special Master**") and in accordance with the terms of the Order (defined below). Assignor and Assignee are each sometimes referred to herein as a "**Party**" and collectively as the "**Parties**".

## RECITALS

WHEREAS, reference is made to that certain Memorandum of Understanding dated as of June 27, 2019 by and among Global Growth (f/k/a Academy Association, Inc.), Sponsor, and the other parties thereto (the "**MOU**") providing for, among other things, the establishment of NHC Holdings, LLC, a North Caolina limited liability company ("NHC") and the transfer of certain "Specified Affiliated Companies" (as defined in the MOU) listed on Exhibit A attached to the MOU (herein "**SACs**") to the exclusive ownership and control of NHC; and

WHEREAS, litigation regarding the MOU is currently pending in the Wake County, North Carolina Superior Court in Case No. 19-CVS-13093; and

WHEREAS, the Special Master was appointed in accordance with that certain Order Appointing Special Master, United States of America v. Greg E. Lindberg, No. 3-23-cr-48-MOC (W.D.N.C. 2025) dated January 23, 2025 (the "**Order**");

WHEREAS, the Order directs the Defendant (as defined therein) "to take all necessary and reasonable steps in his power to secure in the exclusive possession and control of the Special Master, or one or more third parties selected by the Special Master, within 21 days of the entry of this Order, all of Defendant's and Global Growth's rights and interests" in certain specified assets, including NHC Holdings, LLC and the "Specified Affiliated Companies" as defined in the MOU (herein "**SACs**") and any related entities or trusts that include SACs;

WHEREAS, the Order outlines the responsibilities of the Special Master, which include recommending an appropriate method and timetable to liquidate and or/repatriate any available assets, including the ownership interests of NHC and the SACs, for the benefit of certain parties (the "**Purpose**");

WHEREAS, Global Growth is currently the sole member of NHC, owning all of the outstanding membership interests in NHC (the "**NHC Equity Interest**"); and

WHEREAS, Assignor desires to assign its NHC Equity Interest and any and all of its rights under the MOU to Assignee, and Assignee desires to accept such NHC Equity Interest and such rights under the MOU as set forth therein.

NOW, THEREFORE, Assignor and Assignee agree as follows:

1. Assignment and Acceptance. Effective as of the Effective Date, Assignor hereby, without recourse, representation or warranty of any kind, transfers and assigns to Assignee in his representative capacity all of their right, title, and interest, including without limitation except as provided herein all associated economic, legal, voting and beneficial rights and interests, all claims and causes of action associated therewith, in and to the NHC Equity Interest, any and all rights of Assignor to transfer or otherwise dispose of the NHC Equity Interest, and any and all rights of Assignor under the MOU (collectively, the "**Assigned Rights and Interests**"). Assignee hereby accepts the assignment of all of Assignor's right, title and interest, including without limitation except as provided herein all associated economic, legal, voting and beneficial rights and interests, in and to NHC Equity Interest and any and all rights of Assignor under the MOU, all in accordance with the Order. Upon the consummation of the transfer of the Assigned Rights and Interests to Assignee hereunder, Assignee shall become the record owner of the Assigned Rights and Interests in accordance with the Order and subject to the MOU. Pending satisfaction by Sponsor of all of his restitution obligations under the Order and any formal restitution order to be hereafter entered by the Court (as described in the Order), Assignor shall retain no rights or interests in or to the Assigned Rights and Interests.

2. Representations and Warranties. Assignee represents, warrants and covenants to Assignor and NHC, as follows:

a. Assignee is duly appointed as Special Master pursuant to the Order and has full power and authority to execute, deliver and to perform its obligations under this Agreement.

b. Assignee understands that the NHC Equity Interest has not been registered under the Securities Act and are "restricted securities" within the meaning of Rule 144 under the Securities Act.

3. Representations and Warranties. Global Growth represents, warrants and covenants to Assignee that Global Growth is duly organized and validly existing under the laws of its jurisdiction of organization, it is in good standing under such laws, and it has full power and authority to execute, deliver and to perform its obligations under this Agreement. Sponsor represents, warrants and covenants to Assignee that Sponsor has full power and authority to execute, deliver and to perform its obligations under this Agreement.

4. Covenants.

a. Assignee agrees to administer the Assigned Rights and Interests in accordance with the Order.

b. Each of the Parties will execute and deliver all further documents or instruments (i) required under the MOU and/or (ii) as may be reasonably requested by any other

Party or NHC and/or (iii) as required by the Court in accordance with or furtherance of the Order, in order to effect the intent and purposes of this Agreement in substance and form.

c. Each of the Parties acknowledges and agrees that solely for federal, state and local tax purposes, Assignor shall continue to be the beneficial owner of the NHC Equity Interest as of and following the Effective Date and shall continue to receive allocations of income or loss, and corresponding tax distributions, if any, with respect to the NHC Equity Interest for so long as NHC remains a disregarded entity for federal and state income tax purposes.

5. This Agreement is governed by the laws of the state of North Carolina, without regard to North Carolina conflict or choice of law provisions. Each of the Parties expressly irrevocably and unconditionally submits to and accepts the exclusive jurisdiction of the courts of Mecklenburg County, North Carolina, the courts of the United States of America for the Western District of North Carolina and appellate courts from any thereof for any action, suit, or proceeding arising out of or based upon this Agreement or any matter relating to this Agreement, and waives any objection that it may have to the laying of venue in any such court or that such court is an inconvenient forum or does not have personal jurisdiction over it.

6. <u>WAIVER OF JURY TRIAL</u>. EACH OF THE PARTIES WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT TO A TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION, OR IN ANY LEGAL PROCEEDING, DIRECTLY OR INDIRECTLY BASED UPON OR ARISING OUT OF THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

7. The invalidity or unenforceability of any term or provision of this Agreement will not affect the validity or enforceability of any other term or provision hereof. If any term or provision of this Agreement is for any reason determined to be invalid or unenforceable, there will be deemed to be made such changes (and only such changes) as are necessary to make it valid and enforceable.

8. This Agreement may be executed in one or more counterparts, each of which will be deemed an original, but all of which taken together will constitute one and the same instrument. Transmission by facsimile or other form of electronic transmission of an executed counterpart of this Agreement will be deemed to constitute due and sufficient delivery of such counterpart. This Agreement may not be amended or modified except in writing by all of the Parties hereto and no condition herein (express or implied) may be waived except in writing by the Party whom the condition was meant to benefit.

9. All costs and expenses incurred in connection with this Agreement and the consummation of the transactions contemplated herein will be paid (a) in accordance with the procedure contained in the Order or (b) by the Party incurring such expense.

10. Except as strictly related to the Purpose, each of the Parties agrees not to, and agrees to cause its directors, officers, employees, agents, advisors, and controlling persons (together, "**Representatives**") not to, without the prior written consent of the other Party,

directly or indirectly disclose the terms of any possible future transactions or any business information pertaining to NHC learned thereby, inclusive of information regarding the ownership of NHC (together, "**Confidential Information**"), to any entity, except that any Party may make any such disclosure (i) as required to implement or enforce this Agreement, (ii) if required to do so by any law, court, regulation, subpoena or other legal process, (iii) to any governmental authority or self-regulatory entity having or asserting jurisdiction over it or (iv) if its attorneys advise it that it has a legal obligation to do so or that failure to do so may result in it incurring a liability to any other entity or sanctions that may be imposed by any governmental authority; provided, however, that the Parties may disclose information regarding the transactions contemplated hereby (x) to their respective accountants, attorneys, limited partners, shareholders, members and other interest holders (y) to the extent necessary to effect the transactions contemplated hereby or to effect a subsequent transfer of the NHC Equity Interest or any portion thereof and (z) provided that the disclosing Party shall notify the other Party and NHC, if applicable, of any such disclosure in advance, unless the disclosure is made pursuant to subsection (x) above. In addition, the Parties agree to treat the Confidential Information as confidential and with no less than reasonable care at all times.

11. Each of the Parties hereto represents and warrants that no representation or warranty by such Party in this Agreement and no statement contained in any certificate or other document furnished or to be furnished between the Parties pursuant to this Agreement contains any untrue statement of a material fact, or omits to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they are made, not misleading.

12. The Parties agree that NHC is an intended third-party beneficiary of this Agreement.

13. This Agreement, including all agreements referenced in this Agreement, constitutes the sole and entire agreement of the Parties with respect to the subject matter contained herein. Any amendments to this Agreement must be made in writing and agreed to by and amongst all of the Parties. This Agreement shall terminate and be of no further force and effect upon termination of the Order or upon payment from any source of all restitution required per the Order.

14. The descriptive headings herein are inserted for the convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation of this Agreement.

15. Assignee hereby expressly acknowledges that it has received a copy of the MOU. Assignee further acknowledges that its exercise and enjoyment of the Assigned Rights and Interests are subject to the terms of the MOU to the same extent that Assignor was subject prior to the assignment herein; *provided, however*, that nothing in this Agreement or the MOU binds or limits actions of the Assignee in connection with his responsibilities in the criminal proceeding to fashion a restitution order or propose a restitution methodology in such manner as is determined to be appropriate by Assignee in its discretion.

*(signature page follows)*

IN WITNESS WHEREOF, the parties set their hands and seals as of the date first above written.

**Assignor**

**Global Growth Holdings, LLC**

By:____________________________
Name: Greg E. Lindberg
Title: Chairman
Date: 2/13/25

By:____________________________
Name: Greg E. Lindberg
Date: 2/13/25

**Assignee**

By:____________________________
Name: Joseph W. Grier, solely in his Capacity as Special Master
Date:

Acknowledgement:

**NHC Holdings, LLC**

By:____________________________
Name:
Title: Director
Date:

# NHC Holdings, LLC

## Board Presentation

*September 25, 2024*



M3 PARTNERS

# Agenda

| Topic |
| --- |
| Introduction |
| Situation Overview |
| SAC Contribution Update / Approval of Contribution Agreements |
| M3 Partners Diligence Update |
| NHC Portfolio Group Overview |

# Situation Overview

- The initial meeting of the NHC Holdings, LLC (“NHC”) Board was held on August 14, 2024
  - D&O coverage was bound as of August 14, 2024, with the premium funded on August 19, 2024
  - John Babcock, of Waldrep Wall Babcock & Bailey, PLLC (“WWBB”), was retained as NHC counsel
- An NHC bank account was opened at Dogwood State Bank on August 29, 2024, and was funded with proceeds of a $5 million line of credit on September 5, 2024
- To date, the primary focus has been on preparing the contribution agreements, including assessing ways to gain control over intervening trusts that hold the majority of the operating Specified Affiliated Companies (“SACs”), and on conducting initial diligence on the portfolio groups and individual entities
- Key next steps include:
  - Execute the contribution agreements;
  - Gain control over the trusts, which will involve conversations with lenders, regulators and other third parties to obtain their consent, where necessary;
  - Obtain Triton consent to the proposed Clanwilliam (“CWG”) sale to allow buyer diligence to continue;
  - Ensure Triton files its financial statements (or obtains a further extension) with the Irish Companies Registration Office to avoid strike-off;
  - Continue detailed financial and operational diligence on portfolio groups and individual entities; and
  - Evaluate near term strategic alternatives for board consideration including (i) proposed Clanwilliam sale, (ii) Beckett refinancing, (iii) potential Damovo sale and (iv) possible Home Medical Equipment Specialists (“HME”) management buyout

# SAC Contribution Update / Approval of Contribution Agreements

- Three separate Contribution Agreements have been prepared to facilitate the contribution of various SACs, including the FinCo, SPV, and general SAC Contribution Agreements which have been circulated for review
  - Certain SACs cannot be contributed at this time due to the existence of intervening trusts established after the MOU was signed
- An updated schedule reflecting the capitalization structure and ownership of the SACs being contributed will be attached to each Contribution Agreement
  - We have identified numerous inconsistencies between the organizational charts initially provided and the actual organizational documents obtained from Global Growth Holdings Inc. ("GGHI") – we continue to work through these issues
  - We have also identified certain SACs with preferred equity interests owned by other SACs as well as non-SACs – the Contribution Agreements include the non-SAC parties as transferors to ensure all preferred equity interests are owned by SACs going forward

**SAC-Contribution Process:**

- **Step 1:** Contribute the Lindberg, GGHI and affiliate interests in the various SACs covered by the Contribution Agreements to NHC
- **Step 2:** Obtain control over the intervening trusts
  - There are presently 10 separate trusts which control the majority of the OpCos
  - After the contribution of interests outlined in Step 1 above, NHC will acquire control over the Settlors of each trust but will not have the ability to manage or direct the operations of the OpCos under the trusts, nor have access to any Opco generated cash flow
  - At a minimum, NHC will need to replace the trustee and beneficiary of each trust where permitted with one or more persons of its choosing - this will take time and will require the consent of lenders, regulators or holding companies under the trust line
- Full implementation of the MOU will need to be done in stages

# M3 Partners Diligence Update

- M3 Partners had the following introductory calls with portfolio managers to determine the current operating state of each business as well as identify any immediate issues and concerns:
  - (8/21/2024) Century Vision Global CEO Lonna Carter
  - (8/21/2024) Six Sails CEO Prashant Upadhyaya
  - (8/22/2024) Clanwilliam CEO Howard Beggs
  - (8/26/2024) Damovo CEO Chris Nickerson
  - (8/26/2024) Beckett CEO Kevin Issacson
  - (8/27/2024) Autonomy CEO Mike Pereira
  - (8/28/2024) Castle & Cooke Mortgage CEO Rick Cardillo
  - (8/28/2024) Accounts Receivable Management CEO Vishal Kumar
- M3 Partners was provided preliminary financial information for certain portfolio groups by OpCo management and GGHI and has conducted initial financial diligence (see appendix for a summary of information provided)
- WWBB has had introductory calls with Beckett's senior lender, trustees of portfolio trusts, and Damovo's general counsel

# Portfolio Group Key Considerations & Action Items

| Portfolio Group | Description | Key Considerations | NHC Action Items / Next Steps |
|---|---|---|---|
| **Beckett**<br>*(Steve Wilson Trust)* | Collectibles businesses, notably in trading cards and related products | ▪ Currently working to refinance its existing loan with HPS/Freedom 3 Capital<br>▪ Lenders have been forbearing; loan repayment due 11/30/24<br>▪ Discussions are in final stages with a group of lenders led by King Street Capital (pricing at SOFR + 850) | ▪ Review new loan terms and request NHC BoD consent (term sheet for the new loan has been requested)<br>▪ Continue to conduct due diligence on the business to help ensure all issues are identified and understood |
| **Clanwilliam**<br>*(Steve Wilson Trust)* | Healthcare technology and services businesses | ▪ Prospective sale of the business to TA Associates for €427MM (equity value of ~$326MM to NHC)[(1)] | ▪ NHC Board to evaluate proposal to sell CWG to TA Associates and consent if appropriate<br>▪ Secure consent of sale from Triton<br>▪ Assist with filing of past due Triton financial statements with the Irish Companies Registration Office |
| **Accounts Receivable Management**<br>*(Steve Wilson Trust)* | Debt collection and A/R management services | ▪ State licensing issues due to GGHI not filing its 2022 / 2023 tax returns timely (2022 federal and some key state tax returns were recently filed) | ▪ Follow up with GGHI tax team and provide oversight to help ensure tax returns are filed so ARM can renew all state licenses<br>▪ Continue due diligence process |
| **Autonomy – HME**<br>*(Steve Wilson Trust)* | Home medical equipment sales and rentals | ▪ HME has an outstanding loan with HPS who has expressed desire to be repaid<br>▪ Steve Wilson told us HME's management is interested in acquiring the business | ▪ Evaluate prospective management buyout offer for HME when provided<br>▪ Continue due diligence process |
| **Autonomy – HPC**<br>*(Steve Wilson Trust)* | Specialty pharmacy and infusions business (Hemophilia related treatments) | ▪ Former owner has launched a direct competitor of HPC and has poached some customers and sales personnel; he is also suing HPC for alleged defaults related to his earnout | ▪ Analyze cash flow forecast and liquidity<br>▪ Continue due diligence process |
| **Damovo**<br>*(Steve Wilson Trust)* | Information and communications technology services company (UCaaS) | ▪ Currently in default with lenders who have pushed for a sales process to repay outstanding debt (lenders reportedly owed €68m plus €25m in prepayment fees and equity kickers) | ▪ Evaluate CIM when available (end of September)<br>▪ Progress initial diligence requests and better understand sales process vs. other strategic alternatives |



*Source: Based on discussions with portfolio managers. M3 Partners is in the process of verifying the information provided*

*(1) Based on Goodbody Stockbrokers (investment bank conducting the sales process) estimated proceeds to NHC of €291MM converted at EUR to Dollar exchange rate of 1.12 as of 9/22/2024*

# Portfolio Group Key Considerations & Action Items (Continued)

| Portfolio Group | Description | Key Considerations | NHC Action Items / Next Steps |
|---|---|---|---|
| **Castle & Cooke Mortgage** *(Mortgage Trust)* | Mortgage origination and loan servicing businesses | ▪ Poorly performing business due to fall-off in loan origination<br>▪ Minimal available liquidity | ▪ Analyze cash flow forecast and liquidity in light of continued operating losses |
| **Century Vision Global (CVG)** *(Not in Trust)* | Eye care clinical practices | ▪ Poorly performing business due to company-specific and industry headwinds<br>▪ Minimal available liquidity | ▪ Analyze cash flow forecast and liquidity runway<br>▪ Continue due diligence process |
| **Six Sails** *(Not in Trust)* | Industry certification and digital/print media | ▪ Consolidated Adjusted EBITDA is relatively stable, but revenue decline in print / digital media has been a drag on cash flow<br>▪ Most of Six Sails' profitability is generated by the certification businesses | ▪ Evaluate management's plan for the digital / print media business to determine long-term viability |
| **Other** | Businesses identified that are not in a portfolio group | ▪ These businesses have independent management teams but do not report to a portfolio manager presently | ▪ Continue due diligence process |



*Source: Based on discussions with portfolio managers. M3 Partners is in the process of verifying the information provided*

# Portfolio Group Financial Summary

***The information below and in the appendix was provided by GGHI and portfolio group CEOs (see appendix for a list of financial information provided) – M3 Partners has not independently verified the accuracy of the information provided***

| | Financial Metrics LTM as of 6/30/2024 *($ in MMs)* | | | | | | |
|---|---|---|---|---|---|---|---|
| **Portfolio Group** | **Revenue** | **Management EBITDA[1]** | **Cash** | **3rd Party Debt** | **2023A to 2024B Revenue Change[2]** | **Management EBITDA Margin %[1]** | **Net 3rd Party Leverage[3]** |
| **Beckett** | $615 | $74 | $17 | $202 | 1% | 12% | 2.5x |
| **Clanwilliam[4]** | $111 | $37 | $21 | $147 | 8% | 33% | 3.4x |
| **Accounts Receivable Management** | $131 | $27 | $12 | $0 | 18% | 21% | N/A |
| **Autonomy[5]** | $202 | $21 | $14 | $59 | 3% | 11% | 2.1x |
| **Damovo[5]** | $172 | $16 | N/P | ~$76[6] | 1% | 10% | 4.6x |
| **Castle & Cooke Mortgage** | $20 | ($4) | $5 | $0 | 18% | (18%) | N/A |
| **Century Vision Global** | $81 | $2 | $2 | $0 | (4%) | 3% | N/A |
| **Six Sails** | $32 | $1 | $1 | $0 | 18% | 5% | N/A |
| **Other[7]** | $19 | $2 | N/P | N/P | (14%) | 5% | N/P |

*Notes:*
*(1) Includes various adjustments; Management EBITDA can differ substantially from covenant EBITDA required for covenant reporting*
*(2) 2024 budgets provided by portfolio group managers for Beckett, CWG, ARM, CCM, CVG and Six Sails; revenue and EBITDA budget numbers for Autonomy, Damovo and Other provided by GGHI per OpCo summary financial reporting*
*(3) Net 3rd party leverage calculated as (3rd party debt – cash and equivalents) / LTM Management EBITDA*
*(4) Clanwilliam financials converted at spot rate of 1.12 EUR to Dollar as of 9/22/2024*
*(5) Limited financial information has been provided for Autonomy and Damovo*
*(6) Damovo loan balance based on communication with the Damovo management team (€68MM converted at EUR to Dollar exchange rate of 1.12 as of 9/22/2024)*
*(7) Other entities based on OpCo summary financial reporting provided by GGHI. Separate company information has not been provided*

# Appendix

# Select Financial Information Received

| Portfolio Group | Select Financial Information Received[1] |
|---|---|
| **Beckett** | ▪ Data provided via Beckett dataroom<br>▪ Data includes (i) historical monthly P&L and balance sheet, (ii) 2024 budget (monthly), (iii) current capital structure details and related credit agreements and, (iv) Management Reporting Packages |
| **Clanwilliam** | ▪ Data provided by CWG's management team<br>▪ Data includes (i) LTM P&L and balance sheet, (ii) 2024 budget (annual) |
| **Accounts Receivable Management** | ▪ Data provided in ARM dataroom<br>▪ Data includes (i) historical monthly P&L and balance sheet, (ii) 2024 budget (monthly), (iii) long-term annual projections, (iv) current capital structure details and related credit agreements and, (v) Management Reporting Packages |
| **Autonomy** | ▪ Data provided by Autonomy's management team<br>▪ Data includes (i) LTM P&L and balance sheet |
| **Damovo** | ▪ Data per GGHI summary financial reporting |
| **Castle & Cooke Mortgage** | ▪ Data provided in GGHI dataroom<br>▪ Data includes (i) historical monthly P&L and balance sheet, (ii) 2024 budget (monthly), (iii) current capital structure details and related credit agreements and, (iv) Management Reporting Packages |
| **Century Vision Global** | ▪ Data provided in GGHI dataroom<br>▪ Data includes (i) historical monthly P&L and balance sheet, (ii) 2024 budget (monthly), (iii) current capital structure details and related credit agreements and, (iv) Management Reporting Packages |
| **Six Sails** | ▪ Data provided in GGHI dataroom<br>▪ Data includes (i) historical monthly P&L and balance sheet, (ii) 2024 budget (monthly), (iii) current capital structure details and related credit agreements and, (iv) Management Reporting Packages |
| **Other** | ▪ Data per GGHI summary financial reporting |



*Notes:*
*(1) Not an exhaustive list of all information received to date*

# Operating Entity List

| Portfolio Group | List of Known Operating Entities Within Portfolio Group |
|---|---|
| **Beckett** | Beckett Collectibles, Arcane Tinmen, Southern Hobby Distribution |
| **Clanwilliam** | Clanwilliam |
| **Accounts Receivable Management** | CBV Collection Services, AR Purchasing Solutions, AR Purchasing Solutions 2, Client Services Inc., MBW Interco, GCC Interco, ARA Group Holdings, Nationwide Recovery Holdings, Harvard Collect, TransContinental Credit Holdings, Collection Management Holdings, Arrevio, Global Growth Arrevio Private Limited, Atlas Global |
| **Autonomy** | Home Medical Equipment Specialists, HPC Specialty Pharmacy, Fiasco Fine Wine |
| **Damovo** | Damovo |
| **Castle & Cooke Mortgage** | Castle & Cooke Mortgage |
| **Century Vision Global** | Century Vision Global, Claris Vision, Vision Care Services, Lavenburg Medical Group, Boston Laser, Eye & Lasik, Prairie Eye Centre |
| **Six Sails** | EG Media, Engaged Media, Beckett Coin & Rock, Drummond Group, Fortrex, ComplySmart, Certification for Long-Term Care, Certified Wireless Network Professionals, ERAD Imaging, ASiM, Financial Institute Advisors, NEBB Institute, International Society of Business Appraisers, CertiTREK Group, Six Sails |
| **Other** | Intralan, Marval, Prolimate Solutions, The Rivers Source, HRWeb Software, WWS |

Steve Wilson Trust

PRIVILEGED & CONFIDENTIAL

# Beckett Overview

## Summary

- Beckett Group is a technology-driven, comprehensive trading cards collectibles platform consisting of three separate businesses with grading/pricing, protection and distribution capabilities
- Beckett Collectibles (7% / 14% of LTM Revenue / Management EBITDA): One-stop shop for all card grading, authentication, buying, selling, storing and pricing needs
- Arcane Tinman (9% / 22% of LTM Revenue / Management EBITDA): Trading card sleeve and gaming accessories brand
- Southern Hobby Distribution (84% / 64% of LTM Revenue / Management EBITDA): Hobby sports and trading card distributor

## Key Issues and Concerns

- Beckett's lenders executed a forbearance agreement on April 19, 2024, that required a marketing/refinancing process:
  - **Amounts due**: ~$202MM principal loan balance (1L and 2L)
  - **Timeline**: Repayment/refinancing plan due September 13, 2024, and repayment due by November 30, 2024
  - **Current State:** Beckett is in the process of finalizing the refinance terms with a group of lenders led by King Street Capital (HPS will remain in the lender group)
- Underinvestment in the business has resulted in declining market share for Beckett Collectibles
- Previous M&A processes did not result in attractive bids

## Historical Revenue & Management EBITDA *($ in MMs)*




| | FY22A | FY23A | LTM Q2'24A |
|---|---|---|---|
| *Revenue YoY (%)* | *18.4%* | *1.4%* | *0.6%* |
| *EBITDA Margin %* | *12.1%* | *11.9%* | *12.1%* |
| *Net Leverage*[2] | *2.4x* | *2.4x* | *2.5x* |

## Summary Capital Structure *($ in MMs)*

| | O/S Balance | Interest Rate | Annual Interest[1] |
|---|---|---|---|
| 3rd Party 1L Debt | $138.6 | LIBOR + 11.875% | $26.7 |
| 3rd Party 2L Debt | 63.8 | LIBOR + 11.875% | 12.3 |
| **Total 3rd Party Debt** | **$202.4** | | **$39.0** |
| I/C Debt | – | – | – |
| **Total Debt** | **$202.4** | | **$39.0** |
| (-) Cash | (16.7) | | |
| **Net Debt** | **$185.7** | | |
| *LTM Mgmt EBITDA* | *$74.2* | | |
| *Net Leverage*[2] | *2.5x* | | |



*Source: Company provided financial information*

*(1) Based on 2024 average 1mo LIBOR rate of 5.4%*

*(2) Net Leverage based on Management EBITDA; Covenant EBITDA resulted in Net Leverage of 4.8x as of 6/30/2024*

# Clanwilliam Overview

## Summary

- Clanwilliam provides software for the management of medical practices and elderly care institutions, as well as other communication services for businesses in several healthcare sectors
- Clanwilliam provides several kinds of software services such as Primary care practice management, secondary care and hospital practice management, pharmacy management, information and messaging solutions and healthcare communications and medical education software
- Over the period from 2015 to 2020, Clanwilliam employed a buy and build strategy in which it acquired 16 healthcare business in Ireland, the UK, Australia, and New Zealand which helped the company achieve revenue and EBITDA CAGRs of 35% and 40%, respectively

## Key Issues and Concerns

- Clanwilliam currently has a proposed sale transaction from TA Associates for €427MM, subject to final diligence and working capital adjustments
- There is ~€132MM of outstanding debt with Alcentra that needs to be refinanced – the Company is currently negotiating with Apollo on a refinancing proposal
- Triton, which is the settlor of the Clanwilliam trust, is at risk of “strike-off”, which is a penalty in Ireland resulting from a failure to file required financial statements with regulators

## Historical Revenue & Management EBITDA *(€ in MMs)*




| | FY22A | FY23A | LTM Q2'24A |
|---|---|---|---|
| *Revenue YoY (%)* | *2.7%* | *6.1%* | *3.4%* |
| *EBITDA Margin %* | *32.6%* | *33.1%* | *33.4%* |
| *Net Leverage* | *4.1x* | *3.6x* | *3.4x* |

## Summary Capital Structure *(€ in MMs)*

| | O/S Balance | Interest Rate | Annual Interest[1] |
|---|---|---|---|
| 3rd Party 1L Debt | €131.6 | €STR + 650 | €12.8 |
| 3rd Party 2L Debt | – | – | – |
| **Total 3rd Party Debt** | **€131.6** | | **€12.8** |
| I/C Debt | – | – | – |
| **Total Debt** | **€131.6** | | **€12.8** |
| (-) Cash | (19.0) | | |
| **Net Debt** | **€112.6** | | |
| *LTM Mgmt EBITDA* | *€33.1* | | |
| *Net Leverage* | *3.4x* | | |

Case 3:23-cr-00048-MOC-DCK Document 260-2 Filed 07/28/26 Page 18 of 26

*Source: Company provided financial information*

*(1) Based on 2024 average 6mo €STR rate of 3.7%*

PRIVILEGED & CONFIDENTIAL

# Accounts Receivable Management Overview

## Summary

- ARM is a group of companies focused on the collection of past due consumer and commercial loans in the US and Canadian markets
- Most of the collections are done on a contingency basis where ARM is paid a fee tied to the amount collected
    - ARM also purchases nonperforming loans and past due accounts, but this is a smaller component of the business largely due to capital constraints
- ARM operates in a variety of industries such as financial services, telecom, government and healthcare

## Key Issues and Concerns

- ARM has been unable to renew some of its state licenses due to late 2022 and 2023 tax filings by GGHI - this is a critical part of the business as ARM is required to be licensed under its customer contracts
- Currently, GGHI has filed its 2022 tax return and filed for an extension on its 2023 tax returns
- ARM has had issues opening bank accounts and borrowing third party debt due to ultimate beneficial ownership by GEL; as a result, the capital structure is entirely composed of intercompany debt

## Historical Revenue & Management EBITDA *($ in MMs)*




| | FY22A | FY23A | LTM Q2'24A |
|---|---|---|---|
| *Revenue YoY (%)* | *(15.0%)* | *(14.1%)* | *0.1%* |
| *EBITDA Margin %* | *20.4%* | *21.2%* | *21.0%* |
| *Net Leverage* | *3.6x* | *4.1x* | *4.0x* |

*Source: Company provided financial information*

## Summary Capital Structure *($ in MMs)*

| | O/S Balance | Interest Rate | Annual Interest |
|---|---|---|---|
| 3rd Party 1L Debt | – | – | – |
| 3rd Party 2L Debt | – | – | – |
| **Total 3rd Party Debt** | **–** | | **–** |
| I/C Debt | $122.0 | 5.00% / 5.50% | $6.3 |
| **Total Debt** | **$122.0** | | **$6.3** |
| (-) Cash | (12.0) | | |
| **Net Debt** | **$110.1** | | |
| *LTM Mgmt EBITDA* | *$27.4* | | |
| *Net Leverage* | *4.0x* | | |

Case 3:23-cr-00048-MOC-DCK Document 260-2 Filed 07/28/26 Page 19 of 26

Steve Wilson Trust

PRIVILEGED & CONFIDENTIAL

# Autonomy Overview

## Summary

- Autonomy is primarily comprised of 2 healthcare business, Home Medical Equipment Specialists (“HME”) and HPC Specialty Pharmacy (“HPC”). Additionally, the Fiasco Fine Wine business has historically been included in portfolio reporting
- HME sells and leases critical care medical equipment and is the largest independent provider of medical equipment in the state of New Mexico
- HPC is a specialty pharmacy business that sells high-cost drugs and medicine - the two primary products are for hemophilia and infusion medications for immune diseases

## Key Issues and Concerns

- The former owner of HPC has launched a direct competitor of the business and has poached a material portion of the Company’s patients and sales team which has resulted in significant revenue loss
- There is ongoing litigation with the former owner who is suing for breach of contract – HPC is countersuing for theft of confidential information
- Separately, the Company is engaged in another lawsuit with the former owner who has asserted claims for substantial compensation arising from the sale of HPC into the trust – he has won several rounds of litigation in state court which HPC has appealed

## Historical Revenue & Management EBITDA *($ in MMs)*




| | FY23A | LTM Q2'24A |
|---|---|---|
| *Revenue YoY (%)* | *N/P* | *(0.6%)* |
| *EBITDA Margin %* | *10.4%* | *10.5%* |
| *Net Leverage* | *N/P* | *4.8x* |

*Source: Company provided financial information*

## Summary Capital Structure *($ in MMs)*

| | O/S Balance |
|---|---|
| 3rd Party 1L Debt | $58.6 |
| 3rd Party 2L Debt | – |
| **Total 3rd Party Debt** | **$58.6** |
| I/C Debt | 57.5 |
| **Total Debt** | **$116.1** |
| (-) Cash | (14.2) |
| **Net Debt** | **$101.9** |
| *LTM Mgmt EBITDA* | *$21.1* |
| *Net Leverage* | *4.8x* |

***Autonomy has not provided comprehensive financials; debt balances were taken from the 6/30/2024 balance sheet***

# Damovo Overview

## Summary

- Damovo builds and manages Unified Communications as a Service ("UCaaS") systems and services for large enterprises and municipal organizations
- Damovo builds and operates systems that provide enhanced telephony, messaging, data collection and video
- Examples of existing clients include Aldi and the State of Hessen; Damovo build systems over a 3-to-12-month period and then operates or maintains the systems for another for 3-5 years
- Competitors include DTE, Duestche Telecom, Orange and Proximus Group

## Key Issues and Concerns

- Damovo is in default with its senior lenders – as a result the lenders have put significant pressure on Damovo to conduct a sales process and have pushed to retain several advisory firms to help facilitate the process
- Damovo currently has €68MM of outstanding debt (which has a 16MM prepayment fee and a €9MM equity kicker)
- A total of ~€100MM of proceeds from the potential sale is needed to settle outstanding claims (including €7m owed to the former owner)
- The Company is targeting to have a CIM ready by the end of September and hopes to have first round indicative offers towards the end of October / beginning of November

## Historical Revenue & Management EBITDA *($ in MMs)*




| | FY23A | LTM Q2'24A |
|---|---|---|
| *Revenue YoY (%)* | *N/P* | *(1.9%)* |
| *EBITDA Margin %* | *10.4%* | *9.6%* |
| *Net Leverage* | *N/P* | *4.6x* |

*Source: Company provided financial information*

## Summary Capital Structure *($ in MMs)*

***Damovo has not provided comprehensive financials; LTM P&L amounts were taken from limited provided information***

PRIVILEGED & CONFIDENTIAL

# CCM Overview

## Summary

- CCM is a residential mortgage origination and servicing company focused on conventional and government loans based in Draper, UT
- CCM's financial results have been volatile as it is predominantly focused on loan origination; pre-COVID results were normal; post COVID results were strong, and post 2022 results have been poor due to the sharp rise in interest rates and the material fall off in mortgage loan origination

## Key Issues and Concerns

- The Company has struggled financially in the past 2 years due to the rise in interest rates and fall in origination volume
  - The Company's loan volume decreased from $1.8BN in 2022 to $422MM in 2023 and is on pace for roughly the same level in 2024
- The Company had made dramatic cost reduction measures but still faces liquidity constraints
  - The Company has listed its office building in UT for sale but has had several potential deals fall through due to the inability of potential buyers to secure financing
  - If the Company can sell the UT office building, it believes it will be cashflow positive in 2024

## Historical Revenue & Management EBITDA *($ in MMs)*




| | FY22A | FY23A | LTM Q2'24A |
|---|---|---|---|
| *Revenue YoY (%)* | *(58.8%)* | *(37.7%)* | *(12.2%)* |
| *EBITDA Margin %* | *(10.0%)* | *(17.6%)* | *(18.3%)* |
| *Net Leverage* | *N/A* | *N/A* | *N/A* |

*Source: Company provided financial information*

## Summary Capital Structure *($ in MMs)*

***As of 6/30/2024 CCM does not have any outstanding debt on its balance sheet***

Case 3:23-cr-00048-MOC-DCK Document 260-2 Filed 07/28/26 Page 22 of 26

Not in Trust

PRIVILEGED & CONFIDENTIAL

# CVG Overview

## Summary

- CVG is a collection of ophthalmological clinical practices which provide comprehensive eye care and Lasik / cataract procedures
- CVG manages more than two dozen clinical / ambulatory surgical offices and supports a team of nearly 500, primarily located along the east coast
- 70% of revenue and 100% of EBITDA is generated by the Claris Vision operating company

## Key Issues and Concerns

- CVG is currently facing financial challenges primarily driven by limited resources, Medicare cuts, inflationary pressures and litigation issues with former owners / partners of certain practices:
  - Medicare reimbursements have decreased by 7% - 8% decreasing top line revenue
  - The inflationary environment has increased average COGS by 10% - 14%; additionally, the cost to hire a specialist has increased considerably
  - The former chief surgeon has sued Prairie E&L for wrongful termination which has cost the business ~$4MM

## Historical Revenue & Management EBITDA *($ in MMs)*




| | FY22A | FY23A | LTM Q2'24A |
|---|---|---|---|
| *Revenue YoY (%)* | *N/P* | *(10.2%)* | *(2.1%)* |
| *EBITDA Margin %* | *5.2%* | *2.4%* | *2.9%* |
| *Net Leverage* | *18.6x* | *45.6x* | *42.7x* |

*Source: Company provided financial information*

## Summary Capital Structure *($ in MMs)*

| | O/S Balance | Interest Rate | Annual Interest |
|---|---|---|---|
| 3rd Party 1L Debt | – | – | – |
| 3rd Party 2L Debt | – | – | – |
| **Total 3rd Party Debt** | **–** | | **–** |
| I/C Debt | $101.5 | 5.00% / 5.50% | $5.1 |
| **Total Debt** | **$101.5** | | **$5.1** |
| (-) Cash | (2.4) | | |
| **Net Debt** | **$99.1** | | |
| *LTM Mgmt EBITDA* | *$2.3* | | |
| *Net Leverage* | *42.7x* | | |

Case 3:23-cr-00048-MOC-DCK Document 260-2 Filed 07/28/26 Page 23 of 26

Not in Trust



# Six Sails Overview

## Summary

- Six Sails is a group of businesses primarily focused on (i) print / digital media publishing and (ii) certification
- Print / Digital Media: (54% of LTM Revenue; $(1.9MM) Adj. EBITDA): Consists of enthusiast magazine publishing, search engine marketing, influencer marketing, web development, and Beckett Coin & Rock
- Certification (46% of LTM Revenue; $3.3MM Adj. EBITDA): Consist of the Drummond Group and Certitrek Group of businesses that provide IT, healthcare/lab, finance, and other certifications as well as online continuing education

## Key Issues and Concerns

- The print / digital media businesses were historically Newsstand dependent (50-60% of revenue), resulting in declining revenue and negative EBITDA
  - The businesses have been restructuring to right-size the cost base and shift to a direct-to-consumer and digital platform
  - Management's long-term plan to shift platforms should be evaluated to determine the long-term viability/profitability of the business
- The certification business, while profitable and stabilized, has few growth opportunities
  - The previous acquisition of ComplySmart ended up being a failure and has been since wound down

## Historical Revenue & Management EBITDA *($ in MMs)*




| | FY22A | FY23A | LTM Q2'24A |
|---|---|---|---|
| *Revenue YoY (%)* | *N/P* | *(6.7%)* | *(2.3%)* |
| *EBITDA Margin %* | *3.8%* | *6.1%* | *4.5%* |
| *Net Leverage* | *25.9x* | *17.7x* | *24.7x* |

*Source: Company provided financial information*

## Summary Capital Structure *($ in MMs)*

| | O/S Balance | Interest Rate | Annual Interest |
|---|---|---|---|
| 3rd Party 1L Debt | – | – | – |
| 3rd Party 2L Debt | – | – | – |
| **Total 3rd Party Debt** | **–** | | **–** |
| I/C Debt | $36.2 | 5.00% / 5.50% | $1.8 |
| **Total Debt** | **$36.2** | | **$1.8** |
| (-) Cash | (0.6) | | |
| **Net Debt** | **$35.6** | | |
| *LTM Mgmt EBITDA* | *$1.4* | | |
| *Net Leverage* | *24.7x* | | |

Case 3:23-cr-00048-MOC-DCK Document 260-2 Filed 07/28/26 Page 24 of 26

# NHC Portfolio Managers

| Professional | Biography |
|---|---|
|  **Vishal Kumar**<br>Accounts Receivable Management | • Vishal Kumar is responsible for leading the ARM Group portfolio which includes CBV, CSI, MBW, GCC, TCC, ARA, TCC, etc.<br>• He is a leader with 20+ years of varied experience including M&A, Operations and Business Turnarounds in Accounts Receivable Management at Eli Global and previously in multinationals such as GE Capital, Agilent Technologies and Philips |
|  **Mike Pereira**<br>*Autonomy Healthcare* | • Mike Pereira leads Autonomy Healthcare, including HME Specialists, HPC Specialty Pharmacy and Fiasco Fine Wine<br>• He has founded and sold 3 companies: TaxChat; The Law Report Group; and Knowledge In Practice. He previously served as Associate General Counsel at hedge fund manager Strategic Value Partners; Associate at law firm Ropes & Gray; and Legal Analyst at Bloomberg |
|  **Kevin Issacson**<br>*Beckett* | • Kevin Issacson was appointed as CEO of the Beckett group in May 2023<br>• Isaacson brings over a quarter-century of industry experience to the role, including engagements in media (Sports Collectors Digest), manufacturing (Donruss Playoff) and e-commerce (eBay) |
|  **Lonna Carter**<br>*Century Vision Global* | • Lonna Carter was appointed as CEO of Century Vision Global in June 2023<br>• She has 15+ years of experience. Transitioned from legal counselor to corporate executive capable of guiding highly complex organizations during massive scaling, startup, and organizational transformation |
|  **Howard Beggs**<br>*Clanwilliam* | • Howard Beggs is an Irish entrepreneur, investor, professional director and Founder and Group Chief Executive Officer of Clanwilliam<br>• With a background in technology, Beggs founded the original company, Medicom, in 1996 and has led the company for over 25 years to become a global healthcare group |
|  **Chris Nickerson**<br>*Damovo* | • Chris Nickerson joined Damovo in October 2020<br>• He has over 20 years of experience in the technology and telecommunications industry and has a distinguished track record of driving innovation, operational excellence, and sustainable growth |
|  **Rick Cardillo**<br>*Castle & Cooke Mortgage* | • Rick Cardillo has served as President and CEO of Castle & Cooke Mortgage since June 2019<br>• Rick has had a distinguished career spanning more than 33 years, seven national companies and two coasts. He has held senior and executive-level positions with organizations like Morgan Stanley, Bank of America, CitiFinancial and Nationstar (now Mr. Cooper) where he oversaw multiple channels including retail, consumer direct, wholesale, correspondent and capital markets |
|  **Prashant Upadhyaya**<br>*Six Sails* | • Prashant Upadhyaya has served as CEO of Six Sails since October 2021<br>• He has 25 years of experience across roles including Leadership experience covering managing Global Teams, P&L Management, Turnaround Management, Operations and Sales Management across areas of Advertising & Marketing (Print, place based and Digital), Print Publishing, and Content Publishing |

# Disclaimer

This document and the information contained herein ("Document") has been prepared for the informational purposes of authorized Recipients only, and is not intended to provide, and should not be relied on for, investment, lending, tax, legal or accounting advice. Nothing in the Document shall constitute an offer or a solicitation of an offer to buy or sell any products or services or enter into any transaction, including, but not limited with respect to, any securities, financial instruments or other investments or investment advice. Recipients should seek the advice of their own independent professionals prior to making any investment or other decision.

This Document may contain forward-looking statements subject to many variable factors and uncertainties that could cause actual results to differ materially from what is set forth or projected herein. The Document (unless otherwise explicitly stated) is a preliminary draft and subject to change. Notwithstanding the foregoing, M3 prepared this Document as of the date hereof, and assumes no obligation to update or revise it for any reason whatsoever thereafter.

M3 Partners, LP ("M3") makes no representation whatsoever regarding the adequacy of the Document for any purpose. In conducting analysis reflected in this Document, M3 assumed, without verification, the accuracy of information provided to it or obtained from third parties. No one from M3 or any representative of M3 shall have any liability to any party for any error or omission with respect to any of the information contained herein. M3 may have prepared or in the future may prepare other documents that are inconsistent with, and reach different conclusions from, the information presented in this Document. M3 assumes no obligation to bring such other documents to a Recipient's attention.

The analysis reflected in the Document would not necessarily reveal any material misstatement, omission or error and does not constitute an audit, review, compilation or other attestation service in accordance with Generally Accepted Accounting Principles or other standards established by the American Institute of Certified Public Accountants. M3 does not express an opinion or any other form of assurance on any financial or other information. Had M3 or another party performed additional work, including more in-depth verification or analysis, other matters might have come to its attention.

Pursuant to Internal Revenue Service Circular 230 (if applicable), be advised that any discussion of U.S. federal tax issues contained or referred to herein is not intended or written to be used, for the purpose of: (A) avoiding penalties that may be imposed under the internal Revenue code; nor (B) promoting, marketing or recommending to another party any transaction or matter addressed.

M3 reserves all rights. Nothing in the Document shall be construed as granting any license or right to use any image, trademark or other intellectual property of M3. Unless otherwise indicated, all capitalized terms used herein have the same meaning as in the Agreement.