# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br>    v.<br>GREG E. LINDBERG,<br>    Defendant. | Case No. 3:23-CR-48-MOC<br>Case No. 5:19-CR-22-MOC<br>Judge Max O. Cogburn, Jr. |

## DEFENDANT'S PRELIMINARY OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATIONS REGARDING RESTITUTION (DOC. 245) AND PROPOSED FINAL ORDER OF RESTITUTION (DOC. 245-1)

Defendant Greg E. Lindberg submits the following objections to the Special Master's Report and Recommendations Regarding Restitution, including the Second Supplement (Doc. 245) and the proposed Final Order of Restitution (Doc. 245-1) (together, the "Report"). Each objection is drawn from, and incorporates by reference, the motion, declaration, or filing cited with it, which Defendant adopts as though fully set forth herein. These objections are equally addressed to the Special Master's Final Report, and Defendant readopts them, mutatis mutandis, against the Final Report.

The Government has not responded to, and its position on these objections has not yet been made available. That silence is not a neutral gap. Under 18 U.S.C. § 3664(e), the burden of proving the amount of loss, causation, and foreseeability rests "on the attorney for the Government," and a defendant's burden arises only after the Government has carried its own. To adopt the Report over these unanswered objections would invert that burden — requiring Defendant to disprove a loss the Government has never proven — and would be incompatible with the MVRA, which

commands that the Court, not a court-appointed master, determine "the full amount of each victim's losses," § 3664(f)(1)(A), and resolve every dispute "by the preponderance of the evidence," § 3664(e), on a complete record. Defendant objects as follows:

## A. The Report is the work product of an officer subject to disqualification.

1. The Report is the work product of an officer who unites in himself the receiver's custody, liquidation, and fee interest and the Article III function of quantifying each victim's loss and fashioning the restitution order — an officer subject to disqualification. Such an officer's report may not be adopted, is not cured by a later de novo determination under § 3664(d)(6), and must be suppressed. *(Source: Motion to Disqualify (Doc. 269), adopted in Second Motion to Set Aside § I ¶ 1.)*

## B. The Report values the companies at their debt, not at their worth.

2. The Report values the estate's operating companies "for the debt" rather than at enterprise value. The Special Master has been shopping Damovo at roughly $100 million — its debt — when a contemporaneous, arm's-length expression of interest (Twelve Seas Investment Company III, July 31, 2026) values it at a $400 million enterprise value, with up to approximately $450 million achievable at arm's length. *(Source: Second Motion to Set Aside § II ¶¶ 2–3; Declaration ¶¶ 2–4.)*

3. Debt is not a stand-alone measure of value. A company's enterprise value is determined by its assets, earnings, and cash flows; debt is a claim to be paid

out of that value, not a subtraction from it. Treating the debt figure as the company's worth is not a valuation. *(Source: Second Motion to Set Aside § III ¶ 4; Declaration ¶¶ 10–11.)*

4.      Damovo is exemplary of the value destruction already inflicted on the companies the Special Master sold "for the debt" — Beckett (appraised at approximately $1 billion, sold for approximately $134 million) and Clanwilliam (valued at approximately $880 million in the signed Quadro purchase agreement [Doc. 235 ¶ 32; Doc. 174 ¶ 117; Ex. I3], sold for approximately $450 million). Applying the same premise, the Special Master stands to destroy roughly $300 to $350 million of Damovo's value; the only difference is timing, because as to Damovo the market's proof of the true value is before the Court now, before the loss is locked in.  (Source: Second Motion to Set Aside § III ¶ 5; Declaration ¶ 4.)

## C.      The Report overstates the loss by disregarding mandatory offsets and credits — 18 U.S.C. § 3664(j)(2).

5.      The Report disregards that the American policyholders have been paid in full — more than $157 million distributed to more than 43,000 policyholders — a mandatory credit. *(Source: Second Motion to Set Aside § III ¶ 6; Declaration ¶ 1; Doc. 174 ¶ 120.)*

6.      The Report disregards that the approximately $208 million it alleges remains owing to Northstar, OMNIA, and PBIHL is covered by the Damovo transaction described above. *(Source: Second Motion to Set Aside § III ¶ 6; Declaration ¶¶ 2–3.)*

3

7.     The Report disregards that the approximately $339 million it alleges remains owing to ULICO has been satisfied by ULICO's acceptance of AAPC preferred equity with a par value of $352,906,240 — the very figure the Special Master lists in his own table.  *(Source: Second Motion to Set Aside § III ¶ 6; Declaration ¶ 5; Doc. 245 at 6 (Issue 3).)*

**D.     The Report is not the complete accounting the MVRA requires — 18 U.S.C. § 3664(f)(1)(A).**

8.     The parties that hold the books, records, valuations, and loss data — the North Carolina insurance companies and NHC Holdings, LLC — refused to produce that information and disputed the Special Master's authority, and the Court's authority, to compel it, so the accounting could not be completed on a full record. *(Source: Second Motion to Set Aside § IV ¶ 7; Term Sheet (Ex. ___); Declaration ¶ 12.)*

9.     On Defendant's behalf, his former attorneys and Paladin Management urged the Special Master to push for access to that information, and the Special Master refused to push for it. The Special Master claims the records are not under his control — a claim Defendant disputes, the Special Master having stepped into Defendant's shoes as record owner able to compel production, which he refused — but even taken at his word, the records can be reached only by compulsory process, and the accounting cannot be completed on this record; the Court therefore cannot satisfy 18 U.S.C. § 3664(f)(1)(A) and is powerless to adopt the Report.  *(Source: Declaration ¶ 12; Second Motion to Set Aside § IV ¶¶ 7–8.)*

4

10. Denying Defendant's Rule 17(c) subpoenas while adopting an admittedly incomplete Report violates the MVRA's accounting requirement; without that compulsory process, no complete or final restitution accounting can exist. And requiring the insurance-company victims to produce records of what they received and how those funds were used is not harassment but the accounting the MVRA requires. *(Source: Second Motion to Set Aside § IV ¶ 8; Motion for Issuance of Rule 17(c) Subpoenas (Doc. 248).)*

### E. The Report omits forgone value and a full accounting of dispositions.

11. The Report fails to disclose or account for every sale, offer, or expression of interest that came before the Special Master but that he did not approve, did not pursue, or did not take (such as the Twelve Seas expression of interest for Damovo), together with the price and terms offered and his reasons for declining. *(Source: Declaration ¶ 13; Second Motion to Set Aside § VI ¶ 10(3).)*

12. The Report contains no full and verified accounting of every sale, transfer, or disposition the Special Master made, approved, attempted, or declined — including the Beckett sale — or of all proceeds and all fees paid from the estate. *(Source: Second Motion to Set Aside § VI ¶ 10(3); Motions to Stay (Docs. 172, 190).)*

### F. The Report fixes a loss the Government has not proven — the Government's unmet § 3664(e) burden.

13. Neither the Government nor the Special Master has produced evidence of any loss to the protected victims caused by Defendant. To the contrary, the records filed in support of Defendant's Motion for a Determination That No Restitution Is

Owed, and the accompanying Consolidated Statement of Facts, show his approximately $1 billion first-loss capital contribution and the well-secured character of the affiliated loans when control passed. That a company carries debt is not evidence of loss — debt is the ordinary engine of corporate growth, and at a loan-to-value ratio of roughly 40 to 50 percent it is conservatively secured and reflects value, not loss. Causation is an element the Government must prove by a preponderance, and the Fourth Circuit, applying the direct-and-proximate-harm framework in this very restitution matter, has stated the governing test: restitution reaches a victim only where "directly and proximately harmed," whose harm "closely related to the conduct inherent to the offense, rather than merely tangentially linked." In re Zetteler, No. 26-1749, 2026 WL 1724731, at *2 (4th Cir. June 13, 2026) (per curiam) (quoting In re McNulty, 597 F.3d 344, 352 (6th Cir. 2010)); see 18 U.S.C. § 3771(e)(2)(A). In re Zetteler is the Fourth Circuit's ruling in this very docket, advanced as the governing causation standard for this proceeding. On that standard, causation remains unproven.  (Source: Second Motion to Set Aside § V ¶ 9; Docs. 234, 235; In re Zetteler, No. 26-1749, 2026 WL 1724731, at *2 (4th Cir. June 13, 2026).)

G.    **The Report departs from the MVRA statute, its case law, and the committee notes in the following specific respects.**

The foregoing grounds are reinforced by the following schedule of the specific respects in which the Report departs from the MVRA statute, the case law construing it, and the statute's legislative history. Each entry is supported by the filed text of the Report (Doc. 245).

14. The Report disclaims making the foreseeability finding the MVRA requires. "That it was reasonably foreseeable to the Defendant that his conduct could be harmful is a critical component of the Defendant's criminal intent, which the Special Master has not set out to prove (and does not consider it within the Special Master's charge to prove)." Doc. 245 at 30. Foreseeability is an element of MVRA proximate cause, not an optional inquiry. 18 U.S.C. § 3663A(a)(2); *Hughey v. United States*, 495 U.S. 411 (1990). A report that declines to prove it cannot support a foreseeable-loss finding.

15. The Report abstains from reviewing the intervening conduct that determines causation. Three times: "the Special Master is not well-situated to second guess discretionary decisions made by state court supervised fiduciaries in their business judgment (to the extent doing so falls within the Special Master's duties)." Doc. 245 at 19, 21–22, 25. It also places the public-corruption issues "outside the scope," *id.* at 31, and whether a crime occurred outside the "assignment," *id.* at 29 n.28. Under *Stein* and *Robers* the intervening acts must be evaluated, not avoided.

16. The Report applies standards found nowhere in the MVRA. It asks whether Mr. Lindberg has "convinced the Special Master" (five times: Doc. 245 at 19, 22, 22, 24, 25), whether he offered "compelling evidence" (at 21, 24), "convincing evidence" (at 18), whether an act would "definitively cause" a decline (at 19), and whether he "raise[d] a genuine issue of material fact" (at 31). Five times it finds only that he "bears some responsibility" (at 19, 21–22, 24–25). The statutory test is

7

preponderance, 18 U.S.C. § 3664(e), and the decisionmaker is the Court de novo, § 3664(d)(6).

17. The Report inverts the Government's burden on loss and causation — § 3664(e). Section 3664(e) places "[t]he burden of demonstrating the amount of the loss" on the Government. The Report presents no new evidence, exhibit, affidavit, or testimony, and frames every conclusion as the Defendant's failure of proof. (Note for precision: *Karam*, 201 F.3d at 327 — which the Report cites at 32 — does place the burden on a defendant claiming a particular offset. The burden-inversion argument should therefore be pressed on loss, foreseeability, and causation, and paired on the offsets with the denied-subpoena due-process point.)

18. The Report substitutes generic credit risk for offense-specific foreseeability. "All loans bear a risk of non-payment"; "an inability to pay is always reasonably foreseeable," even for "the most conservative of business loans" and "even loans that are personally guaranteed." Doc. 245 at 30. That reasoning would erase the MVRA's foreseeability limit in every loan case. Foreseeability must be tied to the conduct constituting the offense.

19. The Report makes no findings on intervening or superseding causes — *Stein*; *Robers*. A restitution order entered without findings on the effect and foreseeability of intervening events must be vacated. *United States v. Stein*, 846 F.3d 1135, 1154–56 (11th Cir. 2017); *see Robers v. United States*, 572 U.S. 639, 647–48 (2014) (Sotomayor, J., concurring). The Report cites neither and makes no such findings.

20. The Report misapplies *Robers* and *Ritchie* to shift the burden. It cites *Robers*, 572 U.S. at 644–46, and *Ritchie*, 858 F.3d at 211 ("the burden of showing that a victim delayed unreasonably in selling property (or otherwise neglected it) belongs with the defendant who seeks to avoid being tagged as the 'proximate cause' of the loss in value of that property"). Doc. 245 at 15. Both address a victim's passive delay or neglect in liquidating collateral. Here the fiduciary acted affirmatively, selling a par-payable instrument decades early. Neither case assigns the defendant the burden of disproving affirmative value destruction by the victim's fiduciary.

21. The Report treats "some responsibility" as proximate causation. Five times it concludes only that the Defendant "bears some responsibility for any diminution in value that occurred during the rehabilitation and liquidation processes." Doc. 245 at 19, 22, 25, 28. The MVRA requires that the loss be directly and proximately caused by the offense; partial or attenuated responsibility for a receivership's later decisions is not that. *Lagos v. United States*, 584 U.S. 577 (2018).

22. The Report adds prejudgment interest contrary to the statute and DOJ policy — $263M. Doc. 245 at 14–15 defends interest as "necessary to make the victims whole" and notes the rate is below the contractual, IALA, and applicable federal rates. Rate moderation is not authority. The MVRA does not enumerate interest, and DOJ policy states interest is not eligible for restitution. *Robers*, 572 U.S. at 643; *United States v. Stone*, 866 F.3d 219, 226 (4th Cir. 2017); *United States v. Boccagna*, 450 F.3d 107, 117 (2d Cir. 2006); *United States v. Coats*, 487 B.R. 648 (E.D.N.C. 2013). Reliance

9

on *United States v. Hoyle*, 33 F.3d 415 (4th Cir. 1994), is misplaced (pre-MVRA). *See* note 4, *supra*.

23. The Report invents an atextual realization condition on mandatory credits. Issues 3 and 7 are "Disallow at this Time," with credit only "if and when ULICO realizes this value" and "if and when the escrow balance becomes available." Doc. 245 at 6 & nn.3–4. Section 3664(j)(2) contains no such condition, and deferral produces the double recovery the statute forbids. *United States v. Steele*, 897 F.3d 606, 611 (4th Cir. 2018).

24. The Report denies credits for missing documentation the Government prevents the Defendant from obtaining. The zeros credit is denied because the Defendant "has failed to present sufficient documentation," Doc. 245 at 12–13, and the $9.4M Finnazen/Blue Violet credit on the same basis, *id.* at 13. Mr. Lindberg is in BOP custody and surrendered his companies' books four times; the subpoenas needed to obtain these records were opposed. Denying credits on that record violates due process and cannot satisfy § 3664(e).

25. The Report measures exposure rather than realized loss. It asserts the methodology "includes no risk, only actual loss," because it counts "only sums that the Defendant took from the persons due restitution but has not repaid." Doc. 245 at 32. Unpaid principal on secured, insured, and guaranteed obligations is exposure, not the victims' realized pecuniary loss. *Hughey*, 495 U.S. at 413; *Stone*, 866 F.3d at 226.

26. The Report rests a criminal penalty on a self-generated valuation it calls a "current guess." The Special Master cuts his asset estimate from

$1,162M/\$1,454M/\$1,878M (Doc. 106 at 30) to Redacted (Doc. 245 at 36), based on "illustrative valuation analyses prepared by the financial advisors to NHC Holdings, LLC" that "do not constitute formal valuations or fairness opinions; rather, they reflect a desktop exercise," *id.* at 36 n.31, and describes the result as his "current guess," *id.* at 36–37 — proposing to explain the reduction only under seal, *id.* at 36 n.32. Due process requires a credible, testable valuation.

27. The Report manufactures waiver with no statutory basis. Waiver is asserted at Doc. 245 at 7, 24–25, 28, 29–30, 30, and 32–33, including "by agreeing to the Special Master process" and "by pleading guilty," and that invoking constitutional limits would be "unconscionable." No MVRA provision creates such a waiver; the agreed bifurcation contemplates a later restitution proceeding; a preliminary order is provisional, *Manrique v. United States*, 581 U.S. 116 (2017); *Dolan v. United States*, 560 U.S. 605 (2010); and the Defendant reserved rights in every filing.

28. The Report refuses to resolve complexity in the Defendant's favor — § 3663A(c)(3)(B). Where complex causation issues would complicate sentencing, the Court may decline restitution. The Report resolves every complexity against the Defendant while declining to analyze causation.

29. The Report is untethered from the MVRA's text, committee notes, and case law. In 46 pages it cites two cases (*Robers* and *Ritchie*, both at 15) plus *Karam* (at 32). It cites no MVRA causation authority — no *Hughey*, *Lagos*, *Paroline*, *Stein*, or *Ellingburg* — and does not engage the committee notes, S. Rep. No. 104-179, at 19–20 (1995), *reprinted in* 1996 U.S.C.C.A.N. 924, 932–33, or DOJ restitution policy.

The ignored committee notes confine restitution to harm "under the count or counts for which the offender is convicted" S. Rep. No. 104-179, at 19.

30. The recommendation and the Preliminary Order exceed statutory authority — *Davis*. The Preliminary Order fixed $1.655B; the Initial Report recommended $1.625B; the Second Supplement now recommends $1.616B. Doc. 245 at 44. A restitution order exceeding its statutory source is "no less 'illegal' than a sentence of imprisonment that exceeds the statutory maximum." *United States v. Davis*, 714 F.3d 809, 812 (4th Cir. 2013) (*quoting Broughton-Jones*, 71 F.3d at 1147).

31. The Report converts a promise of "full restitution" into an agreed amount it never was. The factual basis stipulates no loss or restitution amount. An agreement to pay full restitution is not a stipulation that the amount is $1.6 billion, or anything above zero. Hughey, 495 U.S. at 413. To the contrary, the plea obliges payment only of "full restitution, regardless of the resulting loss amount, to all persons directly or indirectly harmed by the defendant's criminal conduct" — language that incorporates the MVRA's causation limit rather than displacing it, because it reaches only those "harmed by the defendant's criminal conduct." The Fourth Circuit, applying the direct-and-proximate-harm framework in this very restitution matter, has stated the governing causation standard in this very case: a person is a compensable victim only where "directly and proximately harmed," and test: restitution reaches harm "closely related to the conduct inherent to the offense, rather than merely tangentially linked." In re Zetteler, No. 26-1749, 2026 WL 1724731, at *2 (4th Cir. June 13, 2026) (per curiam) (quoting In re McNulty, 597 F.3d

344, 352 (6th Cir. 2010)); see 18 U.S.C. § 3771(e)(2)(A). In re Zetteler is the Fourth Circuit's ruling in this very docket, advanced as the governing causation standard for this proceeding. The agreement further stipulates that "'loss' under U.S.S.G. § 2B1.1 may be different from, greater, or lesser than restitution" — confirming that the Guidelines § 2B1.1 loss figure cannot lawfully be imported into the restitution calculation, because restitution under 18 U.S.C. § 3556 is a distinct measure to which the Guidelines "loss" concept does not apply. Plea Agreement ¶¶ 8(a), 10(a) (Doc. 40; Ex. 7(a) hereto). Because restitution runs only to persons harmed by the offense conduct, causation must be proven, not assumed.

**H.     The Government's adoption of the Report does not carry its § 3664(e) burden; adopting a fiduciary-tainted Report inverts the burden and violates the MVRA.**

32.     The Government has adopted the Special Master's Report rather than carrying its own burden, and it has not responded on the merits to any of the foregoing objections. But the Government's adoption of the Report does not solve the problem under the MVRA. Section 3664(e) places the burden of proving the amount of loss, causation, and foreseeability on the Government — not on the Special Master — and the Government cannot discharge that burden by adopting the recommendation of a court-appointed, fee-interested fiduciary whose Report is itself the subject of Defendant's pending Motion to Disqualify (Doc. 269). Adopting a fiduciary-tainted Report imports the taint; it does not supply the proof § 3664(e) requires, and it cannot substitute for the Court's de novo determination, § 3664(d)(6). Nor is adopting the

13

Report a substitute for responding to Defendant's pending motions, which raise multiple independent issues — disqualification of the Special Master, causation, mandatory offsets and credits, valuation, prejudgment interest, and the incomplete MVRA accounting — that the Report does not resolve and the Government has not answered. Nor does the 90-day period of 18 U.S.C. § 3664(d)(5) compel adoption of the Report now: a court that does not meet that deadline "nonetheless retains the power to order restitution," Dolan v. United States, 560 U.S. 605, 608 (2010), so nothing requires the Court to act on the Report before the pending motions are answered and the accounting is complete. The Government's own conduct confirms the point: at sentencing it asked that Mr. Lindberg's cooperation with the restitution process be made "a special condition that, should the Special Master still be working when the defendant goes on supervised release, that a term of the supervised release is to continue cooperating with the Special Master," Sent. Tr. at 70:1–5 — expecting the process to continue for years — yet it now presses the 90-day clock to finalize restitution in a matter of weeks. The Government, having itself delayed its responses to the pending motions, cannot now seek compliance with the 90-day deadline of § 3664(d)(5), which was in any event mooted by the bifurcation process. Defendant respectfully requests that the Court sustain these objections, decline to adopt or act upon the Report, and require the Government to carry its § 3664(e) burden — or treat its failure to do so as resolved against it — before any restitution is fixed. Defendant reserves the right to supplement these objections upon completion of the accounting and the compulsory process the MVRA requires. (Source: This document; Motion to

Disqualify (Doc. 269); Second Motion to Set Aside; Motion to Hold the Report in Abeyance.)

Dated: August 2, 2026.

Respectfully submitted,

/s/ Kenneth N. Barnes
Kenneth N. Barnes
Barnes Legal, PLLC
356 Travel Lite Dr.
Raleigh, NC 27603
919-524-1977
Email: barnesatty@aol.com

Counsel for Greg E. Lindberg[1]

---

[1] Pursuant to LCrR 44.1 and LCvR 83.1 (c)(4), attorney Vivek Ramachandran has not signed this document while his Motion for Pro Hac Vice remains pending.