**EXHIBIT B**

**Term Sheet—Scope of Special Master's Rights and Responsibilities**

The following is intended to build consensus regarding the parameters of the Special Master's limited role within the larger landscape of courts, regulatory agencies, fiduciaries, and other entities dealing with the fallout of Greg E. Lindberg's conglomeration of insurance companies and subsequent dissipation of assets to the detriment of such companies (the "Scheme"). The Special Master intends to use this term sheet as a basis for a motion seeking an order from the U.S. District Court for the Western District of North Carolina (the "Court") clarifying how the Court wants the Special Master to function under these circumstances (the "Clarification Order").

This term sheet is built around the primary duties imposed on the Special Master by the *Order Appointing Special Master*, Case No. 3:23-cr-48 (W.D.N.C. Jan. 23, 2025) (the "Appointment Order"), Decretal Paragraph 3. General references to the Special Master throughout this term sheet are intended to include the Special Master's professionals.

[The Special Master has two jobs:

1. Calculate what each victim is owed in restitution and make a recommendation to the Court, and
2. Facilitate the sale of AAPC through the rights that GEL and GGH have assigned to him.

If the Special Master identifies additional GEL assets that could be used to pay victims, it would be appropriate for the Special Master to seek a court order authorizing him to secure those assets as well.

The Special Master has no role with respect to NHC or the SACs, because GEL has no property rights in these companies. Paragraph 16 in the Special Master Order was meant to clarify this. But even without that paragraph, the Special Master has no rights to property other than those the defendant holds.]

- **Verify and quantify losses suffered by each victim and any offsetting amounts [¶ 3(a)]**
    - No clarification from the Court needed at this time

[The NCICs propose the following process to establish victim losses:

1. The Special Master should ask the Court to set a date by which potential victims provide written notice to the Special Master in which they assert their status as victims of the Scheme, and explain why they are entitled to restitution under federal law. Insurance company victims may assert victim status on behalf of their injured policyholders.
2. The Special Master should ask the Court to set a second date by which potential victims are required to submit to the Special Master their calculation of the restitution they are owed, along with supporting documentation.
3. The Special Master should ask the Court to set a third date by which the Special Master shall submit to the Court, the parties, and any persons or entities who have asserted victim status a report and recommendation regarding (1) who the victims are, (2) to what restitution they are entitled, and (3) priority of payment among victims, if applicable. In preparing his report and recommendation, the Special Master will evaluate the submissions of the potential victims and confer with potential victims and/or the Department of Justice as appropriate.
4. The Special Master should ask the Court to set a fourth date for the parties and any potential victims to submit any objections to the Special Master's report and recommendation. The Court will make a final restitution determination at sentencing or at a separate hearing specifically regarding restitution.

This provides a process for the Special Master to fulfill his duties under 18 U.S.C. § 3664(d)(6), the relevant authorizing statute.]

- **Identify all assets available for liquidation and determine estimated value thereof [¶ 3(b)]**
  - The cooperation obligations set forth in ¶ 8 of the Appointment Order shall be expanded to require Greg E. Lindberg ("GEL"), any Specified Affiliated Company and its subsidiaries (each a "SAC" and, collectively, the "SACs"), and any other entity owned, directly or indirectly, by GEL or otherwise affiliated with GEL (including their respective officers, directors, managers, trustees, auditors, employees, and agents), regardless of whether such entities are controlled by a trust, NHC Holdings, LLC ("NHC"), or otherwise, to: (I) provide the Special Master with reasonable access during normal business hours to all of the corresponding company's books and records, (II) furnish to the Special Master all financial and operating data, reports, projections and other information concerning the business, properties, and personnel as the Special Master may reasonably request, and (III) cooperate fully with any reasonable requests made by the Special Master in connection with the examination of the respective company.

    [The Special Master has no interest in or control over NHC or the SACs except to the extent that GEL or GGH had such interest or control. The NCICs do not consent and object to their borrowers being forced to spend money that could otherwise be used to repay policyholders.

    Moreover, under the Special Master Order the Special Master does not need to do any analysis of whether the Primary Restitution Assets are sufficient to pay back the victims unless he is seeking to liquidate a non-Primary Restitution Asset. We are not aware of any such step being contemplated, so this expensive analysis is unnecessary and premature.]
  - Furthermore, and without limiting any of the foregoing, to the extent (i) NHC, (ii) any insurance companies directly or indirectly owned or controlled, now or formerly, by GEL, or (iii) the special master appointed in the action pending before the Wake County, North Carolina Superior Court as *Southland Nat'l Ins. Co.* et al. *v. Lindberg* et al., No. 19-CVS013093 (the "MOU Action") refuse to furnish to the Special Master any documents and information in their possession reasonably requested by the Special Master, whether relating to loss calculations, asset valuations, or otherwise, the Special Master shall follow appropriate legal processes to obtain such documents or information.

    [The Special Master has no authority to compel the NCICs to provide him with information. The NCICs are subject to complex regulatory schemes governing what information they can share and with whom. If the Special Master is unable to complete a task because of a lack of information, his job is to report that to the Court.]
  - The Special Master shall have no obligation to determine the value of GEL's direct or indirect interest in the insurance companies that are victims of the Scheme for purposes of fulfilling the Special Master's obligations under ¶ 3(b) of the Appointment Order.
  - All non-public information provided to the Special Master and the Special Master's agents shall be treated as confidential and used solely in connection with carrying out the Special Master's responsibilities set forth in the Appointment Order or Clarification Order. The Special Master shall maintain appropriate data security measures and may share such information only (i) with the Court, (ii) with parties as authorized by Court order, (iii) with experts, advisors, and other agents who have agreed to maintain confidentiality, and (iv) as otherwise agreed by the furnishing party. Any public filings containing confidential information shall be made under seal as appropriate. This provision shall not restrict the Special Master's ability to report findings to the Court or carry out other Court-ordered duties.

- **Select method and timetable to liquidate assets with Court approval [¶ 3(c)]; Oversee the liquidation of any available assets with Court approval [¶ 3(d)]; Clear title of assets for transfer to bona-fide buyers [¶ 3(e)]**
  - <u>Method of Liquidating Assets</u>
    - Absent further order of the Court, the Special Master has no right or responsibility to directly liquidate Primary Restitution Assets, other than to:
      - facilitate the liquidation activities taken by: (i) AAPC Holdings, LLC ("AAPC") and NHC through their respective boards and (ii) any trustees controlling a SAC that has not yet been contributed to NHC;

[The NCICs do not consent to the Special Master collaborating with a SAC's trustee to liquidate that SAC without the NHC board's consent. GEL and GGH were legally obligated to contribute the SACs to NHC, an obligation the Special Master now holds due to GEL and GGH's assignment of rights. Allowing the trustee to liquidate a SAC without NHC board consent is in derogation of the MOU judgment, contrary to paragraph 16 of the Special Master Order, and would violate the terms of the restraining order in the MOU litigation.]

- work with NHC to update NHC's corporate governance documents to explicitly permit the liquidation of SACs for the benefit of all "Policyholders" (as defined in the MOU that is the subject of the MOU Action) consistent with the Clarification Order or to otherwise obtain some acknowledgment from NHC that NHC will pursue the liquidation of SACs for the benefit of all such "Policyholders" consistent with the Clarification Order;

[The NHC operating agreement already binds the NHC board to take actions in the best interests of the policyholders. NHC has the right to determine whether those interests involve liquidating the SACs and when to do so.]

- recover, and take any and all actions necessary to recover, any funds that would otherwise be payable to GEL, Global Growth Holdings, Inc., or Global Growth Holdings, LLC (collectively, "GGH"), by any and all SACs or AAPC, directly or indirectly;

[To the extent that the Special Master is trying to recoup the fraudulent "management fees" and other sham obligations that GEL was using to extract funds from the SACs, the NCICs do not agree. Moreover, the Special Master only has the interests in GGH that GEL has assigned to him.]

- work with the special master appointed in the MOU Action to facilitate the contribution of all SACs to NHC for subsequent liquidation, absent a compelling reason not to contribute a particular SAC to NHC, including, without limitation, by (if the Special Master deems appropriate) facilitating the creation of a trust wherein the SACs would form the *res* of the trust and NHC would be the beneficiary;

[As noted above, only the NHC board is authorized to make decisions regarding liquidation of the SACs. The NCICs do not consent to the trust concept identified above and reserve the right to respond to this idea with the benefit of more information.]

- file a notice with the Court summarizing any proposed sale—or other transaction disposing of substantially all assets—of any Primary Restitution Asset, which shall not require any confirmatory Court order to proceed, *provided, however*, that, in the event a proposed purchaser of assets or the Special Master prefers to secure an order from the Court approving the corresponding transaction, the Special Master may so petition the Court for entry of an order approving the transaction; and

[The Special Master would have no role in the sale of any SAC.]

- report to the Court on the status of (i) the contribution of SACs to NHC; and (ii) the liquidation efforts of NHC, AAPC, and any SACs that have not been contributed to NHC.

[Same note as above regarding the NHC board's exclusive authority to determine whether or when to sell a SAC.]

- Timetable of Liquidating Assets
  - The Special Master shall work with NHC's and AAPC's management to develop a plan for disposing of Primary Restitution Assets in a manner designed to maximize and expedite victim recoveries, taking into account the particular business operations, financial affairs, and other circumstances of each particular entity to be monetized.

  [The Special Master has no role in NHC's plan to manage or sell the SACs.]

  - In the event the Special Master determines that, in light of the totality of the circumstances, insufficient steps have been taken toward initiating the liquidation plan for one or more particular SACs within six (6) months of entry of the Clarification Order, the Special Master shall report the same to the Court and seek further instructions from the Court.

  [The Special Master has no authority to direct NHC's actions.]

- **Fashion proposed restitution order [¶ 3(f)]**
  - No clarification from the Court needed at this time

    [See the note above regarding a process for creating this order. This should be the Special Master's first order of business. We need to know what the restitution obligation looks like to make informed decisions about the assets at issue.]

- **Apportion available funds among victims [¶ 3(g)]; Propose an apportionment methodology [¶ 3(g)]; Receive and distribute restitution payments to victims [¶ 3(h)]**
  - Court Determination of Victim Restitution Apportionment Methodology
    - The Special Master shall propose for the Court's consideration a method of apportioning funds recovered by the Special Master for the benefit of victims, giving advance notice to all potential institutional victims identified by the Special Master.

    [See proposed process above.]

    - The Special Master shall propose an apportionment methodology that: (i) treats all similarly-situated victims fairly in accordance with applicable restitution laws; (ii) prioritizes payments to individual policyholder victims over those to institutional victims; and (iii) does not honor payment priorities established by GEL; *provided, however*, that the Special Master's recommendation shall provide for ULICO's preferred equity in AAPC being satisfied in full prior to AAPC's net sale proceeds being turned over to the Special Master, subject to such payment(s) to ULICO being duly accounted for in connection with any victim distributions made by the Special Master.

    [No objection to this. It would be appropriate to recalculate ULICO's share of further restitution distributions after it has been paid out on its preferred equity.]

  - Distribution Process
    - Upon the liquidation of AAPC or any SAC, the proceeds generated from such liquidation shall be immediately turned over to the Special Master, net of the following items (the result being termed "Net Liquidation Proceeds"):

    [The Special Master has no role with respect to the sale of any SAC and is not entitled to the proceeds of such sale—because GEL would not be entitled to the proceeds.]

      - (i) customary closing costs and other costs necessary to the liquidation;

- (ii) all arms'-length liabilities owed to third parties unaffiliated with GEL incurred by the applicable operating company in exchange for reasonably equivalent value (not including debts for losses or damages arising out of the Scheme);
- (iii) all other senior or equal-priority equity interests in the applicable operating company held by third parties unaffiliated with GEL (not including interests given to satisfy losses or damages arising out of the Scheme, in whole or in part, with the sole exception being ULICO's preferred equity in AAPC);
- (iv) all outstanding reasonable and necessary liabilities and expenses incurred by NHC (except in the event of AAPC's liquidation); and
- (v) funding or replenishing a reasonable operating reserve for NHC, in whole or in part (except in the event of AAPC's liquidation).

▪ On or before the 30th day following the later of (A) the Special Master's receipt of funds generated by the liquidation of a SAC or AAPC or (B) the entry of a Court Order approving a victim restitution apportionment methodology, the Special Master shall file a motion with the Court seeking to distribute all funds collected, less and excepting any outstanding administrative expenses incurred by the Special Master, Court-approved fees and expenses incurred by GEL's criminal defense counsel, and a reasonable administrative expense reserve for the Special Master's future activities pursuant to the Appointment Order and Clarification Order.

[Again, the Special Master would never be in receipt of the proceeds of the sale of a SAC.]

▪ The Special Master shall move the Court to enjoin any and all third parties receiving actual notice of the Clarification Order from, absent leave of the Court, seeking recovery for losses or damages arising out of the Scheme from the Primary Restitution Assets, including any SACs or intermediary companies in the chain of ownership between the SACs and GGH and/or GEL, or from otherwise interfering with the Special Master's receipt of the Net Liquidation Proceeds.

[With regard to the above and the below, we are not aware of authority that would allow the Court to block otherwise valid claims from third parties. The normal answer to this problem is for the government to forfeit GEL's interest in property, which gives it a property interest that would predate most third parties.]

▪ The Special Master shall move the Court to either: (a) impose a lien against the Primary Restitution Assets—including, without limitation, GGH's equity interests in any SACs or intermediary companies in the chain of ownership between the SACs and GGH and/or GEL—in the preliminary amount of $3,000,000,000.00 (subject to adjustment upon the establishment of a final, aggregate victim loss amount), enforceable by the Special Master pursuant to the Federal Debt Collection Procedures Act or otherwise to the same extent the United States government may enforce a federal tax lien; or, in the alternative, (b) issue one or more writ(s) of attachment or garnishment against the Primary Restitution Assets—including, without limitation, GGH's equity interests in any SACs or intermediary companies in the chain of ownership between the SACs and GGH and/or GEL—in the preliminary amount of $3,000,000,000.00 (subject to adjustment upon the establishment of a final, aggregate victim loss amount), pursuant to 28 U.S.C. §§ 3102 and 3104.

[See comment immediately above]

- **Cooperate and coordinate with any receivers previously appointed over assets available for the benefit of victims, including seeking the modification of any existing orders if necessary [¶ 3(i) (¶ 16 also implicated)]**
  - The Special Master shall continue to comply with all existing federal or state court orders, except to the extent in conflict with the Clarification Order or the Appointment Order, and may seek modification(s) from the corresponding court of any existing federal or state court orders that the Special Master deems in conflict with the Clarification Order or the Appointment Order.
    [We are not aware of authority for the Special Master to do so.]
  - The Special Master shall alert the Court of any future federal or state court order that may interfere with the Special Master's right to receive the Net Liquidation Proceeds and obligation to distribute funds derived from the Primary Restitution Assets pursuant to the apportionment methodology ultimately established by the Court, including, without limitation, any orders entered in the MOU Action or in *ULICO v. Lindberg*, 1:20-CV-681 (M.D.N.C.), and seek further instructions or direction from the Court regarding the same.

    [The Special Master does not have the right to receive proceeds from NHC or SACs.]
  - Without limiting the foregoing, the Special Master shall work together with the parties to the MOU Action to seek a modification of the Order of that court entered on March 14, 2023 in order to permit the proceeds generated from the sale of the "Clanwilliam group of companies" to be disbursed either: (a) consistent with the Clarification Order; or (b) pursuant to some other methodology mutually acceptable to the Special Master and such parties.

    [The NCICs do not agree to seek the modification of the existing order.]

- **Retain professionals [¶ 3(j)]**
  - No clarification from the Court needed at this time

- **Provide periodic reports to the Court [¶ 3(k)]**
  - No clarification from the Court needed at this time

- **Pay Defendant's legal fees approved by the Court [¶ 3(l)]**
  - No clarification from the Court needed at this time