UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GREG E. LINDBERG,<br><br>*Defendant*. | No. 5:19-CR-22-MOC<br><br>No. 3:23-CR-48-MOC |

**CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANT'S "UPDATES"**

Defendant's latest round of filings[1] purport to "update" his Motion for Reconsideration (Doc. 347) of the Court's limited Order of August 31, 2026 and various other previous filings (Objections to Special Master's Second Supplement (Doc. 281); Motion to Stay (Doc. 320); Motion to Compel the Government (Doc. 331); and Motion to Compel Special master (Doc. 332)) based on "new matter." Contrary to his claim, nearly all his arguments are redundant of his past arguments and the purported facts upon which they are based are not new.[2] The only things new about Defendant's recent filings are (i) his decision to divulge attorney-client communications and waive any privilege over his communications with former counsel about forfeiture issues;[3] (ii) his stylistic

---

[1] Docs. 355 through 360.

[2] Defendant's current counsel appears to have been involved in this matter prior to Defendant's sentencing (indeed he acknowledged attending Defendant's sentencing hearing). To the extent that Defendant's current counsel failed to review the Court's docket or obtain information from Defendant's previous counsel earlier, it does not render such information "new."

[3] *See* Doc. 360-1 ¶¶ 27-35 (describing the content of conversations Defendant claims to have had with his former counsel about communications with the United States).

decision to begin referring to the Special Master as "Special Master/Magistrate;" and (iii) his baseless claim that he should be resentenced for which he provides no legal support.

Regarding his resentencing request, Defendant's filings complain of various direct communications he contends the Special Master had with the United States and with other interested third parties. As set forth in the United States' Response in Opposition to Defendant's Motion to Compel (Doc. 344), there was and is nothing inappropriate with any such communications, which were authorized by the Special Master Order (Doc. 56 ¶ 5). This is evident by the clear language of the Order as well as the fact that such direct communications were had throughout the entire process by Defendant's counsel as well as those of the United States and were disclosed to the Court in numerous filings. Defendant ignores these facts because the truth destroys his arguments. For example, Defendant makes much of billing entries purportedly describing conversations in which the Special Master discussed "sentencing issues" with the United States, claiming that such communications must have been about "determining Defendant's custodial sentence" while ignoring the obvious fact that restitution issues were likely to be, and in fact were, addressed at the sentencing hearing. (Doc. 356 at 30-31). Moreover, Defendant conveniently omits any reference to his counsel's direct communications with the Special Master in the days leading up to, and after, the sentencing hearing on May 26, 2026. (*See, e.g.,* Doc. 336-2 at 18 (Katten billing records reflecting a May 13, 2026 entry "prepare for and meet with M. Martinez, J. Grier, and J. Wyatt on the sentencing hearing."), 21 (Katten billing records reflecting an actual "eve of sentencing hearing" communication on May 25, 2026 – "call and correspondence with SM regarding the Waiver requested"), 22

(Katten billing records reflecting multiple calls with Financial Advisor on May 27 and 28, 2026)).

Similarly, Defendant complains that "the prosecution shaped the Special Master/Magistrate's own powers in private" before the Special Master was appointed on January 23, 2025. (356 at 34). Yet, Defendant ignores identical communications between his own counsel and the prospective Special Master. (*See, e.g.*, Doc. 75-1 at 65 (Katten billing entry for November 27, 2024, reflecting Defendant's counsel's "Work on special master order with proposed special masters S. Avila of Paladin as well as … J. Grier and M. Martinez"), 67 (Katten billing entry for December 5, 2024, reflecting Defendant's counsel's "attend[ing] follow-up conference with proposed special masters Joe, Michael, and Scott"), 68 (Katten billing entry for December 9, 2024, reflecting Defendant's counsel's "follow-up with proposed special masters regarding potential admissions or additions needed"), 70 (Katten billing entry for December 18, 2024, reflecting Defendant's counsel's "follow-up with proposed administrator/special master regarding edits")).

In short, Defendant is once again attempting to rewrite history. As the Special Master previously explained, he and his team have had countless direct communications with the Defendant, with interested third parties, and with the United States from the beginning of his involvement in this matter. (*See* Doc. 343 ¶ 8). Indeed, "the Special Master and Paladin had more one-on-one communications with Defendant's counsel than any other person or group involved in this Case, including the government." (*Id.* at ¶ 10). Defendant's counsel, including his current counsel, engaged in such communications until Defendant's current counsel decided to argue that everyone else's

interpretation of the Special Master Order, including his predecessors' and this Court's, was wrong, and, as such, those direct communications were improper. Defendant's flooding of the docket with redundant filings advancing the same specious claims of impropriety is nothing more than an eleventh-hour effort to recast the history of this case.

Finally, Defendant omits from his "updates" a discussion of the recent lawsuits he has brought in various federal courts against one of the Primary Restitution Assets (AAPC);[4] the Commissioner of Insurance of the State of North Carolina, the Special Deputy Rehabilitator of Lindberg's North Caroliana Insurance Companies, the law firm that represents the Special Deputy Rehabilitator, and the CEO of NHC Holdings ("NHC") – another Primary Restitution Assets.;[5] and one of the Specified Affiliated Companies (Damovo Group) of NHC and related individuals and entities.[6] These lawsuits, which, among other things, (i) allege RICO violations, including a RICO "Enterprise [that] has operated through the federal restitution proceeding itself;"[7] (ii) seek injunctions preventing the sale or disposition of the assets duplicative to requests made in this case; (iii) demand hundreds of millions of dollars of "compensatory damages," and (iv) make identical arguments to those he raises in this court and attach hundreds of pages of filings from this case, represent continued harassment by Defendant and attempts to circumvent this Court's jurisdiction.

---

[4] *Lindberg v. AAPC Holdings, LLC, et al.*, 2:26-cv-00881 (D. Utah Sept. 23, 2026).

[5] *Lindberg v. Causey, et al.*, 1:26-cv-07938 (S.D.N.Y. Sept. 11, 2026).

[6] *Lindberg v. Wilson*, *et al.*, 1:26-cv-03939 (D. Col. Aug. 26, 2026).

[7] *See* Doc. 1 in *Lindberg v. Causey, et al.*, 1:26-cv-07938 (S.D.N.Y. Sept. 11, 2026) at ¶ 6.

Last month, the District Court of Colorado expressly found in its order denying with prejudice Defendant's motion for temporary restraining order and preliminary injunction enjoying any sale or transfer of Damovo[8] that Defendant's lawsuit "is an attempted collateral attack on proceedings related to the prosecution and conviction" of Defendant in this court. It further noted that Defendant has been "filing increasingly specious challenges to the special master's actions" in this case.[9]

Defendant's filings have indeed become increasingly more specious and improper, as have his communications with counsel,[10] and the United States respectfully requests that the Court put appropriate limits on any future filings. The United States has already addressed Defendant's claims regarding the constitutionality of the Special Master process and Defendant's claims about the purported impropriety of the Special Master having direct communications with each of the parties and with interested third parties as explicitly authorized by the Special Master Order. Moreover, the United States has addressed the remaining restitution issues pending before the Court. If the Court requires additional information on any of these topics, the United States respectfully requests that it set a hearing. If not, the United States respectfully requests that the Court rule on the outstanding motions and bring this matter to a conclusion.

---

[8] *See* Doc. 13 in *Lindberg v. Wilson, et al.*, 1:26-cv-03939 (Sept. 21, 2026) at 1-2. (Attached as Exhibit A).

[9] True to form, Defendant promptly filed for reconsideration of this Order, only to have his pleading stricken. *See* Doc. 18 in *Lindberg v. Wilson, et al.*, 1:26-cv-03939 (Sept. 30, 2026).

[10] For example, in addition to his recent cease-and-desist letters, a recent email from Defendant's current counsel demanded that the United States "disclose the bonus you and your colleagues were paid in return for the plea bargain" and questioned whether said mythical year-end bonus was "a percentage of the plea."

RESPECTFULLY SUBMITTED, this 13th day of October, 2026.


DALLAS J.E. KAPLAN
ATTORNEY FOR THE UNITED STATES[11]

LORINDA I. LARYEA
CHIEF
WHITE COLLAR AND CORPORATE ENFORCEMENT SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

***/s/ Daniel Ryan***
Daniel Ryan
Dana Washington
Assistant United States Attorneys
United States Attorney's Office
Western District of North Carolina
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
Telephone: (704) 344-3222
daniel.ryan@usdoj.gov

***/s/ Lyndie M. Freeman***
Lyndie M. Freeman
Trial Attorney
Fraud Section, Criminal Division
United States Department of Justice
1400 New York Avenue
Washington, DC 20005
Telephone: 202-616-5315
lyndie.freeman@usdoj.gov


[11] Acting under authority conferred by 28 U.S.C. § 515.