# EXHIBIT F

E-mail chain, "Lindberg Draft Sentencing Memo," May 2 – May 12, 2026, among defense counsel (J. Wyatt; Katten), AUSA Dan Ryan, AUSA D. Washington, Trial Attorney L. Freeman, AUSA B. Bain-Creed, the Special Master (J. Grier), his counsel (M. Martinez, B. Rhodes), and Paladin (S. Avila, D. Harer). Source: former counsel's e-mail export. The attachment names and sizes are shown as they appear in the export. The defense's draft sentencing memorandum, "(2026 5-1) Revised Sent Memo USAO SM Copy.docx," sent to the Government and the Special Master's team together on May 2, 2026, is omitted. The pages of the Special Master's counsel's commented copy (returned to the same group on May 11, 2026) that carry his comments follow the e-mail chain.

**From:** James Wyatt <JWyatt@wyattlaw.net>
**Sent:** Tuesday, May 12, 2026, 11:40 a.m. (EDT)
**To:** Michael Martinez <mmartinez@grierlaw.com>, "Ryan, Daniel (USANCW)" <Daniel.Ryan@usdoj.gov>, "Washington, Dana (USANCW)" <Dana.Washington@usdoj.gov>, "Freeman, Lyndie (CRM)" <Lyndie.Freeman@usdoj.gov>, "Bain-Creed, Benjamin (USANCW)" <Benjamin.Bain-Creed@usdoj.gov>, Joe Grier <jgrier@grierlaw.com>, Benjamin Rhodes <brhodes@grierlaw.com>, Scott Avila <savila@paladinmgmt.com>, Don Harer <dharer@paladinmgmt.com>
**Cc:** "McCarthy, Brandon N." <brandon.mccarthy@katten.com>, "Meyer, Ryan J." <ryan.meyer@katten.com>, Robert Blake <RBlake@wyattlaw.net>, "Smith, Robert T." <robert.smith1@katten.com>
**Subject:** RE: Lindberg Draft Sentencing Memo

---

We incorporated most of your comments and there will be no reference to AAPC or its valuation.

We do not intend to file any portion of this brief under seal.

Thanks for taking the time to review and comment.

James

From: Michael Martinez <mmartinez@grierlaw.com>
Sent: Monday, May 11, 2026 7:20 PM
To: Ryan, Daniel (USANCW) <Daniel.Ryan@usdoj.gov>; James Wyatt <JWyatt@wyattlaw.net>; Washington, Dana (USANCW) <Dana.Washington@usdoj.gov>; Freeman, Lyndie (CRM) <Lyndie.Freeman@usdoj.gov>; Bain-Creed, Benjamin (USANCW) <Benjamin.Bain-Creed@usdoj.gov>; Joe Grier <jgrier@grierlaw.com>; Benjamin Rhodes <brhodes@grierlaw.com>; Scott Avila <savila@paladinmgmt.com>; Don Harer <dharer@paladinmgmt.com>
Cc: McCarthy, Brandon N. <brandon.mccarthy@katten.com>; Meyer, Ryan J. <ryan.meyer@katten.com>; Robert Blake <RBlake@wyattlaw.net>; Smith, Robert T. <robert.smith1@katten.com>
Subject: RE: Lindberg Draft Sentencing Memo
Attachments: Revised Sent Memo USAO SM Copy - MLM COMMENTS, 1.docx (107 KB)

I've added comments addressing accuracy and confidentiality to the attached Word file.  To sum up, I'd prefer if the AAPC stuff be redacted or the entire document be filed under seal.


Michael L. Martinez

Grier Wright Martinez PA

521 E. Morehead St., Ste. 440, Charlotte, NC 28202

<tel:704-332-0209> (704) 332-0209 (direct dial)

www.grierlaw.com

mmartinez@grierlaw.com


From: Ryan, Daniel (USANCW) <Daniel.Ryan@usdoj.gov >
Sent: Friday, May 8, 2026 4:01 PM
To: James Wyatt <JWyatt@wyattlaw.net >; Washington, Dana (USANCW) <Dana.Washington@usdoj.gov >; Freeman, Lyndie (CRM) <Lyndie.Freeman@usdoj.gov >; Bain-Creed, Benjamin (USANCW) <Benjamin.Bain-Creed@usdoj.gov >; Michael Martinez <mmartinez@grierlaw.com >; Joe Grier <jgrier@grierlaw.com >; Benjamin Rhodes <brhodes@grierlaw.com >; Scott Avila <savila@paladinmgmt.com >; Don Harer <dharer@paladinmgmt.com >

Cc: McCarthy, Brandon N. <brandon.mccarthy@katten.com >; Meyer, Ryan J. <ryan.meyer@katten.com >; Robert Blake <RBlake@wyattlaw.net >; Smith, Robert T. <robert.smith1@katten.com >
Subject: RE: Lindberg Draft Sentencing Memo

Caution: This message is from an external sender.

James,

I'll defer to the Special Master and Paladin on redactions and the accuracy of the various financial numbers, etc. With respect to the remaining facts, while I might take issue with the degree of "voluntariness" of some of Mr. Lindberg's actions, I did not notice anything materially inaccurate.

Have a good weekend,

Dan

From: James Wyatt <JWyatt@wyattlaw.net >
Sent: Saturday, May 2, 2026 6:48 PM
To: Ryan, Daniel (USANCW) <Daniel.Ryan@usdoj.gov >; Washington, Dana (USANCW) <Dana.Washington@usdoj.gov >; Freeman, Lyndie (CRM) <Lyndie.Freeman@usdoj.gov >; Bain-Creed, Benjamin (USANCW) <Benjamin.Bain-Creed@usdoj.gov >; Michael Martinez <mmartinez@grierlaw.com >; Joseph W. Grier (jgrier@grierlaw.com ) <jgrier@grierlaw.com >; Benjamin Rhodes <brhodes@grierlaw.com >; Scott Avila <savila@paladinmgmt.com >; Don Harer <dharer@paladinmgmt.com >
Cc: McCarthy, Brandon N. <brandon.mccarthy@katten.com >; Meyer, Ryan J. <ryan.meyer@katten.com >; Robert Blake <RBlake@wyattlaw.net >; Smith, Robert T. <robert.smith1@katten.com >
Subject: [EXTERNAL] Lindberg Draft Sentencing Memo
Attachments: (2026 5-1) Revised Sent Memo USAO SM Copy.docx (103 KB)

All – attached is a draft of Mr. Lindberg's sentencing memo for your review. We would like to know if any inaccurate or objectionable information is contained in this memo. Additionally, let us know your position on whether any parts of it should be redacted and subject to a motion to seal.

This is a confidential document not to be shared with any outside party other than Paladin.

If possible, please get us any comments before Thursday's call.

Thanks,

James

James F. Wyatt, III

402 W. Trade Street, Suite 101

Charlotte, NC 28202

(704) 331-0767

(704) 331-0773 (fax)

jwyatt@wyattlaw.net

www.wyattandblakelaw.net

The preceding e-mail message contains information that is confidential, may be protected by the attorney/client or other applicable privileges, and may constitute non-public information. It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender at (704) 331-0767. Unauthorized use, dissemination, distribution, or reproduction of this message is strictly

prohibited and may be unlawful.

Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast Ltd, an innovator in Software as a Service (SaaS) for business. Providing a safer and more useful place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

[Attachments omitted.]

# EXHIBIT F (continued)

The Special Master's counsel's comments on the defense's draft sentencing memorandum, as returned to the Government and the Special Master's team on May 11, 2026 (attachment "Revised Sent Memo USAO SM Copy - MLM COMMENTS, 1.docx"). The eight pages that carry margin comments are reproduced as images, with the commented text highlighted; the file contains twelve comments by Michael L. Martinez and no tracked changes. Pages without comments are omitted. Comment time stamps are in UTC.

Political Contribution and Financial cases run concurrently. In addition, the Government does not object to credit for time served being applied to the consolidated sentence.

The sentence requested by Mr. Lindberg properly reflects the seriousness of the underlying offenses while recognizing the extraordinary restitution and cooperation efforts Mr. Lindberg has undertaken in conjunction with the Court-appointed Special Master before and since the entry of his plea in the Financial case. These efforts include, but are not limited to: (1) promptly executing Assignment Agreements of his interests in the Primary Restitution Assets – AAPC Holdings LLC and NHC Holdings LLC (which includes Clanwilliam)[1] – to the Special Master; (2) voluntarily relinquishing a $40 million tax escrow to facilitate the Clanwilliam sale through the Special Master process (thereby allowing $157,000,000.00 in restitution to flow directly to individual North Carolina insurance company policyholders); (3) executing a number of releases of trustees and other parties, and dismissing several lawsuits, in order to remove roadblocks to the Clanwilliam sale; (4) withdrawing notices of appeal in related state court civil proceedings during plea negotiations in the Financial case, which enabled state insurance guaranty associations to begin immediately making over $1.8 billion in payments to policyholders in 2024 (the appeals placed on hold their ability to do this); (5) assisting the Special Master in selling Clanwilliam with this sale providing net proceeds of $348,723,359.44, of which $314,358,186.68 was immediately available

I wouldn't describe his efforts as extraordinary (except to the extent the circumstances are extraordinary), but I'm not signing this pleading and I understand why you want to use this word.
Michael Martinez
05/11/2026 10:44

Does AAPC's name need to be included? Can this be filed under seal?
Michael Martinez
05/11/2026 10:46

---

[1] The Primary Restitution Assets include AAPC Holdings LLC (American Academy of Professional Coders), a company that provides Medicare and Medicaid coding training and certification, and NHC Holdings LLC ("NHC"), which was created in 2019 as a part of the Memorandum of Understanding ("MOU") reached between Mr. Lindberg, his operating companies, his insurance companies, and the North Carolina Department of Insurance. Pursuant to the MOU, Mr. Lindberg transferred over 300 individual Specified Affiliated Companies ("SACs") into NHC, including Clanwilliam, a company that provides innovative healthcare management, software, and clinical system services. Clanwilliam was sold by the Special Master, generating net proceeds of $348,723,359.44. *See infra* at 13. AAPC and Clanwilliam were purchased by Mr. Lindberg as affiliated investments for relatively small amounts ($40 million each) in 2006 and 2014, respectively, and then grown into billion-dollar companies by Mr. Lindberg until their sale. *See infra* at 11-12.

for restitution;[2] (6) executing assignments and releases to enable the sale of AAPC, which is to be sold at a future date; (7) providing tax refund checks in the amounts of $570,492.27 to the Special Master; (8) consenting to a motion for a protective order regarding the disclosure of excess policyholder data that authorized the guaranty associations and insurance companies to share their policyholder level data with the Special Master, which was necessary to facilitate the $157 million in restitution payments made by the Special Master in December 2025 to all 43,000 North Carolina policyholders who had not yet been paid the full value of their individual insurance policies; (9) voluntarily providing Mr. Lindberg's personal tax returns to the Special Master in October of 2025 in order to provide information needed by the Special Master to analyze certain transactional tax issues related to the sale of AAPC and NHC entities; (10) working with the Special Master and its Financial Advisor, Paladin, to address numerous tax issues to expedite NHC sales and increase the value of the NHC assets (thereby increasing the restitution value that can be monetized from those entities); (11) cooperating in connection with the sale of a SAC known as the Beckett Group; and (12) providing certain substantial payments to the relevant insurance companies before the entry of his plea in the Financial Fraud case, as outlined in the Special Master's Report and Recommendation Regarding Restitution (Dkt. No. 106 at p. 23).

Off the top of my head, I don't know what this refers to independent of #1. That said, I might have a different release thing for Lindberg to sign concerning AAPC instead of the one I circulated last Fall. Stay tuned on that.
Michael Martinez
05/11/2026 10:45

These efforts, along with the hard work of the Special Master and his financial advisor, have resulted in **the total restitution paid in this case being among the largest amounts of restitution ever recovered in the United States**.

A sentence of XX months (with credit for time served) is longer than, but does not create an unjustified gulf between, the sentences handed down to co-defendants in both the Political

[2] Subsequent to the Court's Order authorizing the Clanwilliam sale, the Special Master brokered an agreement among the parties to reserve $20 million in escrow to satisfy potential Irish tax liabilities arising from the sale that NHC only identified immediately before closing. If the Irish tax liabilities are ultimately less than $20 million, then any remaining funds will be released for restitution.

2022; he was then released on bond pending re-trial. Second, following his guilty plea in the Financial case, Mr. Lindberg voluntarily surrendered to the U.S. Marshals Service and began serving his anticipated sentences in both cases on November 12, 2024. Since that time, Mr. Lindberg has been incarcerated in the Gaston County Jail and the Grayson County Detention Center in Kentucky. As of the day of his sentencing hearing, Mr. Lindberg will have served 561 days in the Gaston County Jail and the Kentucky detention facility.

In total, as of the date of sentencing, Mr. Lindberg will have served approximately 1,194 days. The Government has agreed in the plea agreement that it will not object to the Court recommending that the Bureau of Prisons apply credit for all time served by Mr. Lindberg to both cases in a consolidated sentence. Fin. Case. Dkt. Entry No. 40 at Para. 8(d)(ii). Mr. Lindberg also respectfully requests that the Court hold that, for the purposes of the sentence imposed in these cases and for the purposes of 18 U.S.C. § 3585(a), Mr. Lindberg arrived voluntarily at the Gaston County Jail to commence service of a portion of his sentence on November 12, 2024, and that the Gaston County Jail and the Grayson County Detention Facility shall be considered official detention facilities where his sentence is to be served.

**C. The Special Master and Restitution Payments**

On January 23, 2025, after the entry of Mr. Lindberg's plea in the Financial case, the Court granted a joint motion by Mr. Lindberg and the Government to appoint a Special Master to, *inter alia*, determine who are bona fide victims in these cases; determine the amount of restitution owed by Mr. Lindberg; identify assets available for liquidation for the benefit of victims; liquidate these assets; and make payment of available funds to victims. Fin. Dkt. Entry No. 56. The Court appointed Joseph Grier of Grier Wright Martinez PA as Special Master and Scott Avila of Paladin Management as the Special Master's Financial Advisor.[4]

Off the top of my head, I think Paladin was appointed, not Scott.
Michael Martinez
05/11/2026 10:48

[4] Mr. Grier retained his partner, Michael Martinez, to serve as counsel to the Special Master.

The Special Master Order provides that, "[t]o assist in meeting his restitution obligations, Defendant [Mr. Lindberg] has agreed to take all necessary and reasonable steps in his power to secure in the exclusive possession and control of the [S]pecial [M]aster, … within 21 days of the entry of this Order, all of Defendant's, Global Growth Holdings, Inc.'s, and Global Growth Holdings, LLC's rights and interests, whether held directly or indirectly, in [the Primary Restitution Assets]." *Id*. As noted, the Primary Restitution Assets consist of AAPC, which provides medical coding training and certification on an international basis and has been valued as worth at least $2.7 billion; and NHC Holdings LLC, which is the parent company of over 300 SACs (the vast majority of which are operating companies generating ongoing revenue). NHC was created as the result of the MOU, which was entered in 2019 among Mr. Lindberg, his operating companies, insurers, and their respective regulators. Most significantly for the restitution process, these SACs include Clanwilliam, a company that provides healthcare products and services focusing on IT management systems, software, connectivity and clinical systems. Clanwilliam is a global player in the healthcare industry, operating in 20 countries with 1.5 million clinical users and $90 million in annual revenue. Clanwilliam was sold by the Special Master in September 2025, generating net proceeds of $348,723,359.44, with $314,358,186.88 already disbursed as restitution payments.[5]

I'm sure it is going to hurt AAPC's sale efforts to include valuations. At a minimum, we certainly would never receive any offers above $2.7 billion. If this level of specificity is needed, then maybe you can file it under seal.
Michael Martinez
05/11/2026 10:51

I don't think it's fair to say the SM sold Clanwilliam. We went along with it, but we didn't orchestrate it.
Michael Martinez
05/11/2026 10:52

Mr. Lindberg purchased Clanwilliam and AAPC for a fraction of their current value and grew them into billion-dollar companies. Mr. Lindberg acquired AAPC in 2006 for $40 million and Clanwilliam in 2014 for €45 million. He built them into companies valued at $2.7 billion and

[5] As discussed in note 2, $20 million of the Clanwilliam proceeds have been set aside in an escrow account to be utilized to satisfy any potential Irish tax liabilities. To the extent the liabilities are less than $20 million, the remaining funds will be disbursed as restitution. Also, pursuant to the Court's Order Approving the Clanwilliam Sale (Dkt. Entry No. 68), 4.4438% of the sale proceeds were set aside as an administrative reserve to pay the expenses of the Special Master, Financial Advisor, and Mr. Lindberg's defense counsel.

$800 million, respectively, by 2024. They increased in value because of a disciplined investment model that focused on strong recurring revenue, low capital expenditure requirements, and high barriers to entry, characteristics perfectly suited to insurance fund investments.

I don't care so much about Clanwilliam because that deal is done, but referencing AAPC's value is harmful (and, frankly, misleading without netting out the liabilities that GEL also placed on AAPC that had nothing to do with AAPC). Please consider redacting this part or filing the whole thing under seal.
Michael Martinez
05/11/2026 10:55

I think this is misleading. But, again, I'm not signing off on this.
Michael Martinez
05/11/2026 10:56

In 2006, AAPC was a medical coding company. It had a solid foundation with 55,000 members and 39,000 coders in physician-based settings. Mr. Lindberg saw the potential to develop this company into an internationally focused company specializing in coding across the entire revenue-cycle of healthcare institutions – including not only physician-based coding but hospital inpatient coding, specialty coding certifications, core certifications, medical billing, auditing and compliance.

In 2023, AAPC acquired Semantic Health and complimented its business offerings with an advanced healthcare technology platform. As a result of this expansion, AAPC expanded from 55,000 members to over 274,000; currently operates in 43 countries; grew revenue/EBIDTA from $4.8 million to over $135 million; and increased the valuation of AAPC from $40 million to over $2.7 billion.

Heartburn here, too. Sealing/redacting would be good.
Michael Martinez
05/11/2026 10:58

Clanwilliam (originally Helix Health) had built a solid position in Irish and British healthcare management software with 11 million euros in revenue and 100 employees when it was acquired by Mr. Lindberg in 2014. Mr. Lindberg then expanded it into a global healthcare IT platform by acquiring 19 strategically placed companies, including Healthlink in 2017 (the leading Australian healthcare IT network). Clanwilliam eventually developed IT systems and solutions in five key healthcare segments: practice management systems, pharmacy systems, acute care solutions, aged care platforms and healthcare analytics. As a result, Clanwilliam's revenue grew from 11 million euros to 96 million euros; it expanded from operations in two countries to more

than 20 countries; went from 100 to over 950 employees when it was sold; and was valued at over $850 million prior to its sale.

Both of these assets embraced risk-mitigated development strategies because they were in recession-resistant healthcare industries. They both provided essential services, had predictable, recurring and diversified cash flows, and they required minimal capital outlays to expand.

During the first few weeks following entry of the Special Master Order, the Special Master and Mr. Lindberg (through counsel) devoted significant time working with the attorneys and board members for certain of the Primary Restitution Assets (and certain of those entities' lenders) to prepare documentation (namely, Assignment Agreements) evidencing the transition of Mr. Lindberg's and Global Growth Holding's interests in these assets to the Special Master. Mr. Lindberg timely executed such Assignment Agreements within the 21-day window established by the Special Master Order and relinquished all rights in these Primary Restitution Assets to the Special Master. *See* Exhibits ____. Even prior to this time and during plea negotiations, Mr. Lindberg agreed to withdraw his appeals of certain matters in the state court proceedings, which enabled state guaranty associations to immediately begin paying policyholders.[6]

GEL amended our proposed assignment document to reserve tax distribution rights, so not "all" rights were transferred.
Michael Martinez
05/11/2026 11:04

After exhaustive work by the Special Master, the Government, Paladin and Mr. Lindberg, Clanwilliam was sold on September 12, 2025, pursuant to this Court's Order of sale, plus several other authorizing orders from other courts, for the net sales price of $348,723,359.44, and these monies were distributed as restitution payments by the Special Master as follows:

- $178,012,178.57 allocated to the North Carolina Insurance Companies to be disbursed first to directly pay the North Carolina Insurance Companies' policyholders with uncovered loss amounts as restitution pursuant to 18 U.S.C. § 3664(j)(1), with the remaining balance to be distributed to the North Carolina Insurance Companies for distribution pursuant to the

[6] In July of 2024, in *Causey v. SNIC*, Case Nos. 23-961 and 94P24, Mr. Lindberg voluntarily withdrew his appeals on certain matters in the North Carolina Court of Appeals and the North Carolina Supreme Court to enable the state guaranty associations to immediately begin paying policyholders. The appeals had prevented this from occurring.

meetings began in February of 2025, and do not count hundreds of other electronic communications and calls).

- Pursuant to the corporate governance documents of NHC, Mr. Lindberg has the right to appoint two members to the Board of Directors of NHC. As part of the assignment of his interests in NHC, Mr. Lindberg assigned that appointment power to the Special Master. The Special Master exercised this power to remove Kathy Million and Lonna Carter, both affiliates of Mr. Lindberg, from the NHC board and appointed Don Harer, a member of the Paladin team, as one of the Special Master's board designees. The Special Master has not yet exercised his right to name a second NHC board member. For the other Primary Restitution Asset, AAPC, the Special Master removed Mr. Lindberg's affiliate (Kathy Million) from this board and named Scott Avila of Paladin to the board.

- To facilitate the sale of Clanwilliam, Mr. Lindberg agreed to relinquish a $40,000,000.00 tax escrow established by a prior North Carolina state district court order so that these proceeds could be used to pay restitution to victims. Without Mr. Lindberg's consent, the transaction likely would not have happened, or the funds may have been disbursed through the North Carolina state case, which could have prevented the 43,000 excess policyholders from receiving the $157,000,000.00 they had not previously been paid by the state guaranty associations.

It was a superior court

Michael Martinez
05/11/2026 11:06

- In July of 2025, Mr. Lindberg dismissed lawsuits he previously filed against TA Associates in Texas and Colorado to facilitate the Special Master's sale of Clanwilliam, and pursuant to a voluntary request from the Special Master. *Lindberg v. Wilson*, Case No. 1:25-cv-00133, Dkt. Entry No. 22 (W.D. Tex.); *Lindberg v. Wilson*, Case No. 1:25-cv-00317, Dkt Entry No. 41 (D. Colo.). Mr. Lindberg also executed a related comprehensive release for TA Associates.

- Mr. Lindberg consented to a motion for a protective order regarding the disclosure of excess policyholder data authorizing the guaranty associations and insurance companies to share their policyholder level data with the Special Master, and for the Special Master to keep that data confidential, so that individual restitution payments could be made to these victims.

- After his plea and before the appointment of the Special Master, Mr. Lindberg withdrew his appeals of certain state court cases which enabled the state guaranty associations to make immediate payments to policyholders prior to the asset sales by the Special Master.

- Mr. Lindberg voluntarily provided his personal tax returns to the Special Master in October of 2025 in order to provide information needed by the Special Master to analyze certain tax transactional issues related to the sale of AAPC.

In addition, prior to the appointment of the Special Master, Mr. Lindberg made substantial repayments to the North Carolina insurance companies, including payments made under the

Interim Loan Agreement (part of the state court receivership proceedings), the AAPC preferred-equity refinance, and other vehicles. In total, between July 2019 and January 2025, Mr. Lindberg repaid the insurance companies approximately $495,883,022.00, which breaks down as follows:

- Principal Repayments: $389,778,434.56
  - CBL: $200,546,308.80
  - BLIC: $14,990,240.57
  - SNIC: $60,926,532.14
  - PBLA: $73,551,208.71
  - Northstar: $14,764,144.34
  - ULICO: $25,000,000.00
- MOU Interest Payments: $80,629,032.00
- $3,000,000.00 cash transfer to CBL in 2022 in connection with the Beckett Refinance Amendment.
- Asset Transfer: On December 31, 2022, Mr. Lindberg transferred $218,000,000.00 in principal value of AAPC preferred equity to ULICO in partial satisfaction of the restitution owed to ULICO. That preferred equity has accrued interest at an 18% annual rate, and, as of March 31, 2026, it is valued at $338,709,737.00.

I don't have my head around these numbers well enough to opine on whether these look accurate or not. I have no reason to doubt their accuracy.
Michael Martinez
05/11/2026 11:12

As of October 21, 2024, pursuant to partial payment programs, CBL had distributed approximately $420 million to 40,000 policyholders and BLIC had distributed approximately $166 million to 8,100 policyholders. Again, these payments were made from Mr. Lindberg's assets and prior to any guaranty association payments and the $157,000,000.00 paid to 42,000 excess policyholders.

## III. <u>Eligible Victims and Restitution Amounts</u>

The Special Master and its Financial Advisor filed a Report and Recommendations Regarding Restitution on April 3, 2026 that identifies qualified victims and initial restitution amounts for the Court (the "SM Restitution Recommendation"). Dkt. Entry No. 106. The SM